Alex R. Straus (SBN 321366)
**WHITFIELD BRYSON LLP**
16748 McCormick Street
Los Angeles, CA 91436
Tel.: (310) 459-9689
E-mail: alex@whitfieldbryson.com

(additional counsel on signature page)

*Counsel for Plaintiff and the Proposed Class*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFORMATECH CONSULTING, INC., Individually and on behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**(1) UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200,** *et seq.***;**<br>**(2) FALSE ADVERTISING IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500,** *et seq.***;**<br>**(3) BREACH OF FIDUCIARY DUTY; and**<br>**(4) NEGLIGENCE**<br><br>DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................ 1

II.     THE PARTIES ................................................................ 4

    A.  Plaintiff................................................................ 4

    B.  Defendants................................................................ 4

III.    JURISDICTION AND VENUE ................................................... 5

IV.     FACTUAL ALLEGATIONS....................................................... 5

V.      CLASS ACTION ALLEGATIONS.................................................. 12

FIRST CAUSE OF ACTION
    Violation of California Business & Professions
    Code § 17200, et seq. ...................................................... 15

SECOND CAUSE OF ACTION
    Violation of California's False Advertising Law
    California Business & Professions Code § 17500, et seq. ......................... 16

THIRD CAUSE OF ACTION
    Breach of Fiduciary Duty..................................................... 16

FOURTH CAUSE OF ACTION
    Negligence................................................................ 18

VI.     DEMAND FOR JURY TRIAL.................................................... 18

VII.    PRAYER FOR RELIEF........................................................ 19

Plaintiff Informatech Consulting, Inc. ("Plaintiff") brings this class action complaint on behalf of itself and those similarly situated (collectively, "Plaintiffs") against Defendants Bank of America Corporation and Bank of America, N.A. (collectively, "Defendants"). Plaintiffs allege the following based upon their information and belief and the investigation of their counsel and personal knowledge as to the allegations pertaining to them.

## I.   <u>INTRODUCTION</u>

1.   Defendants exploited the Coronavirus crisis to line its pockets with hundreds of millions of taxpayer dollars while compounding the economic hardship suffered by small businesses and independent contractors—"hardworking Americans and businesses that, through no fault of their own, have been adversely impacted by the coronavirus outbreak," according to U.S. Treasury Secretary Steven Mnuchin.

2.   The U.S. Small Business Administration ("SBA") Paycheck Protection Program ("PPP") was intended to help "overcome the challenges" of the Coronavirus crisis and "provide a direct incentive to small businesses to keep their workers on the payroll" by providing SBA-guaranteed loans of up to $10 million to qualified applicants.[1] Anticipating the massive demand for relief and to ensure non-preferential distribution of funds, the PPP's governing rules required that banks process applications on a "***first-come, first-served***" basis.[2]

3.   In violation of these rules, California law, and their fiduciary obligations, Defendants favored their own interests by prioritizing larger loan applications for bigger businesses and Defendants' own banking clients ahead of

---

[1] https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/paycheck-protection-program-ppp#section-header-4 (last visited April 22, 2020).

[2] https://www.sba.gov/sites/default/files/2020-04/PPP--IFRN%20FINAL_0.pdf (last visited April 22, 2020).

smaller businesses, independent contractors and applicants who were not existing customers. Indeed, news reports have revealed that banks provided preferential "concierge" treatment for their wealthiest clients, including a two-tiered system providing fast-track procedures for the bank's most valuable customers that avoided cumbersome and buggy online portals which ordinary mom and pop businesses were required to use.[3]

4.      For every loan completed, Defendants received between 1% and 5% of the loan amount in fees, depending on the amount of the loan. Loans worth less than $350,000 brought in 5% in fees while loans worth between $2 million and $10 million brought in 1% in fees. In total, Defendants and other banks have received approximately ***$10 billion in fees*** to date.

5.      In addition to enormous fees, Defendants also benefited from moving bigger and existing customers to the front of the line for PPP loans. For example, Defendants' illegal practices enabled them to mitigate their own risk exposure to default by large, existing clients with whom Defendants maintained outstanding credit lines or other capital commitments. Additionally, favoring existing customers meant that Defendants received the funds deposited into Defendants' accounts, which improved the bank's liquidity.

