1
2
3
4

Alex R. Straus (SBN 321366)
**WHITFIELD BRYSON LLP**
16748 McCormick Street
Los Angeles, CA 91436
Tel.: (310) 450-9689
E-mail:  alex@whitfieldbryson.com

5

(additional counsel on signature page)

6

*Counsel for Plaintiffs and the Proposed Class*

7

8

9

**UNITED STATES DISTRICT COURT**

10

**NORTHERN DISTRICT OF CALIFORNIA**

11

12
13

INFORMATECH CONSULTING, INC. AND
STUDIO 1220, INC., Individually and on behalf
of All Others Similarly Situated,

Case No.: 20-cv-02892-VC

**CONSOLIDATED AMENDED CLASS
ACTION COMPLAINT**

14

Plaintiffs,

15

vs.

16
17

BANK OF AMERICA CORPORATION;
BANK OF AMERICA, N.A.; and
INTRALINKS, INC.,

18

Defendants.

**(1)   NEGLIGENCE**
**(2)   FRAUDULENT CONCEALMENT**
**(3)   BREACH OF FIDUCIARY DUTY**
**(4)   UNFAIR BUSINESS PRACTICES
        IN VIOLATION OF CALIFORNIA
        BUSINESS & PROFESSIONS
        CODE § 17200, *et seq*.; AND**
**(5)   FALSE ADVERTISING IN
        VIOLATION OF CALIFORNIA
        BUSINESS & PROFESSIONS
        CODE § 17500, *et seq*.;**

19

20

21

DEMAND FOR JURY TRIAL

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2

Page(s)

3

**I.**   INTRODUCTION ........................................................................................... 1

4

**II.**   THE PARTIES.............................................................................................. 4

5

 **A.**   Plaintiffs ........................................................................................... 4

6

 **B.**   Defendants........................................................................................ 4

7

**III.**   JURISDICTION AND VENUE .................................................................. 6

8

**IV.**   INTRADISTRICT ASSIGNMENT ………………………………………6

9

**V.**   FACTUAL ALLEGATIONS ...................................................................... 7

10

**VI.**   CLASS ACTION ALLEGATIONS ........................................................... 33

11

**VII.**   DEMAND FOR JURY TRIAL .................................................................. 40

12

**VIII.**   PRAYER FOR RELIEF ............................................................................. 41

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Informatech Consulting, Inc. ("Informatech") and Studio 1220, Inc., ("Studio 1220") (collectively, "Plaintiffs") bring this class action complaint on behalf of themselves and those similarly situated against Defendants Bank of America Corporation and Bank of America, N.A. (together "Bank of America"), and Intralinks, Inc. (collectively, "Defendants"). Plaintiffs allege the following based upon their information and belief and the investigation of their counsel and personal knowledge as to the allegations pertaining to them.

## I.   **INTRODUCTION**

1.    Defendants exploited the Coronavirus crisis to line their pockets with hundreds of millions of taxpayer dollars while compounding the economic hardship suffered by small businesses and independent contractors.

2.    The U.S. Small Business Administration ("SBA") Paycheck Protection Program ("PPP") was intended to help "overcome the challenges" of the Coronavirus crisis and "provide a direct incentive to small businesses to keep their workers on the payroll" by providing SBA-guaranteed loans of up to $10 million to qualified applicants.[1] Through the PPP, Congress intended that the "SBA provide relief to America's small businesses expeditiously..." [2] Anticipating the massive demand for relief and to ensure non-preferential distribution of funds, the PPP's governing rules required that banks process applications on a "***first-come, first-served***" basis.[3]

---

[1] https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/paycheck-protection-program-ppp#section-header-4 (last visited April 22, 2020).

[2] https://home.treasury.gov/system/files/136/PPP--IFRN%20FINAL.pdf (last visited September 23, 2020).

[3] *Id*.

3.      Defendants themselves affirmed and adopted the SBA's "first-come, first-served" principle that encouraged loan customers, including Plaintiffs.

4.      In violation of these rules, California law, and their fiduciary obligations, Defendants favored their own interests by prioritizing larger loan applications for bigger businesses and Defendants' own banking clients ahead of smaller businesses and independent contractors. At the same time, Defendants actively and through inattention disfavored smaller loan applications. Indeed, news reports have revealed that banks provided preferential "concierge" treatment for their wealthiest clients, including a two-tiered system providing fast-track procedures for the bank's most valuable customers that avoided cumbersome and buggy online portals which ordinary mom and pop businesses were required to use.[4]

5.      For every loan completed, Defendants received between 1% and 5% of the loan amount in fees, depending on the amount of the loan. Loans worth less than $350,000 brought in 5% in fees while loans worth between $2 million and $10 million brought in 1% in fees. In total, Defendants and other banks have received approximately ***$10 billion in fees*** to date.

6.      In addition to enormous fees, Defendants also benefited from moving bigger and existing customers to the front of the line for PPP loans. For example, Defendants' illegal practices enabled them to mitigate their own risk exposure to default by large, existing clients with whom Defendants maintained outstanding credit lines or other capital commitments. Additionally, favoring existing customers meant that Defendants received the funds deposited into Defendants' accounts, which improved the bank's liquidity.

---

[4] https://www.nytimes.com/2020/04/22/business/sba-loans-ppp-coronavirus.html  (last visited April 23, 2020); https://www.forbes.com/sites/kotlikoff/2020/04/22/bank-of-america-president-brian-monyihan-listen-to-these-small-business-owners-on-bofas--horrendous-failure-to-service-payroll-protection-loans/#653ced2e57fa (last visited April 27, 2020).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7.    Meanwhile, Defendants bear no risk whatsoever on the SBA loans made under the PPP, and the expedited processes designed to rapidly provide relief meant that Defendants and other banks did less work to vet applications than for traditional SBA or other loans.

8.    Reports of Defendants' inequitable review and submission process prompted Senator Marco Rubio, Chairman of the Committee of Small Business & Entrepreneurship, to address a formal letter to Defendant Bank of America Corporation explaining "it is important for small businesses and nonprofits of various sizes, regional locations, and missions to have equal access to PPP assistance."[5] This letter was prompted by "reports of priority being given to certain applicants over others" and was concluded by a series of questions designed to "ensure a neutral distribution of assistance".[6]

9.    At no time did Defendants disclose and Plaintiffs were unaware that Defendants were violating the PPP governing rules by favoring existing customers and applicants seeking larger loans and putting smaller borrowers like Plaintiffs to the back of the queue or not submitting their application at all.

10.    As of the date of this Complaint, Plaintiffs and other members of the proposed Class have suffered enormous and potentially irreversible damages. Additionally, the delay caused by Defendants' misrepresentations and omissions caused hardship, including business cessation, for many applicants who were and are desperately seeking a lifeline through the PPP, as well as the loss of the time value of money they should have promptly received.

11.    Through this litigation, Plaintiffs seek compensation for the harms caused by misconduct alleged herein, and all other relief that the Court deems appropriate.

---

[5] Senator Rubio's letter is attached as Exhibit A.
[6] *Id.*

## II. THE PARTIES

### A. Plaintiff Informatech

12. Informatech Consulting, Inc. ("Informatech") is incorporated in Pennsylvania with its primary business address at 2340 Powell Street, Emeryville, CA 94608.

13. Informatech meets the criteria for approval and funding under the PPP, who in reliance of Defendants' false and deceptive advertising, marketing, and loan application processing schemes, made an application for loan assistance through the PPP with Bank of America through IntraLinks Exchange.

14. At all times relevant herein, Informatech met all applicable requirements to obtain loan funds under the PPP.

### B. Plaintiff Studio 1220, Inc.

15. Studio 1220, Inc. ("Studio 1220") is a California corporation with its principal executive office in San Diego, California, is licensed to do business and does business in the State of California and operates retail clothing store locations.

16. Studio 1220 meets the criteria for approval and funding under the PPP, who in reliance of Defendants' false and deceptive advertising, marketing, and loan application processing schemes, made an application for loan assistance through the PPP with Bank of America through IntraLinks Exchange.