6.      Meanwhile, Defendants bear no risk whatsoever on the SBA loans made under the PPP, and the expedited processes designed to rapidly provide relief meant that Defendants and other banks did less work to vet applications than for traditional SBA or other loans.

---

[3] https://www.nytimes.com/2020/04/22/business/sba-loans-ppp-coronavirus.html (last visited April 23, 2020); https://www.forbes.com/sites/kotlikoff/2020/04/22/bank-of-america-president-brian-monyihan-listen-to-these-small-business-owners-on-bofas--horrendous-failure-to-service-payroll-protection-loans/#653ced2e57fa (last visited April 27, 2020).

7.      Reports of Defendants' inequitable review and submission process prompted Senator Marco Rubio, Chairman of the Committee of Small Business & Entrepreneurship, to address a formal letter to Defendant Bank of America Corporation explaining "it is important for small businesses and nonprofits of various sizes, regional locations, and missions to have equal access to PPP assistance."[4] This letter was prompted by "reports of priority being given to certain applicants over others" and was concluded by a series of questions designed to "ensure a neutral distribution of assistance."[5]

8.      At no time did Defendants disclose and Plaintiff was unaware that Defendants were violating the PPP governing rules by favoring existing customers and applicants seeking larger loans and putting smaller borrowers like Plaintiff to the back of the queue or not submitting their application at all.

9.      As of the date of this Complaint, Plaintiff and other members of the proposed Class have suffered enormous and potentially irreversible damages. For example, unlike those favored by Defendants and other big banks, Plaintiff and other Class members have not received funds or approval of their loan applications. Additionally, the delay caused by Defendants' misrepresentations and omissions caused hardship, including business cessation, for many applicants who were and are desperately seeking a lifeline through the PPP.

10.      Through this litigation, Plaintiff seeks an injunction preventing Defendants from continuing their illegal business practices, compensation for the harms caused by misconduct alleged herein, and all other relief that the Court deems appropriate.

---

[4] Senator Rubio's letter is attached as Exhibit A.
[5] *Id*.

## II.   THE PARTIES

### A.   Plaintiff

11.    Plaintiff is incorporated in Pennsylvania with its primary business address at 2340 Powell Street, Emeryville, CA 94608.

12.    Plaintiff provides information technology consulting services and solutions to FDA regulated industries, including pharmaceuticals, biotechnology, and medical device companies.

13.    At all times relevant herein, Plaintiff met all applicable requirements to obtain loan funds under the PPP.

### B.   Defendants

14.    Defendant Bank of America Corporation is a Delaware corporation headquartered in Charlotte, North Carolina, that provides a range of financial services, including banking, insurance, investments, mortgage banking and consumer finance to individuals, businesses, and other entities.

15.    Defendant Bank of America, N.A. is headquartered in Charlotte, North Carolina.  It is a multinational financial services institution that provides investment, commercial, and private banking; asset management; and credit card services.

16.    Defendant Bank of America Corporation is the parent corporation of Defendant Bank of America, N.A. Defendant Bank of America Corporation was involved in the wrongful activities alleged herein, had the practical ability to direct and control the actions of Defendant Bank of America, N.A., and in fact did so through a variety of centralized policy and functions and coordinated practices.

17.    Defendants are one of the largest SBA lenders currently participating in the PPP.

### III.   JURISDICTION AND VENUE

18.     The Court has original jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which (i) at least some of the members of the proposed Class have different citizenship from the Defendants; (ii) the proposed Class consists of more than 100 persons or entities; and (iii) the claims of the proposed Class members collectively exceed $5 million.

19.     The Court has personal jurisdiction over Defendants because they do business in this District and a substantial number of events giving rise to the claims asserted herein took place in California.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial number of the events giving rise to the claims asserted herein took place in this District.  For example, Plaintiff's principal place of business is located in San Francisco and Defendants marketed, promoted, and received applications for PPP loans within this District.