17. At all times relevant herein, Studio 1220 met all applicable requirements to obtain loan funds under the PPP.

### C. Defendants

18. Defendant Bank of America Corporation is a Delaware corporation headquartered in Charlotte, North Carolina, that provides a range of financial services, including banking,

insurance, investments, mortgage banking and consumer finance to individuals, businesses, and other entities.

19.     Defendant Bank of America, N.A. is headquartered in Charlotte, North Carolina. It is a multinational financial services institution that provides investment, commercial, and private banking; asset management; and credit card services.

20.     Defendant Bank of America Corporation is the parent corporation of Defendant Bank of America, N.A. Defendant Bank of America Corporation was involved in the wrongful activities alleged herein, had the practical ability to direct and control the actions of Defendant Bank of America, N.A., and in fact did so through a variety of centralized policy and functions and coordinated practices.

21.     Defendant Intralinks, Inc., is a Delaware corporation, with its principal place of business located in New York, New York, and is licensed to do business in the State of California. Further, at all relevant times hereto, Intralinks, Inc. does and has done business in California and in this judicial district and Plaintiffs are informed and believe that Intralinks, Inc. keeps a principal office in the State of California at 580 California, 2nd Floor, San Francisco, California. As stated on its website, "Intralinks is a cloud-based financial technology provider for global banking, deal-making and capital markets." At all relevant times, Intralinks maintained, configured and operated IntraLinks Exchange used by Bank of America to inter alia "gather [] documents" from Plaintiffs and the Class.  Bank of America contracted with Intralinks, Inc. to administer its entire online PPP loan application process.

22.     The Bank of America Defendants are one of the largest SBA lenders participating in the PPP.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   JURISDICTION AND VENUE

23.    The Court has original jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which (i) at least some of the members of the proposed Class have different citizenship from the Defendants; (ii) the proposed Class consists of more than 100 persons or entities; and (iii) the claims of the proposed Class members collectively exceed $5 million.

24.    The Court has personal jurisdiction over Defendants because they do business in this District and a substantial number of events giving rise to the claims asserted herein took place in California.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial number of the events giving rise to the claims asserted herein took place in this District.  For example, Plaintiff Informatech's principal place of business is located in San Francisco, California, and Defendants marketed, promoted, and received applications for PPP loans within this District.

### IV.   INTRADISTRICT ASSIGNMENT

This case arose in the San Francisco division as Defendant IntraLinks keeps and maintains its principal office and Defendant Bank of America keeps and maintains a regional headquarters in San Francisco County.  In addition, Plaintiff Informatech Consulting, Inc. has its primary business address in Alameda County.  Therefore, pursuant to L.R. 3-2, assignment to the San Francisco division is appropriate as the location in which a substantial part of the events or omissions which give rise to the claims alleged occurred.

## V.   FACTUAL ALLEGATIONS

### A.   Congress Created the PPP Loan Program to Provide Immediate Relief on a First-Come, First Served Basis

26.   On March 11, 2020, the Coronavirus outbreak was characterized as a pandemic by the World Health Organization (WHO).

27.   On March 19, 2020, Governor Gavin Newsom issued an executive Stay at Home Order in the State of California in order to slow the spread of Coronavirus.[7]

28.   On March 25, 2020, in response to the economic fallout of the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act. The CARES Act passed the United States House of Representatives the next day.

29.   The CARES Act was signed into law on March 27, 2020. Section 1102 of the CARES Act created the PPP, which allocated $349 billion in taxpayer funds to the SBA to make low interest "forgivable" loans to qualifying small businesses, non-profits and independent contractors.[8]

30.   Congress enacted the PPP to help keep workers employed and paid amid the Coronavirus pandemic and economic downturn. PPP loans are 100% federally guaranteed; meaning, the banks that originate PPP loans bear no risk unlike loans made using their own funds.

31.   It was the express intent of the U.S. Congress in passing the CARES Act that the funds be used to support small businesses.[9] The text of the Bill itself provides "It is the sense of the Senate that the Administrator should issue guidance to lenders and agents to ensure that the

---

[7] **Error! Main Document Only.**https://www.gov.ca.gov/2020/03/19/governor-gavin-newsom-issues-stay-at-home-order/.

[8] *See generally* H.R. 748, available at https://www.congress.gov/116/plaws/publ136/PLAW-116publ136.pdf

[9] **Error! Main Document Only.** H.R.748(P)(iv) - CARES Act.

processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals (as defined in section 8(d)(3)(C)), women, and businesses in operation for less than 2 years."

32.     At President Trump's signing of the CARES Act, ranking member of the House Small Business Committee Representative Steve Chabot (R-Ohio) praised the legislation as giving small businesses a great chance to reopen.[10] Senator Marco Rubio (R-Fl), Chairman of the Senate Small Business and Entrepreneurship stated that the "bipartisan small business package...will provide emergency relief so that millions of American workers can keep their jobs and millions of small businesses can stay open."[11] Senate Majority Whip, Senator John Thune (R-SD) stated that the funds provided by the CARES Act "will deliver relief to small businesses to help them and their workers weather this storm."[12]

33.     The United States Department of the Treasury announced that starting April 3, 2020, small businesses and sole proprietorships could apply for and receive loans to cover their payroll and other certain expenses through existing  Small Business Administration ("SBA")

---

[10]  **Error! Main Document Only.** Remarks by President Trump at Signing of H.r.748, the Cares Act, 2020 WL 1485787, at *67.
[11]  **Error! Main Document Only.** Sen. Rubio, Press Release, 03/25/2020 https://www.rubio.senate.gov/public/index.cfm /pressreleases? ContentRecord_id=D08E8A75-546A-4C56-A890-B948048E9B5C.
[12]  **Error! Main Document Only.** Sen. Thune, Press Release, 03/25/2020 https://www.thune.senate.gov/public/index.cfm/pressreleases? ID=CA914CF0-5C3D-4A02-B6F2-84925B5467BD.

lenders, and that starting April 10, 2020, independent contractors and self-employed individuals could apply.[13]

34.     Bank of America communicated to the public that it intended to follow the law and direct the PPP funds to the small businesses that Congress and the Senate intended to help. Bank of America, on its website and by email, represented to its customers that it will "process your loan application with the Small Business Administration as quickly as possible."[14] Within this context, Bank of America served as an intermediary between small businesses and federal funds. Not only did Bank of America encourage Plaintiff and the Class, Bank of America encouraged Plaintiff and the Class to act fast.

35.     Time was of the essence.  The SBA regulations that govern the PPP mandated that the funds be distributed "first come, first served."[15] There was a line, a "queue." If you applied sooner rather than later, according to the SBA regulations, your place in line should have been considered, and your loans issued accordingly, "first-come, first-served." However, in contravention with its implied and explicit representations, and their own representations to Plaintiff and the Class, as well to the public, this was not how Defendants operated.

---

[13] **Error! Main Document Only.** https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf.
[14] **Error! Main Document Only.**
https://about.bankofamerica.com/promo/assistance/faqs/small-business-paycheck-protectionprogram.
[15] **Error! Main Document Only.** Small Business Administration Interim Final Rule § m. [Docket No. SBA-2020-0015] 13 CFR Part 120 Business Loan Program Temporary Changes; Paycheck Protection Program RIN 3245-AH34.

36.     The SBA issued its Interim Final Rule regarding the implementation of the PPP.[16] According to the Interim Final Rule, "[t]he following outlines the **key provisions of the PPP** ... [2.] m. **Is the PPP 'first-come, first-served?' Yes**."

37.     The "first-come, first-served" rule was a necessary and fair requirement given the limited nature of the PPP funds.

38.     In order to be eligible as a PPP lender, Bank of America was required to submit, and did submit, a CARES Act Section 1102 Lender Agreement ("CARES Lender Agreement").[17]

39.     In the CARES Lender Agreement, any lender, including Bank of America, who wished to apply and be approved as a PPP lender was required to adhere to all PPP loan requirements, including the "first-come, first-served" rule.