### IV.   FACTUAL ALLEGATIONS

21.     The Coronavirus Aid, Relief, and Economic Security (CARES) Act, signed into law on March 27, 2020, allocated $349 billion in taxpayer funds to the SBA to make low interest "forgivable" loans through the PPP to qualifying small businesses, non-profits and independent contractors. Congress enacted the legislation to help keep workers employed and paid amid the Coronavirus pandemic and economic downturn. PPP loans are 100% federally guaranteed; meaning, the banks that originate PPP loans bear no risk unlike loans made using their own funds.

22.     As an approved SBA lender, Defendants are required to "service and liquidate all covered loans made under the Paycheck Protection Program in accordance with PPP Loan Program Requirements," including any SBA rules or

guidance, pursuant to the SBA Lender Agreement they signed.[6] In particular, Defendants, like all SBA lenders participating in the PPP program, must process applications on a "***first-come, first-served***" basis.

23.     Moreover, all SBA lenders including Defendants "must act ethically" and may not, among other things, (i) self-deal; (ii) have a real or apparent conflict of interest with a borrower; (iii) knowingly misrepresent or make a false statement to the SBA; (iv) engage in conduct reflecting a lack of business integrity or honesty; or (v) engage in any activity which taints the bank's objective judgment in evaluating the loan. *See* 13 CFR Part 120.140. Defendants breached these duties, as well as California law and their fiduciary obligations.

24.     Critically, because each loan will be registered under a Taxpayer Identification Number, small business owners could only apply ***once*** for a loan through the PPP. Borrowers could not submit multiple applications through different banks. In submitting their PPP loan applications to Defendants, Plaintiffs were precluded from seeking PPP relief through a different lender that was not engaging in the same improper practices as Defendants.

25.     According to the SBA Office of Advocacy, in 2018, the country had 30.2 million small businesses, representing 99.9% of all U.S. businesses and 47.5% of all employees in the U.S. Of these 30.2 million U.S. small businesses, 22 million are individually operated, with no employees other than the owner.

26.     In 2018, the average loan amount backed by the SBA was $107,000.

27.     Beginning on April 3, 2020, small businesses and sole proprietorships could apply for and receive loans through the PPP.  Beginning on April 10, 2020, independent contractors and self-employed individuals could apply for and receive

---

[6]   https://www.sba.gov/sites/default/files/2020-04/PPP--Agreement-for-New-Lenders-Banks-Credit-Unions-FCS-w-seal-fillable.pdf (last visited April 22, 2020).

such loans.  The last day to apply for and receive a loan through the PPP is June 30, 2020.

28.    Loans through the PPP were time-sensitive as they were to be administered on a "first-come, first-served" basis.  Consequently, loans should have been considered by banks in the order in which they were received, rendering the loan amount insignificant.

29.    Lenders of PPP loans earned varying percentages of origination fees, based on the loan amount: 5% on loans not more than $350,000; 3% on loans more than $350,000 but less than $2,000,000; and 1% on loans more than $2,000,000.

30.    Because of the tiered percentage-based origination fees, lenders were financially incentivized to approve of larger loans ahead of smaller ones: one percent fees on a $5,000,000 loan would earn a bank $50,000 while five percent on a $350,000 loan would earn $17,500.

31.    The SBA tracked the numbers of approved loans and dollars for both the first 10 days of the PPP (April 3 through April 13, first chart) and through the last 3 days (April 14 through April 16, second chart).

| Loan Size | Approved Loans | Approved Dollars | % of Count | % of Amount |
|---|---|---|---|---|
| $150K and Under | 725,058 | $37,178,984,187 | 70.05% | 15.02% |
| >$150K - $350K | 156,590 | $35,735,615,983 | 15.13% | 14.44% |
| >$350K - $1M | 102,473 | $59,291,602,643 | 9.90% | 23.95% |
| >$1M - $2M | 31,176 | $43,278,883,532 | 3.01% | 17.48% |
| >$2M - $5M | 16,516 | $49,288,997,593 | 1.60% | 19.91% |
| >$5M | 3,273 | $22,769,309,582 | 0.32% | 9.20% |

• Overall average loan size is $239,152.