40.     In particular, the CARES Lender Application states "Lender must close and disburse each covered loan in accordance with the terms and conditions of the PPP Authorization and PPP Loan Program Requirements" as well as "take such other actions necessary to fulfill the requirements of the Paycheck Protection Program." Bank of America was required to "certif[y] that it is in compliance and will maintain compliance with all applicable requirements of the Paycheck Protection Program and PPP Loan Program Requirements."[18]

41.     Bank of America was prohibited from modifying the "first-come, first-served" requirement unless it received written authorization or exemption: "Lender agrees that any

---

[16] *See* https://home.treasury.gov/system/files/136/PPP--IFRN%20FINAL.pdf (last visited September 23, 2020).

[17] *See* https://home.treasury.gov/system/files/136/PPP--Agreement-for-New-Lenders-Banks-Credit-Unions-FCS-w-seal-fillable-4-3-2020.pdf

[18] *Id.*

modification to this Agreement to be asserted against SBA or any exemption to be claimed from any provision of the Small Business Act, the Paycheck Protection Program, or PPP Loan Program Requirements is invalid, null, and void unless it is made in writing by an official of SBA authorized to grant such modification or exemption and was made after full disclosure to SBA of all material facts and circumstances."[19] Upon information and belief, Bank of America did not receive such written authorization or exemption from the SBA to deviate from the "first-come, first-served" requirement.

42.    Moreover, all SBA lenders, including Bank of America, "must act ethically" and may not, among other things, (i) self-deal; (ii) have a real or apparent conflict of interest with a borrower; (iii) knowingly misrepresent or make a false statement to the SBA; (iv) engage in conduct reflecting a lack of business integrity or honesty; or (v) engage in any activity which taints the bank's objective judgment in evaluating the loan. *See* 13 CFR Part 120.140. Defendants breached these duties, as well as California law and their fiduciary obligations.

43.    Additionally, the terms of the PPP loans only allow for each small business borrower to obtain a single SBA backed loan through the PPP. The SBA Regulations provide: "The Administrator, in consultation with the Secretary, determined that no eligible borrower may receive more than one PPP loan. This means that if you apply for a PPP loan you should consider applying for the maximum amount."[20]

44.    According to the SBA Office of Advocacy, in 2018, the country had 30.2 million small businesses, representing 99.9% of all U.S. businesses and 47.5% of all employees in the

---

[19] *Id.*

[20] **Error! Main Document Only.**Small Business Administration Interim Final Rule § k. [Docket No. SBA-2020-0015] 13 CFR Part 120 Business Loan Program Temporary Changes; Paycheck Protection Program RIN 3245-AH34.

U.S. Of these 30.2 million U.S. small businesses, 22 million are individually operated, with no employees other than the owner.

45. In 2018, the average loan amount backed by the SBA was $107,000.

46. Beginning on April 3, 2020, small businesses and sole proprietorships could apply for and receive loans through the PPP. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply for and receive such loans. The last day to apply for and receive a loan through the PPP is June 30, 2020.

47. Loans through the PPP were time-sensitive as they were to be administered on a "first-come, first-served" basis. Consequently, loans should have been considered by banks in the order in which they were received, rendering the loan amount insignificant.

48. Lenders of PPP loans earned varying percentages of origination fees, based on the loan amount: 5% on loans not more than $350,000; 3% on loans more than $350,000 but less than $2,000,000; and 1% on loans more than $2,000,000.

49. Because of the tiered percentage-based origination fees, lenders were financially incentivized to approve of larger loans ahead of smaller ones: 1% fees on a $5,000,000 loan would earn a bank $50,000 while 5% on a $350,000 loan would earn $17,500.

**Bank of America Committed to a First-Come, First-Served Process**

50. Bank of America adopted SBA's PPP process, including the first-come, first serve requirement.

51. Bank of America's dedicated Coronavirus webpage [21] included information specific to the PPP. On this webpage, Bank of America made the following commitment: "In

---

[21] *See* https://about.bankofamerica.com/promo/assistance/latest-updates-from-bank-of-america-coronoavirus/small-business-assistance (as posted on April 4, 2020)

order to ensure an orderly flow of these government-provided funds, we will follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website..."[22] The U.S. Treasury website and guidance included the Interim Final Rule, which stated that PPP funds would be provided on a "first-come, first-served" basis.[23]

52.     By committing to follow "the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website" Bank of America committed to following the "first-come, first-served" requirement. This means that Bank of America declared it would process PPP loan applications in the order they were received and not based on other considerations, such as the size of the loan or the identity of the borrower.

**Defendants' False Statements About Processing PPP Loan Applicants**

53.     Bank of America affirmatively sent marketing emails to existing customers, including Plaintiffs, to notify them of the financial assistance available through the PPP, which Defendants referred to as their "Client Assistance Program" (herein referred to as the "Initial Marketing Email").

54.      Plaintiffs, like all Class members, received Initial Marketing Email from Bank of America (signed by Sharon Miller, Head of Small Business) on how to apply for a PPP loan with Bank of America stating the following:

> Bank of America expands support for clients with new Paycheck Protection Program
>  Over the past several weeks, Bank of America has been providing support to our customers and clients through our enhanced Client Assistance Program.
> In addition, beginning April 3rd, our Small Business clients may also be eligible for financial relief through the federal Paycheck Protection Program that is

---

[22] *Id.*
[23] *See* https://home.treasury.gov/system/files/136/PPP--IFRN%20FINAL.pdf (posted on the U.S. Treasury website April 2, 2020).

being introduced as a result of the Coronavirus Aid, Relief, and Economic Security (CARES) Act.

The Paycheck Protection Program is a federal relief program established by Congress and implemented by the U.S. Treasury Department and the Small Business Administration (SBA) with rules, requirements, protocols and processes that all participating banks, including Bank of America, must follow. In order to ensure an orderly flow of these government-provided funds, we will follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website, that small businesses that plan to apply should do so with their current business loan provider.

- Small Business clients with a business lending and a business deposit relationship at Bank of America are eligible to apply for the Paycheck Protection Program through our bank. A client's pre-existing lending relationship with us may be a Bank of America Business Credit Card, small business line of credit or business loan.
- Small Business owners who do not have both a business lending and business deposit relationship with us should contact their current business loan provider as soon as possible, if they plan to apply for the federal Paycheck Protection Program. This is the best and fastest method for applying for federal relief, based on the U.S. Treasury requirements and guidance.
- All applications, information and correspondence about the Paycheck Protection Program at Bank of America will occur online and through email, including the application process, submission of required documents, and follow up correspondence.

Eligible clients who plan to apply for the Paycheck Protection Program loan should be aware of the following important items:

You must have a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020. A Business Credit Card, line of credit or loan may be the lending product used.

1. At Bank of America, the federal Paycheck Protection Program will be administered online only.
2. Clients must have a Business Online Banking account. If you do not currently have a Business Online Banking account you must sign up for Business Online Banking as soon as possible.
3. Apply for the federal Paycheck Protection Program at www.bankofamerica.com/SBResources beginning on Friday, April 3rd.
4. After completing the application process, you will receive online confirmation of the submission.
5. Bank of America will process your application as soon as possible.
6. We will contact you with next steps and to collect any required documents. Do not proactively deliver or send documents to our Financial Centers or banking teams.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
-14-

7.     You will be notified of the status of your loan application through email communications.

8.     Information about your application status will NOT be available through our Financial Centers or Contact Centers - due to the nature of this loan process and the steps involved.

9.     To prepare for your application process, review requirements listed on the U.S. Treasury website. These include:

- 2019 Payroll - total payroll for full year 2019, by employee, as reported to the IRS
- 2019 Independent Contractor Costs - Listing of 1099's-MISC for 2019 independent contractors, by person, as reported to the IRS (Note: Do NOT include 1099's for services)
- Payroll report as of February 15, 2020 or closest date after that date, by employee
- Other information

You're receiving this servicing email as part of your existing relationship with us.