32.     Not only was the overall average loan size greater during the first ten days (see charts above: $239,152 vs. $206,000), but the number of approved loans for applications under $350,000 was significantly greater in the last three days before PPP funds ran out when compared to the first ten days: 881,648 approved loans in the first ten days versus 1,453,954 approved loans as of the last day PPP funds were available.  In the period between April 14 through April 16, 572,306 loans were approved, representing a 65% increase.

| Loan Size | Approved Loans | Approved Dollars | % of Count | % of Amount |
|---|---|---|---|---|
| $150K and Under | 1,229,893 | $58,321,791,761 | 74.03% | 17.04% |
| >$150K - $350K | 224,061 | $50,926,354,675 | 13.49% | 14.88% |
| >$350K - $1M | 140,197 | $80,628,410,796 | 8.44% | 23.56% |
| >$1M - $2M | 41,238 | $57,187,983,464 | 2.48% | 16.71% |
| >$2M - $5M | 21,566 | $64,315,474,825 | 1.30% | 18.79% |
| >$5M | 4,412 | $30,897,983,582 | 0.27% | 9.03% |

- Overall average loan size is $206K.

33.     That 65% increase is even more telling when compared with the difference in approved loans for applications above $2,000,000 for the same period. In the first ten days, 19,789 loans were approved versus 25,978 loans approved as of the last day PPP funds were available, meaning that 6,189 loans were approved between April 14 through April 16, equaling a 31% increase.

34.     With such varying data, it is clear that lenders such as Defendants did not process loans on a "*first-come, first-served*" basis as required by the SBA, but that the loan amount influenced when it was processed and approved.

35.     For example, early reports note that Defendants failed to provide the same knowledge, technological support, and resources for their retail branches to process applications made by small businesses than they did for their larger and more

CLASS ACTION COMPLAINT

prominent customers.[7] This led to nearly all of Defendants' larger and more prominent customers receiving loan assistance through the PPP via a prioritized application review and submission while large percentages of their retail branch customers' applications were de-prioritized without regard to when the applications were filed.

36. Plaintiff learned of the CARES Act and PPP when it was passed and was signed into law by President Trump.

37. Plaintiff's business activities have been substantially harmed by the world-wide pandemic.

38. On March 30, 2020, Plaintiff received a marketing e-mail from Defendants notifying it of the financial assistance available through the PPP and Defendants' "Client Assistance Program".

39. On April 3, 2020, Defendants sent Plaintiff an e-mail communication announcing that they will be accepting applications for loans through the PPP. Defendants explained: "In order to ensure an orderly flow of these government-provided funds, we will follow the intent of the U.S. Treasury guidance..." Under the heading "**Here is what we will do next**" Defendants promised to "[c]ontact you with next steps and to collect any required documents" and to "[p]rocess your loan application with the Small Business Administration as quickly as possible" (emphasis in original). Lastly, Defendants affirmed that they are "committed to helping our clients, teammates and communities move through this very challenging time period."

---

[7] https://www.forbes.com/sites/kotlikoff/2020/04/21/bank-of-americas-awful-handling-of-payroll-protection-loans---my-case-study/#733e17772f6e (last visited April 22, 2020); https://www.forbes.com/sites/kotlikoff/2020/04/22/bank-of-america-president-brian-monyihan-listen-to-these-small-business-owners-on-bofas--horrendous-failure-to-service-payroll-protection-loans/#71805d5657fa (last visited April 24, 2020)

40.     On April 6, 2020, Plaintiff submitted an application for loan assistance through the PPP with Defendants.  Plaintiff applied for a loan through the PPP in order to pay mortgage interest, utilities, and other applicable amounts. Plaintiff chose to submit a loan application with Defendants because it conducts business banking with them.

41.     Regarding PPP loans, Defendants assure all applicants that "[w]e will contact you with next steps and to collect any required documents. Do not proactively deliver or send documents to our Financial Centers or banking teams."[8]

42.     Defendants did not contact Plaintiff with "next steps" until April 13, 2020, when a representative of Defendants called Plaintiff to inquire about submitting documents for its loan application.