55.     In the Initial Marketing Email, Defendants included several statements that affirmed its commitment to the "first-come, first-served" , including:

- "The Paycheck Protection Program is a federal relief program established by Congress and implemented by the U.S. Treasury Department and the Small Business Administration (SBA) with rules, requirements, protocols and processes that all participating banks, including Bank of America, must follow."
- "In order to ensure an orderly flow of these government-provided funds, we will follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website, that small businesses that plan to apply should do so with their current business loan provider."

56.     The Initial Marketing Email explained that Bank of America is limiting PPP loan applicants to those with a "pre-existing business lending and business deposit relationship with Bank of America", that the administration of the PPP loan program would  take place entirely online, and that "Bank of America will process your application as soon as possible."

57.     Only existing Bank of America customers were eligible to apply for PPP loans through Bank of America. As stated by Bank of America CEO on CNBC on April 6, 2020, "We have to focus on the borrowing clients to make sure we can take care of them."

58.     Bank of America's PPP loan application process was to be held entirely online. Bank of America claimed to its customers, including Plaintiffs, that the PPP "will be administered online only."[24] Borrowers were told "[a]fter completing the application process, you will receive online confirmation of the submission" and that "Bank of America will process your application as soon as possible."[25] Inquiries were to be routed online as well: "Information about your application status will NOT be available through our Financial Centers or Contact Centers – due to the nature of this loan process and the steps involved. You will be notified of the status of your loan application through email communications."

59.     Bank of America contracted with Intralinks to administer the PPP loan application process.  However, because of the limited amount of funds available under the PPP and the number of Bank of America customers that had a pre-existing business lending (either a Business Credit Card, line of credit or loan) and business deposit relationship with Bank of America, as of February 15, 2020, Bank of America and Intralinks knew that they would be unable to process, approve and fund every one of the PPP loan applications that Bank of America and Intralinks anticipated they would receive.  However, Defendants concealed such facts from Plaintiffs and the Class, as well as the general public, and additionally concealed from Plaintiff and the Class, as well as the general public, their plan to prioritizing the processing PPP applications for larger amounts first that they would and did received to maximize profits for the Bank of America and Intralinks.

---

[24] *See* https://about.bankofamerica.com/promo/assistance/latest-updates-from-bank-of-america-coronavirus/small-business-assistance (as posted on April 4, 2020)

[25] *Id.*

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
-16-

60.      Additionally, Intralinks concealed its limitations by boasted about its operational capacity to prioritize PPP loan applicants by representing on its website, e.g., that:

- "We innovate to enhance the value, speed and confidentiality of dealmaking, reporting and communications - driving success for our users. Our dedicated team empowers clients to leverage our technology with complete control and confidence."
- We created in "2017 - Industry first context-aware large-scale Wealth Management AI reporting solution."

61.      Intralinks adopted, approved and/or participating the preparation of the representations made in the Initial Marketing Email sent to Plaintiffs and the Class.

62.      Bank of America then affirmatively sent form emails to existing customers, including Plaintiffs,  who had submitted a PPP application with Bank of America to notifying them of what to do next (herein referred to as the "Applicant Email").

63.      When Plaintiffs, like every person who  submitted a PPP application with Bank of America, Plaintiffs, like all Class members, received the Applicant Email from Bank of America stating the following:

> Thank you for submitting your application for the Paycheck Protection Program to Bank of America
>
> You recently received your welcome letter and this is the next step in the application process - submitting the required documents.
>
> Bank of America is working with IntraLinks Exchange to gather your documents. That is our standard process, and we are using it to expedite this Small Business Administration program. We'll need you to upload your documentation to IntraLinks confidential and secure website. Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval.
>
> **What you need to do**
> Log into IntraLinks and upload the required documents:
> • Payroll processor records for the period including February 15, 2020
> • Payroll tax filings for 2019
> • For independent contractors; Form 1099-MISC for 2019
> • For sole proprietorship or self-employed; income and expenses, i.e., Profit & Loss Statement
> • Other documentation to support payroll expenses such as bank records

**How to Login**

- You can log into your IntraLinks Exchange using the following link: [REDACTED]
- Your IntraLinks ID is: [REDACTED]
- If you already have an IntraLinks password, and don't remember, click here.
- Don't use your Bank of America Online Banking password.

**What you need to know**

- Bank of America will review uploaded documents and contact you if further clarification or documentation is necessary
- Bank of America will process your loan application with the Small Business Administration as quickly as possible
- Bank of America will email you with the status once we receive a decision from the Small Business Administration
- Please do not deliver or send documents to Bank of America Financial Centers or banking teams.
- Information about your application status will NOT be available through Bank of America's Financial Centers or Contact Centers

Thank you for being a valued client of Bank of America.

64. Intralinks adopted, approved and/or participating the preparation of the representations made in the Applicant Email sent to Plaintiffs and the Class.

65. In the Applicant Email, Defendants included several statements that affirmed its commitment to the "first-come, first-served", including:

- Defendants committed to "[p]rocess your loan application with the Small Business Administration as quickly as possible."
- "Look for additional communications about your loan application to arrive by email."
- "We will contact you with next steps and to collect any required documents. Do not proactively deliver or send documents to our Financial Centers or banking teams. Information about your application status will NOT be available through our financial centers or contact centers due to the nature of this loan process and the steps involved."

66. However, rather than process PPP loan applications in accordance with the PPP's "first-come, first-served" requirement and its own assurances and obligations, Defendants

processed PPP loan applications in ways that prioritized certain applicants with later-submitted applications than other applicants with earlier-submitted applications.

67.     Defendants purposefully slowed down the processing of applications submitted by small businesses with lower requested loan amounts as well as those who were deemed to have a lower priority through a confusing and uncoordinated application process that was inadequately staffed to process applications on a "first-come, first-served" basis in order to obtain higher origination fees and maintain positive business relationships with their larger and/or favored commercial customers.

68.     In order to conceal from Plaintiffs and the Class, as well as the general public, the fact that Defendants were prioritizing those PPP applications for larger amounts first that would earn them the highest origination fees rather than processing PPP loan applications on a "first come, first served" basis as required by U.S. Treasury guidance, Bank of America, on its website, and in emails sent to Plaintiffs and the Class beginning on April 3, 2020, made the following representations:

> • "we will follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website, that small businesses that plan to apply should do so with their current business loan provider."
> • "We will contact you with next steps and to collect any required documents. Do not proactively deliver or send documents to our Financial Centers or banking teams."
> • we required and Plaintiffs and the Class qualified because "Small Business clients with a business lending and a business deposit relationship at Bank of America [are] eligible to apply for the Paycheck Protection Program through our bank."
> • we required and Plaintiffs and the Class qualified because by having "a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020." In fact, Bank of America CEO Brian Moynihan told CNBC on April 6, 2020, that the bank would focus on "borrowing clients" before turning to other small business customers and new clients, "We have to focus on the borrowing clients to make sure we can take care of them."

- Plaintiffs' and the Class' submission of a PPP loan application to Bank of America "[would be] the best and fastest method for applying for federal relief, based on the U.S. Treasury requirements and guidance."
- we required and Plaintiffs and the Class qualified because they were "Clients with existing relationships have the established accounts and underwriting verifications in place [that would] allow Bank of America to help provide the quickest access to the relief funds ...."
- we required and Plaintiffs and the Class qualified because "At Bank of America, the federal Paycheck Protection Program will be administered online only."
- we required and Plaintiffs and the Class qualified because "Apply for the federal Paycheck Protection Program at www.bankofamerica.com/SBResources beginning on Friday, April 3rd."
- we required and Plaintiffs and the Class qualified because "Bank of America is working with IntraLinks Exchange to gather your documents. That is our standard process, and we are using it to expedite this Small Business Administration program."
- we required and Plaintiffs and the Class qualified because "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval."