43.     On the same day, April 13, 2020, Plaintiff submitted all requested documents to the Intralinks Exchange.

44.     Based on the "first-come, first-served" rule, Plaintiff's application should have been promptly submitted to the SBA. Instead, Defendants apparently delayed processing the application and submitting to the SBA for approval.

45.     On April 15, 2020, Defendants sent Plaintiff an e-mail requesting Plaintiff to verify certain information. The link included in the e-mail took Plaintiff to its account page and did not request it to verify information for the PPP.

46.     Plaintiff contacted a local branch representative of Defendants on April 15, 2020, to ask about the status of its application. Plaintiff received a response on April 16, 2020 stating the entirety of the $349 billion allocated for the PPP loans had been committed.

---

[8] https://about.bankofamerica.com/promo/assistance/faqs/small-business-paycheck-protection-program (last accessed April 22, 2020).

47.     On April 23, after the entirety of the $349 billion was already allocated, Plaintiff received an e-mail communication from Defendants labeled as "URGENT" and requesting Plaintiff to click a link to confirm information purportedly required by Defendants. When Plaintiff clicked the link, Plaintiff was directed to its account page and did not identify any information that Plaintiff needed to confirm, as the email indicated would happen, nor note any deficiencies with its application.

48.     Because Plaintiff submitted an application for a loan through the PPP with Defendants, it was denied access to funds that would have helped it during this economic crisis and was prevented from seeking assistance from a different lender.

49.     Defendants claim they "will process your loan application with the Small Business Administration as quickly as possible."[9] Defendants also assured that they would communicate decisions on loan decisions: "Bank of America will email you with the status once we receive a decision from the Small Business Administration."[10]

50.     However, Defendants misled and deceived their clients, including Plaintiff, into believing applications for loans through the PPP were processed in the order received with no regard to loan amount, when in fact the loan amount certainly influenced the order in which loans were processed and approved.

51.     If Defendants had not misled and deceived their small business clients, such clients could have submitted their applications for loans through the PPP with other lenders that were following the required "first-come, first-served" application

---

[9] https://about.bankofamerica.com/promo/assistance/faqs/small-business-paycheck-protection-program (last accessed April 22, 2020)
[10] *Id.*

processing order. Because small businesses were only allowed to submit one application for PPP loans, they could not go to another lender for assistance.

52.     Defendants purposefully slowed down the processing of applications submitted by small businesses with lower requested loan amounts through a confusing and uncoordinated application process that was inadequately staffed to process applications on a "first-come, first-served" basis in order to obtain higher origination fees and maintain positive business relationships with their larger commercial customers.

53.     Defendants knew their clients trusted them and believed they would administer the PPP as required, but chose to exploit their clients' trust. As a result of Defendants' greed and focus on their own financial incentives, countless small businesses were prevented from benefitting from the program designed to help them survive during the current Coronavirus crisis. Moreover, the delay and uncertainty caused by preferring bigger loan applications or "concierge" customers has wrecked devastating harm on Plaintiff and Class members. Put simply, every day that passes without relief for these small businesses and other qualified applicants—and the hundreds of thousands of hardworking Americans they employ—pushes them closer or into financial ruin.

## V.     CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action individually and on behalf of the following class (the "Class") pursuant to Rule 23:

All eligible persons or entities in the State of California who applied for a loan under the PPP with Defendants and whose applications were not processed by Defendants in accordance with SBA regulations and requirements or California law.

55.     Excluded from the proposed Class are Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

56.     This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

57.     The members in the proposed class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class members in a single action will provide substantial benefits to the parties and Court.