69. Defendants' representations were false, misleading and/or had a tendency to deceive the reasonable consumer because:

- Bank of America did not "follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website," and instead failed to disclose that Defendants would not process, approve and fund PPP loan applications on a "first-come, first-served" based on U.S. Treasury guidance.
- By stating "Do not proactively deliver or send documents to our Financial Centers or banking teams," Bank of America failed to disclose that Defendants were prioritizing larger PPP loan applications by allowing others to "deliver or send documents to our Financial Centers or banking teams" for faster PPP loan processing before processing the PPP loan applications of Plaintiffs and the Class.
- By stating "Do not proactively deliver or send documents to our Financial Centers or banking teams," Bank of America failed to disclose that would delay and did fail to process the PPP loan applications of Plaintiffs and the Class because they "[did] not proactively deliver or send documents to our Financial Centers or banking teams" or via IntraLinks Exchange that were not specifically requested by Bank of America.
- By stating "Small Business clients with a business lending and a business deposit relationship at Bank of America [are] eligible to

apply for the Paycheck Protection Program through our bank," Bank of America failed to disclose that being a "Small Business client[] with a business lending and a business deposit relationship at Bank of America[,]" was not the only requirement that to "be eligible to apply for the Paycheck Protection Program through our bank" but that smaller PPP loan applications would not be processed, approved and funded on a "first-, first-served" basis and would instead be processed, approved and funded behind Bank of America's larger PPP loan applications.

● By stating that we required and Plaintiffs and the Class qualified because they had "a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020," Bank of America failed to disclose that being a "a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020" was not the only requirement that to "be eligible to apply for the Paycheck Protection Program through our bank" that but that smaller PPP loan applications would not be processed, approved and funded on a "first-come, first-served" basis and would instead be processed, approved and funded behind Bank of America's larger PPP loan applications.

● By stating that Plaintiffs' and the Class' submission of a PPP loan application to Bank of America "[would be] the best and fastest method for applying for federal relief, based on the U.S. Treasury requirements and guidance," Bank of America failed to disclose that PPP loan applications would not be processed, approved and funded on a "first-come, first-served" basis.

● By stating that we required and Plaintiffs and the Class qualified because they were "Clients with existing relationships have the established accounts and underwriting verifications in place [that would] allow Bank of America to help provide the quickest access to the relief funds," Bank of America failed to disclose that PPP loan applications would not be processed, approved and funded on a "first-come, first-served" basis.

● By stating that we required and Plaintiffs and the Class qualified because "At Bank of America, the federal Paycheck Protection Program will be administered online only," Bank of America failed to disclose that Defendants were prioritizing larger PPP loan applications by allowing others to "deliver or send documents to our Financial Centers or banking teams" and/or submit applications before April 3rd and/or were using IntraLinks Exchange to prioritizing larger PPP loan applications for faster PPP loan processing.

● By stating that we required Plaintiffs and the Class "Apply for the federal Paycheck Protection Program at www.bankofamerica.com/SBResources beginning on Friday, April 3rd," Bank of America failed to disclose that Defendants were prioritizing larger PPP loan applications by allowing others to "deliver or send documents to our Financial Centers or banking teams" and/or submit applications before April 3rd and/or were using IntraLinks Exchange to prioritizing larger PPP loan applications for faster PPP loan processing.

- By stating that "Bank of America is working with IntraLinks Exchange to gather your documents. That is our standard process, and we are using it to expedite this Small Business Administration program," Bank of America failed to disclose that Bank of America was not using "IntraLinks Exchange ... to expedite this Small Business Administration program" but instead was using IntraLinks Exchange to prioritizing larger PPP loan applications for faster PPP loan processing.

- By stating that "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval," Bank of America failed to disclose that Defendants were prioritizing larger PPP loan applications by allowing others to "deliver or send documents to our Financial Centers or banking teams" and/or were using IntraLinks Exchange to prioritizing larger PPP loan applications for faster PPP loan.

- By stating that "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval," Bank of America failed to disclose that PPP loan applications would not be processed, approved and funded on a "first-come, first-served" basis.

- By stating that "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval," Bank of America failed to disclose that it had no intention of processing, approving and funding PPP loan applications on a "first-come, first-served" basis, and instead intended to flagPPP loan applications as having missing or incomplete documentation or needing documentation not previously requested by Bank of America or requesting documentation be re-submitted to Bank of America via IntraLinks Exchange as an excuse not to process, approve and fund PPP loan applications on a "first-come, first-served" basis.

70.     Had Bank of America informed Plaintiffs and the Class of the truth, then Plaintiffs and the Class would have submitted their PPP applications to other lending institutions that were processing applications on a first come, first served basis.  By prioritizing those PPP applications for larger amounts first that would earn them the highest origination fees rather than processing PPP loan applications on a "first come, first served" basis as required by  U.S. Treasury guidance, Defendants enriched themselves at the expense of American taxpayers, undercut the intent of Congress and the Senate, undercut the dollar-per-dollar effectiveness of the CARES Act itself,

and caused irreparable harm to countless small businesses and workers who actually needed the temporary funding of the PPP loans to make payroll, retain their employees, and stay afloat.

71.     Defendants knew their clients trusted them and believed they would administer the PPP as required, but chose to exploit their clients' trust.  As a result of Defendants' greed and focus on their own financial incentives, countless small businesses were prevented from benefiting from the program designed to help them survive during the current Coronavirus crisis. Moreover, the delay and uncertainty caused by preferring bigger loan applications or "concierge" customers have wreaked significant harm on Plaintiffs and Class members. Put simply, every day that passes without relief for these small businesses and other qualified applicants—and the hundreds of thousands of hardworking Americans they employ—pushes them closer or into

| Loan Size | Approved Loans | Approved Dollars | % of Count | % of Amount |
|---|---|---|---|---|
| $150K and Under | 725,058 | $37,178,984,187 | 70.05% | 15.02% |
| >$150K - $350K | 156,590 | $35,735,615,983 | 15.13% | 14.44% |
| >$350K - $1M | 102,473 | $59,291,602,643 | 9.90% | 23.95% |
| >$1M - $2M | 31,176 | $43,278,883,532 | 3.01% | 17.48% |
| >$2M - $5M | 16,516 | $49,288,997,593 | 1.60% | 19.91% |
| >$5M | 3,273 | $22,769,309,582 | 0.32% | 9.20% |

- Overall average loan size is $239,152.

financial ruin.

**Higher Value Loan Applicants Approved at Great Percentages**

72.     The SBA tracked the numbers of approved loans and dollars for both the first 10 days of the PPP (April 3 through April 13, first chart) and through the last 3 days (April 14 through April 16, second chart).

73.     Not only was the overall average loan size greater during the first ten days (see charts above: $239,152 vs. $206,000), but the number of approved loans for applications under $350,000 was significantly greater in the last three days before PPP funds ran out when compared to the first ten days: 881,648 approved loans in the first ten days versus 1,453,954 approved loans as of the last day PPP funds were available.  In the period between April 14 through April 16, 572,306 loans were approved, representing a 65% increase.

74.     That 65% increase is even more telling when compared with the difference in approved loans for applications above $2,000,000 for the same period. In the first ten days, 19,789 loans were approved versus 25,978 loans approved as of the last day PPP funds were available, meaning that 6,189 loans were approved between April 14 through April 16, equaling a 31% increase.

75.     With such varying data, it is clear that lenders such as Defendants did not process loans on a "*first-come, first-served*" basis as required by the SBA, but that the loan amount influenced when it was processed and approved.

76.     For example, early reports note that Defendants failed to provide the same

| Loan Size | Approved Loans | Approved Dollars | % of Count | % of Amount |
|---|---|---|---|---|
| $150K and Under | 1,229,893 | $58,321,791,761 | 74.03% | 17.04% |
| >$150K - $350K | 224,061 | $50,926,354,675 | 13.49% | 14.88% |
| >$350K - $1M | 140,197 | $80,628,410,796 | 8.44% | 23.56% |
| >$1M - $2M | 41,238 | $57,187,983,464 | 2.48% | 16.71% |
| >$2M - $5M | 21,566 | $64,315,474,825 | 1.30% | 18.79% |
| >$5M | 4,412 | $30,897,983,582 | 0.27% | 9.03% |

- Overall average loan size is $206K.

knowledge, technological support, and resources for their retail branches to process applications

made by small businesses than they did for their larger and more prominent customers.[26] This led to nearly all of Defendants' larger and more prominent customers receiving loan assistance through the PPP via a prioritized application review and submission while large percentages of their retail branch customers' applications were de-prioritized without regard to when the applications were filed.