58.     Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

- Whether Defendants violated the regulations for administering, processing, and handling loans through the PPP;
- Whether Defendants made false, misleading, and deceptive misrepresentations and omissions regarding their administration, processing, and handling of the applications for loans from small businesses through the PPP;
- Whether Defendants failed to the administer, process, and handle loans on a "first-come, first-served" basis as required by the PPP;
- Whether Defendants administered, processed, and handled larger loans before smaller loans;
- Whether Defendants violated various California laws;
- Whether Defendants engaged in false advertising;
- Whether Defendants fraudulently concealed material facts from their clients;

- Whether Defendants' conduct was negligent per se;
- Whether Defendants breached a fiduciary duty;
- Whether Plaintiff and members of the Class are entitled to statutory and punitive damages; and
- Whether Plaintiff and the members of the Class are entitled to declaratory and injunctive relief.

59.     Defendants engaged in a course of common conduct that gave rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class.  Identical statutory violations and business practices and harms are involved.   Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

60.     Plaintiff's claims are typical of those of the members of the Class because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

61.     Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

62.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

63.     Questions of law and fact common to the Class predominate over any questions affecting only individual members of a Class.

64.     As a result of the foregoing, class treatment is appropriate.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIRST CAUSE OF ACTION

**Violation of California Business & Professions Code § 17200, et seq.**

65.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

66.    The Unfair Competition Law ("UCL") prohibits any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

**Fraudulent**

67.    Defendants' misrepresentations and related omissions that they were working tirelessly to administer, process, and handle loan applications through the PPP in order to provide assistance to as many clients as possible and that they were otherwise following the requirements of the PPP are literally false, misleading, and likely to deceive the public.

**Unlawful**

68.    As alleged herein, Defendants have advertised and represented their administration of loans through the PPP, such that Defendants' actions as alleged herein violate at least the following law: The False Advertising Law, California Business & Professions Code § 17500, *et seq.* (the "FAL").

**Unfair**

69.    Defendants' conduct with respect to the administration, processing, and handling of the applications from small businesses for loans through the PPP was unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to their clients.  The utility of their conduct, if any, does not outweigh the gravity of harm to their victims.

70.    Defendants' conduct with respect to the administration, processing, and handling of the applications from small businesses for loans through the PPP was also unfair because in order to maximize their financial gain associated with loans through the PPP, they prioritized larger loans over smaller ones while

deceiving and misleading small business owners into believing their loans were processed on a "first-come, first-served" basis, as required by the PPP.

71.     In accordance with California Business & Professions Code §17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to discharge the funds they received from the PPP to Plaintiff and the Class members.

<u>SECOND CAUSE OF ACTION</u>

**Violation of California's False Advertising Law**

**California Business & Professions Code § 17500, et seq.**

72.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

73.     California's False Advertising Law ("FAL") prohibits the performance of services, professional or otherwise "which [are] untrue or misleading." Cal. Bus. & Prof. Code §17500.

74.     As set forth herein, Defendants' misrepresentations and omissions regarding compliance with applicable laws and regulations, including SBA rules and requirements, were literally false, misleading, and likely to deceive the public.

75.     Defendants knew or reasonably should have known that all these claims were untrue or misleading.

76.     Plaintiff and the Class members are entitled to statutory, injunctive, and equitable relief in the amount of money in their respective PPP loan applications.

**THIRD CAUSE OF ACTION**

**Breach of Fiduciary Duty**

77.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

78.   The Defendants owed and owe Plaintiff and the Class members fiduciary obligations.   By reason of their fiduciary relationships, the Defendants owed and owe Plaintiff and the Class members the highest obligation of good faith, fair dealing, loyalty, and due care.

79.   The Defendants violated and breached their fiduciary duties to Plaintiff and the Class members.

80.   Defendants made false, misleading, and deceptive misrepresentations and omissions regarding their administration, processing, and handling of the applications for loans from small businesses through the PPP.

81.   Because Defendants misrepresented their compliance with SBA regulations and requirements and California law, and omitted to disclose the material information as to their practice or policies of favoring their customers and/or larger loans, the Defendants did not engage in arms-length transactions with Plaintiff and other Class members.

82.   Additionally, Defendants unjustly profited from the administration, processing, and handling of loans through the PPP as they received origination fees based on the loan amounts.

83.   Consequently, as alleged herein, Defendants prioritized larger loans- and thus larger fees—over smaller loans to the detriment of Plaintiff and the Class.