77.   Defendants claim they "will process your loan application with the Small Business Administration as quickly as possible."  Defendants also assured that they would communicate decisions on loans: "Bank of America will email you with the status once we receive a decision from the Small Business Administration."

78.   However, Defendants misled and deceived their clients, including Plaintiffs, into believing applications for loans through the PPP were processed in the order received with no regard to loan amount, when in fact the loan amount certainly influenced the order in which loans were processed and approved.

79.   If Defendants had not misled and deceived their small business clients, such clients could have submitted their applications for loans through the PPP with other lenders that were following the required "first-come, first-served" application processing order.  Because small businesses were only allowed to receive one PPP loan, they would not go to another lender for assistance after submitting an application with Defendants.

---

[26] https://www.forbes.com/sites/kotlikoff/2020/04/21/bank-of-americas-awful-handling-of-payroll-protection-loans---my-case-study/#733e17772f6e (last visited April 22, 2020); https://www.forbes.com/sites/kotlikoff/2020/04/22/bank-of-america-president-brian-monyihan-listen-to-these-small-business-owners-on-bofas--horrendous-failure-to-service-payroll-protection-loans/#71805d5657fa (last visited April 24, 2020)

80.     Defendants purposefully slowed down the processing of applications submitted by small businesses with lower requested loan amounts through a confusing and uncoordinated application process that was inadequately staffed to process applications on a "first-come, first-served" basis in order to obtain higher origination fees and maintain positive business relationships with their larger commercial customers.

81.     By purposefully slowing down the processing of applications when the SBA and Defendants themselves promised that PPP loans would be provided on a "first-come, first-served" basis, Defendants effectively botched financial transactions meant to benefit Plaintiffs and Class members.

82.     Defendants knew their clients trusted them and believed they would administer the PPP as required, but chose to exploit their clients' trust.  As a result of Defendants' greed and focus on their own financial incentives, countless small businesses were prevented from timely benefitting from the program designed to help them survive during the current Coronavirus crisis. Moreover, the delay and uncertainty caused by preferring bigger loan applications or "concierge" customers have wreaked devastating harm on Plaintiffs and Class members. Put simply, every day that Bank of America decided to prioritize favored applicants over those who were first in line including Plaintiffs, constituted a loss in the time value of money that they otherwise would have used for their businesses in addition to other real-world monetary damages caused by the delay. Any eventual and later provision of a PPP loan does not remedy or compensate those who were previously overlooked.

**Specific Allegations as to Informatech**

83.     Informatech learned of the CARES Act and PPP when it was passed and was signed into law by President Trump.

84.    Informatech's, knowing that its business would be seriously impacted by the Coronavirus crisis and the stay-at-home or shelter-in-place orders, sought to obtain a PPP loan through a qualified financial institution.

85.    On or about April 3, 2020, Informatech, like all Class members, received the Initial Marketing Email from Bank of America on how to apply for a PPP loan with Bank of America. Based upon the Initial Marketing Email, Informatech was eligible for a PPP loan through Bank of America.

86.    On or about April 6, 2020, in reliance on the Initial Marketing Email, Informatech submitted an application for loan assistance through the PPP with Defendants. Informatech chose to submit a loan application with Defendants, rather than other PPP loan providers, because Informatech had a pre-existing banking relationship with Bank of America and believed the statements made in the Initial Marketing Email, notably that Defendants would process its application as soon as possible.

87.    Informatech uploaded all requested information the IntraLinks Exchange as instructed by Bank of America in response and in reliance upon the Initial Marketing Email, including such statements as:

- Bank of America is working with IntraLinks Exchange to gather your documents. That is our standard process, and we are using it to expedite this Small Business Administration program."
- "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval."
- "Bank of America will process your loan application with the Small Business Administration as quickly as possible."
- "We'll need you to upload your documentation to IntraLinks confidential and secure website."
- "Bank of America will review uploaded documents and contact you if further clarification or documentation is necessary"
- "Please do not deliver or send documents to Bank of America Financial Centers or banking teams."

88.     Importantly, the Initial Marketing Email and the application on Intralinks Exchange did not request from Informatech, or any other Bank of America's PPP loan applicant, either (1) copies of Payroll tax filings for 2020, or (2) specifically request copies of IRS Form 940 or IRS Form 941 for 2019 or 2020.

89.     Despite being promised that Bank of America would follow up with Informatech, Defendants did not contact Informatech with "next steps" until April 11, 2020, when a representative of Defendants called Informatech to inquire about applying and submitting documents for its loan application. By this time, Informatech had not receive the Intralinks Exchange link to submit documents for Informatech's loan application. A second call by another representative of Defendants was received on April 13, 2020.

90.     On the same day, April 13, 2020, Informatech submitted all requested documents to the Intralinks Exchange.

91.     Based on the "first-come, first-served" rule, Informatech's application should have been promptly submitted to the SBA. Instead, Defendants apparently delayed processing the application and submitting to the SBA for approval.

92.     On April 15, 2020, Defendants sent Informatech an e-mail requesting Informatech to verify certain information. The link included in the email took Informatech to its account page, which did not request it to verify information for the PPP.

93.     On the same day, April 15, Informatech contacted a local branch representative of Defendants, to ask about the status of its application. Informatech received a response on April 16, 2020, stating the entirety of the $349 billion allocated for the PPP loans had been committed.

94.     After being told that the entirety of the $349 billion allocated for PPP Loans had been committed, Informatech continued to request documentation through the Intralinks

Exchange; the links submitted, however, directed Informatech to a webpage that did not request Informatech to provide any documentation or verification.

95.     On April 23, well after the entirety of the $349 billion was already allocated, Informatech received an e-mail communication from Defendants labeled as "URGENT" and requesting Informatech to click a link to confirm information purportedly required by Defendants. When Informatech clicked the link, Informatech was directed to its account page, which did not identify any information that Informatech needed to confirm, as the email had indicated, nor note any deficiencies with its application.

96.     Because Informatech submitted an application for a loan through the PPP with Defendants, it was denied access to funds that would have helped it during this economic crisis and was prevented from seeking assistance from a different lender.

97.     After Informatech filed its original Complaint against Bank of America and after a second round of PPP loan funds were made available by Congress, Bank of America contacted Informatech about providing a PPP loan.  Informatech was eventually able to obtain a PPP loan through Bank of America. Because of the delay, Informatech suffered economic damages.

**Specific Allegations as to Studio 1220**

98.     Studio 1220 learned of the CARES Act and PPP when it was passed and was signed into law by President Trump.

99.     Studio 1220, knowing that its business would be seriously impacted by the Coronavirus crisis and the stay-at-home or shelter-in-place orders, sought to obtain a PPP loan through a qualified financial institution.

100.     On April 3, 2020, Studio 1220, like all Class members, received the Initial Marketing Email from Bank of America on how to apply for a PPP loan with Bank of America.

Based upon Initial Marketing Email, Studio 1220 was eligible Bank of America customer because Studio 1220 had a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020.

101. On April 6, 2020, in reliance on the Initial Marketing Email, Studio 1220 submitted an application for loan assistance through the PPP with Defendants.  Studio 1220 chose to submit a loan application with Defendants, rather than other PPP loan providers, because Studio 1220 had a pre-existing business lending and business deposit relationship with Bank of America and believed the statements made in Initial Marketing Email, e.g. Defendants would process its application as soon as possible.

102. Importantly, the Initial Marketing Email did not request from Studio 1220, or any other Bank of America's PPP loan applicant, either (1) copies of Payroll tax filings for 2020, or (2) specifically request copies of IRS Form 940 or IRS Form 941 for 2019 or 2020.