84.   As a direct and proximate result of the Defendants' breaches of their fiduciary obligations, Plaintiff and the Class members have sustained significant damages, as alleged herein.   As a result of the misconduct alleged herein, Defendants are liable to Plaintiff and the Class members.

85.   Plaintiff and the Class members seek declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## FOURTH CAUSE OF ACTION

### Negligence

86.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

87.     Defendants' conduct is negligent per se.

88.     As set forth above and below, Defendants violated their statutory duties under numerous statutes, including the FAL and UCL.

89.     Additionally, Defendants must comply with SBA regulations such as 13 CFR Part 120.140, which states that lenders "must act ethically and exhibit good character" that prohibits "engag[ing] in conduct reflecting a lack of business integrity or honesty." 13 CFR Part 120.140(f).

90.     Defendants' violations of such statutes is negligence per se and was a substantial factor in the harm suffered by Plaintiff and the Class members, including their submission of applications for loans through the PPP with Defendants who violated the "first-come, first-served" basis for processing loan applications, as dictated by the PPP, when they processed larger loans ahead of smaller loans.

91.     As set forth above, such laws were intended to ensure that a company's claims about its services are truthful and accurate and that they engaged in business in an ethically and honest manner.

92.     By virtue of Defendants' negligence, Plaintiff and the Class members have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

## VI.   DEMAND FOR JURY TRIAL

93.     Plaintiff demands a trial by jury on all issues so triable.

## VII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following for relief:

1.      Certifying the proposed Class; and appoint Plaintiff as Class representative, and its undersigned counsel as Class counsel;

2.      An order requiring Defendants to bear the costs of class notice;

3.      An order enjoining Defendants from administering, processing, or handling loans through the PPP in violation of SBA regulations and requirements or California law;

4.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as alleged herein, and injunctive relief to remedy Defendants' past conduct;

5.      An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

6.      An order requiring Defendants to pay punitive damages on any count so allowable;

7.      An order requiring Defendants to pay all statutory damages permitted under the counts alleged herein;

8.      An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class members; and

9.      An order providing for all other such equitable relief as may be just and proper.

Date: April 27, 2020                    Respectfully submitted,

                                        **WHITFIELD BRYSON LAW LLP**

                                        */s/ Alex R. Straus*
                                        Alex R. Straus (SBN 321366)
                                        16748 McCormick Street
                                        Los Angeles, CA 91436
                                        Tel.: (917) 471-1894
                                        E-mail:  alex@whitfieldbryson.com

                                        Daniel K. Bryson
                                        (*pro hac vice* forthcoming)
                                        Scott C. Harris
                                        (*pro hac vice* forthcoming)
                                        Patrick M. Wallace
                                        (*pro hac vice* forthcoming)
                                        900 W. Morgan Street
                                        Raleigh, NC 27605
                                        Tel: (919) 600-5000
                                        Fax: (919) 600-5035
                                        E-mail: dan@whitfieldbryson.com
                                        scott@whitfieldbryson.com
                                        pat@whitfieldbryson.com

                                        **BERGER MONTAGUE PC**
                                        Benjamin Galdston (Bar No. 211114)
                                        12544 High Bluff Drive, Suite 340
                                        San Diego, CA 92130
                                        Tel: (619) 489-0300
                                        E-mail: bgaldston@bm.net

                                        **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
                                        Robert K. Shelquist
                                        (*pro hac vice* forthcoming)
                                        Rebecca A. Peterson (SBN 241858)
                                        100 Washington Avenue South, Suite 2200
                                        Minneapolis, MN 55401
                                        Tel.: (612) 339-6900
                                        Fax: (612) 339-0981

E-mail: rkshelquist@locklaw.com
rapeterson@locklaw.com

**GREG COLEMAN LAW PC**
Lisa A. White
(*pro hac vice* forthcoming)
William A. Ladnier (Bar No. 330334)
800 S. Gay Street, Suite 1100
Knoxville, TN  37929
Tel.: (865) 247-0080
Fax: (865) 522-0049

*Attorneys for Plaintiff*
*and the Proposed Class*