103. In response to the Initial Marketing Email and as confirmed on the IntraLinks Exchange, Studio 1220, on April 6, 2020, uploaded all requested and necessary documentation on the IntraLinks Exchange as instructed by Bank of America, including ADP Payroll processor records for the period including February 15, 2020; Payroll tax filings for 2019; the PPP_Addendum_BofA; April 6 CARES Loan Request Package; and PPP Document Requirements.

104. On April 6, 2020, Studio 1220 uploaded all requested and necessary documentation on the IntraLinks Exchange as instructed by Bank of America in response and in reliance upon the Initial Marketing Email, in reliance upon Bank of America's representations that:

- "Bank of America is working with IntraLinks Exchange to gather your documents. That is our standard process, and we are using it to expedite this Small Business Administration program."
- "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval."
- "Bank of America will process your loan application with the Small Business Administration as quickly as possible."
- "We'll need you to upload your documentation to IntraLinks confidential and secure website."
- "Bank of America will review uploaded documents and contact you if further clarification or documentation is necessary"
- "Please do not deliver or send documents to Bank of America Financial Centers or banking teams."

105.   On April 6, 2020, Studio 1220 receive the Applicant Email. On April 8, 2020, a Bank of America employee confirmed that Bank of America had received Studio 1220's PPP application and documentation on the IntraLinks Exchange, did not request any additional information from Plaintiff, and did not tell Studio 1220 that its PPP loan application of documentation submitted was missing or complete.

106.   Based on the "first-come, first-served" rule, Studio 1220's application should have been promptly submitted to the SBA. Instead, Bank of America and Intralinks negligently and intentionally delayed processing the application and submitting to the SBA for approval.

107.   After it was widely reported that the first round had run out of funding on April 16, 2020, Bank of America and Intralinks then attempted to cover up their failure to process Studio 1220's PPP loan application by asking for additional documents that were never requested in Bank of America's April 6, 2020 email sent to Studio 1220 and that was never requested by Bank of America's employee during his April 8, 2020 telephone call with Studio 1220's officer. As part of their cover up, on April 19, 2020, Bank of America sent an email to Studio 1220 stating in relevant part: "After careful review, the following must be resolved in order to continue processing your application. Checked boxes indicate missing or incomplete document that must

be submitted to Bank of America via Intralinks Exchange:" and, checked a single box stating "2020 Tax form 941 or Payroll processor records for the period between Feb 14-29, 2020," documents that were not requested in Bank of America's April 6, 2020 email sent to Studio 1220 or requested by Bank of America's employee during his April 8, 2020 telephone call with Studio 1220's officer. Nevertheless, on April 20, 2020, Studio 1220 complied with Bank of America's and Intralinks' subsequent request and uploaded ADP Form 941 for the period covering "Feb 14-29, 2020." However, Studio 1220 again got nothing: no approval, no funding of its PPP loan application.

108.    Thereafter, Bank of America and Intralinks again attempted to cover up their failure to process Studio 1220's PPP loan application by asking for yet another document that had already been provided by Studio 1220 to Bank of America via Intralinks Exchange. As part of their cover up, on April 28, 2020, Bank of America sent an email to Studio 1220 stating in relevant part: "After careful review, the following must be resolved in order to continue processing your application. Checked boxes indicate missing or incomplete document that must be submitted to Bank of America via Intralinks Exchange:" and, checked a single box stating "Paycheck Protection Program Loan Amount Template (located in your Bank of America IntraLinks Instructions folder)." However, Studio 1220 had already uploaded "Paycheck Protection Program Loan Amount Template" to Bank of America via Intralinks Exchange on April 6, 2020. Thereafter, on April 30, 2020, Bank of America sent Studio 1220 an email confirming that it has completed all of the steps needed to submit its PPP loan application and stating, "We are ready to send your request for a [PPP] loan to the Small Business Administration (SBA)." Thus, by April 30, 2020, Defendants still had not processed Studio 1220's PPP loan application.

109.   Because Studio 1220 submitted an application for a loan through the PPP with Defendants, Studio 1220 was denied access to funds that would have helped it during this economic crisis and was prevented from seeking assistance from a different lender at an earlier time.

110.   After Bank of America and Intralinks negligently and intentionally delayed Studio 1220's PPP loan application, Studio 1220 applied for and received a PPP loan through a different lender on May 1, 2020.  It was only after Studio 1220 filed a lawsuit against Bank of America and Intralinks and received a PPP loan from a different lender, did Bank of America and Intralinks processing Studio 1220's application and submitted to the SBA for approval on or about May 19, 2020.  Because of Bank of America's and Intralinks' substantial delay in processing Studio 1220's PPP loan application, Studio 1220 suffered economic damages.

## VI.   CLASS ACTION ALLEGATIONS

111.   Plaintiffs bring this action on behalf of themselves and on behalf of the following class (the "Class") pursuant to Rule 23:

> All eligible persons or entities in the State of California who applied for a loan under the PPP with Defendants and whose applications were not processed by Defendants on a first-come, first-served basis before April 16, 2020[27].

112.   Excluded from the proposed Class are Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-

---

[27] April 16 is **Error! Main Document Only.**the day when it was reported that PPP had been depleted.

*See*, **Error! Main Document Only.**(https://www.pbs.org/newshour/politics/it-took-13-days-for-the-paycheck-protection-program-to-run-

out-of-money-what-comes-next).

conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

113.    This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

114.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class members in a single action will provide substantial benefits to the parties and Court.

115.    Questions of law and fact common to Plaintiffs and the Class include, but are not limited to, the following:

- Whether Defendants violated the regulations for administering, processing, and handling loans through the PPP;
- Whether Defendants made false, misleading, and deceptive misrepresentations and omissions regarding their administration, processing, and handling of the applications for loans from small businesses through the PPP;
- Whether Defendants failed to the administer, process, and handle loans on a "first-come, first-served" basis as required by the PPP;
- Whether Defendants administered, processed, and handled larger loans before smaller loans;
- Whether Defendants violated various California laws;
- Whether Defendants engaged in false advertising;
- Whether Defendants fraudulently concealed material facts from their clients;
- Whether Defendants' conduct was negligent per se;
- Whether Defendants breached a fiduciary duty;
- Whether Plaintiffs and members of the Class are entitled to statutory and punitive damages; and
- Whether Plaintiffs and the members of the Class are entitled to declaratory relief.

116.    Defendants engaged in a course of common conduct that gave rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the

Class.  Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

117.   Plaintiffs' claims are typical of those of the members of the Class because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

118.   Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

119.   Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

120.   Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

121.   As a result of the foregoing, class treatment is appropriate.

## FIRST CAUSE OF ACTION
### Negligence

122.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

123.   Defendants' conduct is negligent per se.

124.   As set forth above and below, Defendants violated their statutory duties under numerous statutes, including the FAL and UCL.

125.   Additionally, Defendants must comply with SBA regulations such as 13 CFR Part 120.140, which states that lenders "must act ethically and exhibit good character" that

prohibits "engag[ing] in conduct reflecting a lack of business integrity or honesty." 13 CFR Part 120.140(f).

126.   Defendants' violations of such statutes are negligence per se and were a substantial factor in the harm suffered by Plaintiffs and the Class members, including their submission of applications for loans through the PPP with Defendants who violated the "first-come, first-served" basis for processing loan applications, as dictated by the PPP, when they processed larger loans ahead of smaller loans.

127.   In addition to their statutory duty under the SBA regulations, Defendants assumed a duty to process PPP loan applications in a "first-come, first-served" basis by agreeing to follow the SBA regulations through their application to become a PPP lender and by affirmatively representing to their customers that they would process applications in accordance with SBA regulations.

128.   Defendants had a special relationship with Plaintiffs and the Class members by virtue of their banking relationship and because they were intended beneficiaries of the PPP loan funds.   Defendants botched financial transactions meant to benefit Plaintiffs and the Class members.

129.   As set forth above, such laws were intended to ensure that a company's claims about its services are truthful and accurate and that it engaged in business in an ethically and honest manner.

By virtue of Defendants' negligence, Plaintiffs and the Class members have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

## SECOND CAUSE OF ACTION
### Fraudulent Concealment

130.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

131.   Defendants made misrepresentations and omissions to Plaintiffs, the Class members, and the public about their process and funding of PPP loans which were false, misleading and/or had a tendency to deceive the reasonable consumer to believe that Defendants would process and fund PPP loan applications fair manner and on a "first-come, first-served" basis. However, Defendants did not disclose that PPP loan applications would be processed on other criteria (as detailed herein) besides a "first-come, first-served" basis in violation of SBA regulations and Defendants own claims.

132.   Defendants either knew or recklessly disregarded the potential ramifications of disclosing such information to Plaintiffs and the Class members, and failed and/or refused to disclose this information, fraudulently concealing it and/or omitting the true facts.

133.   Plaintiffs and the Class members were unaware of Defendants' concealment or suppression of said material facts, were induced to apply for PPP loans with Defendants and were caused by Defendants to rely upon and falsely believe that Defendants would process and fund their PPP loan applications in accordance with SBA regulations and on a "first-come, first-served" basis when they would not, and concealed from them the true facts regarding Defendants' prioritization of other PPP loan applications.

134.   Plaintiffs and the Class members could not have discovered, in the exercise of reasonable diligence, Defendants' failure to disclose the true facts concerning Defendants' PPP loan program. Had Plaintiffs and the Class members known of the concealed facts, they would not have made applications with Defendants or would have applied with other lenders.

135.   As a proximate result of the foregoing omissions and failures to disclose, Plaintiffs and the Class members have suffered damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
**Breach of Fiduciary Duty**

136.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

137.   Defendants owed and owe Plaintiffs and the Class members fiduciary obligations. By reason of their fiduciary relationships, the Defendants owed and owe Plaintiffs and the Class members the highest obligation of good faith, fair dealing, loyalty, and due care.

138.   Defendants violated and breached their fiduciary duties to Plaintiffs and the Class members.

139.   Defendants made false, misleading, and deceptive misrepresentations and omissions regarding their administration, processing, and handling of the applications for loans from small businesses through the PPP.

140.   Because Defendants misrepresented their compliance with SBA regulations and requirements and California law, and omitted to disclose the material information as to their practice or policies of favoring their customers and/or larger loans, the Defendants did not engage in arms-length transactions with Plaintiffs and other Class members.

141.   Additionally, Defendants unjustly profited from the administration, processing, and handling of loans through the PPP as they received origination fees based on the loan amounts.

142.   Consequently, as alleged herein, Defendants prioritized larger loans- and thus larger fees—over smaller loans to the detriment of Plaintiffs and the Class.

143.   As a direct and proximate result of Defendants' breaches of their fiduciary obligations, Plaintiffs and the Class members have sustained significant damages, as alleged herein. As a result of the misconduct alleged herein, Defendants are liable to Plaintiffs and the Class members.

Plaintiffs and the Class members seek declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## FOURTH CAUSE OF ACTION
### Violation of California Business & Professions Code § 17200, et seq.

144.   Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

145.   The Unfair Competition Law ("UCL") prohibits any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

**Fraudulent**

146.   Defendants' misrepresentations and related omissions that they were working tirelessly to administer, process, and handle loan applications through the PPP in order to provide assistance to as many clients as possible and that they were otherwise following the requirements of the PPP are literally false, misleading, and likely to deceive the public.

**Unlawful**

147.   As alleged herein, Defendants have advertised and represented their administration of loans through the PPP, such that Defendants' actions as alleged herein violate at least the following law: The False Advertising Law, California Business & Professions Code § 17500, *et seq.* (the "FAL").

**Unfair**

148. Defendants' conduct with respect to the administration, processing, and handling of the applications from small businesses for loans through the PPP was unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to their clients. The utility of their conduct, if any, does not outweigh the gravity of harm to their victims.

149. Defendants' conduct with respect to the administration, processing, and handling of the applications from small businesses for loans through the PPP was also unfair because in order to maximize their financial gain associated with loans through the PPP, they prioritized larger loans over smaller ones while deceiving and misleading small business owners into believing their loans were processed on a "first-come, first-served" basis, as required by the PPP.

150. In accordance with California Business & Professions Code §17203, Plaintiffs seek an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to discharge the funds they received from the PPP to Plaintiffs and the Class members.

## FIFTH CAUSE OF ACTION
### Violation of California's False Advertising Law
### California Business & Professions Code § 17500, et seq.

151. Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

152. California's False Advertising Law ("FAL") prohibits the performance of services, professional or otherwise "which [are] untrue or misleading." Cal. Bus. & Prof. Code §17500.

153. As set forth herein, Defendants' misrepresentations and omissions regarding compliance with applicable laws and regulations, including SBA rules and requirements, were literally false, misleading, and likely to deceive the public.

154.    Defendants knew or reasonably should have known that all these claims were untrue or misleading.

155.    Plaintiffs and the Class members are entitled to statutory, and equitable relief in the amount of money in their respective PPP loan applications.

**VII.    DEMAND FOR JURY TRIAL**

156.    Plaintiffs demand a trial by jury on all issues so triable.

**VIII.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, prays for the following for relief:

1.    Certifying the proposed Class; and appointing Plaintiffs as Class representatives, and their undersigned counsel as Class counsel;

2.    An order requiring Defendants to bear the costs of class notice;

3.    An order enjoining Defendants from administering, processing, or handling loans through the PPP in violation of SBA regulations and requirements or California law;

4.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as alleged herein, and injunctive relief to remedy Defendants' past conduct;

5.    An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

6.    An order requiring Defendants to pay punitive damages on any count so allowable;

7.    An order requiring Defendants to pay all statutory damages permitted under the counts alleged herein;

8.     An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiffs and the Class members; and

9.     An order providing for all other such equitable relief as may be just and proper.

Date:   September 25, 2020                         Respectfully submitted,

                                                   **WHITFIELD BRYSON LLP**

                                                   */s/ Alex R. Straus*
                                                   WHITFIELD BRYSON LLP
                                                   Alex R. Straus (SBN 321366)
                                                   16748 McCormick Street
                                                   Los Angeles, CA 91436
                                                   Tel.: (310) 450-9689
                                                   E-mail:  alex@whitfieldbryson.com

                                                   **WHITFIELD BRYSON LLP**
                                                   Daniel K. Bryson
                                                   (*pro hac vice* forthcoming)
                                                   Scott C. Harris
                                                   (*pro hac vice* forthcoming)
                                                   Patrick M. Wallace
                                                   (*pro hac vice* forthcoming)
                                                   900 W. Morgan Street
                                                   Raleigh, NC 27605
                                                   Tel:  (919) 600-5000
                                                   Fax:  (919) 600-5035
                                                   E-mail: dan@whitfieldbryson.com
                                                   scott@whitfieldbryson.com
                                                   pat@whitfieldbryson.com

                                                   **KEEGAN & BAKER, LLP**
                                                   Patrick N. Keegan, Esq. (SBN 167698)
                                                   2292 Faraday Avenue, Suite 100
                                                   Carlsbad, CA 92008
                                                   Tel:     (760) 929-9303
                                                   Fax:     (760) 929-9260
                                                   Email: pkeegan@keeganbaker.com

**BERGER MONTAGUE PC**
Benjamin Galdston (Bar No. 211114)
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
Tel: (619) 489-0300
E-mail: bgaldston@bm.net

**LOCKRIDGE GRINDAL NAUEN P.L.L.P**.
Robert K. Shelquist
(*pro hac vice* forthcoming)
Rebecca A. Peterson (SBN 241858)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel.: (612) 339-6900
Fax: (612) 339-0981
E-mail: rkshelquist@locklaw.com
rapeterson@locklaw.com

**GREG COLEMAN LAW PC**
Gregory F. Coleman
(*pro hac vice* forthcoming)
First Tennessee Plaza
800 South Gay Street, Suite 100
Knoxville, TN 37929
Tel.: (865) 247-0080
E-mail: greg@gregcolemanlaw.com

*Attorneys for Plaintiff and the Proposed Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28