1  Janice P. Brown, Esq. (SBN 114433)
   jbrown@meyersnave.com
2  Arlene R. Yang, Esq. (SBN 297450)
   ayang@meyersnave.com
3  MEYERS, NAVE, RIBACK, SILVER & WILSON
   600 B Street, Suite 1650
4  San Diego, California 92101
   Telephone: (619) 330-1700
5  Facsimile: (619) 330-1701

6  Attorneys for Defendants
   *Bank of America Corporation and*
7  *Bank of America, N.A.*

8  (additional counsel on signature page)

9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12

13  INFORMATECH CONSULTING, INC., and          Case No. 3:20-cv-02892-VC
    STUDIO 1220, INC., Individually and on             CONSOLIDATED
14  behalf of All Others Similarly Situated,
                                                *[Assigned for all purposes to*
15              Plaintiffs,                      *Judge Vince Chhabria]*

16        v.

17  BANK OF AMERICA CORPORATION;               **BANK OF AMERICA CORPORATION**
    BANK OF AMERICA, N.A.; and                 **AND BANK OF AMERICA, N.A.'S**
18  INTRALINKS, INC.,                          **NOTICE OF MOTION AND MOTION TO**
                                               **DISMISS PURSUANT TO FED. R. CIV. P.**
19              Defendants.                     **12(b)(1) AND 12(b)(6); MEMORANDUM**
                                               **OF POINTS AND AUTHORITIES IN**
20                                             **SUPPORT THEREOF**

21
                                               Date: December 10, 2020
22                                             Time: 10:00 a.m.
                                               Judge:  Hon. Vince Chhabria
23                                             Location:  San Francisco Courthouse
                                                          Courtroom 4 – 17th Floor
24                                                        450 Golden Gate Avenue
                                                          San Francisco, CA 94102
25

26                                             Consolidated FAC Filed: September 25, 2020

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>NOTICE OF MOTION AND MOTION</u>

**TO THE COURT, PLAINTFF, AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 10, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 4, 17th Floor of the United States District Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Vince Chhabria, Defendants Bank of America, Corporation and Bank of America, N.A. (together, "BofA"), by and through its undersigned attorneys, will and hereby do move the Court to dismiss Plaintiff's Complaint, and each cause of action, filed against BofA.

This Motion is made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that this Court lacks subject matter jurisdiction and Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Complaint fails to allege facts sufficient to state any claim upon which relief can be granted. This motion is based upon this Notice of Motion and Motion, the included Memorandum of Points and Authorities, the declarations of Chris Yuasa and Jesse T. Smallwood, any reply memorandum, the filings in this action, and such other written and oral argument as may be presented to the Court.

Respectfully submitted,

Dated: October 26, 2020

**MEYERS, NAVE, RIBACK, SILVER & WILSON**

By:     */s/ Arlene R. Yang*

Janice P. Brown (SBN 114433)
Arlene R. Yang (SBN 297450)
600 B Street, Suite 1650
San Diego, CA 92101
Tel. 619-330-1700
Fax 619-330-1701
jbrown@meyersnave.com
ayang@meyersnave.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WILLIAMS & CONNOLLY LLP**
Enu A. Mainigi (pro hac vice)
Kenneth C. Smurzynski (pro hac vice)
Craig D. Singer (pro hac vice)
Jesse T. Smallwood (pro hac vice)
725 12th Street, N.W.
Washington, D.C. 20005
Tel. 202-434-5000
Fax 202-434-5029
emainigi@wc.com
ksmurzynski@wc.com
csinger@wc.com
jsmallwood@wc.com

Attorneys for Defendants
*Bank of America Corporation and*
*Bank of America, N.A.*

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................2

        A.     THE PPP PROGRAM ..............................................................................2

        B.     PLAINTIFFS' LOAN APPLICATIONS ..................................................3

        C.     PLAINTIFFS' COMPLAINTS .................................................................4

III.    ARGUMENT ........................................................................................................5

        A.     LEGAL STANDARD................................................................................5

               1.     12(b)(1) Motion for Mootness ....................................................... 5

               2.     Rule 12(b)(6) Motion for Failure to State a Claim under
                      Rules 8 and 9(b) ............................................................................. 6

        B.     PLAINTIFFS LACK STANDING AND THEIR CLAIMS ARE MOOT..............7

               1.     Receipt of PPP Loans Moots Plaintiffs' Claims ......................... 8

               2.     Plaintiffs' UCL and FAL Claims Lack a Redressable Injury .................... 9

        C.     PLAINTIFFS FAIL TO STATE A CLAIM ........................................10

               1.     Plaintiffs Fail to Plead Any Claim Plausibly or With Specificity............. 10

               2.     Plaintiffs Fail To State a Claim Against Bank of America
                      Corporation ................................................................................ 21

IV.     CONCLUSION....................................................................................................21

1

## TABLE OF AUTHORITIES

2

**CASES**

3   *1617 Westcliff LLC v. Wells Fargo Bank N.A.*,

4       686 F. App'x 411 (9th Cir. 2017) ...................................................................18, 19

5   *Am. Rivers v. Nat'l Marine Fisheries Serv.*,

6       126 F.3d 1118 (9th Cir. 1997) ..............................................................................6

7   *Arcade Water Dist. v. United States*,

8       28 F.3d 104 (9th Cir. 1994) .................................................................................20

9   *Ashcroft v. Iqbal*,

10      556 U.S. 662 (2009)..............................................................................6, 11, 12

11  *Attygala v. Wells Fargo Bank, N.A.*,

12      2013 WL 12129400 (C.D. Cal. May 9, 2013) ................................................18, 19

13  *Badame v. J.P. Morgan Chase Bank, N.A.*,

14      641 F. App'x 707 (9th Cir. 2016) .......................................................................19, 20

15  *Bank of Am. Corp. v. Superior Court*,

16      198 Cal. App. 4th 862 (2011) .................................................................................19

17  *Beshwate v. BMW of N. Am., LLC*,

18      No. 2017 WL 6344451 (E.D. Cal. Dec. 12, 2017) ..............................................16

19  *Blanton v. Fed. Home Loan Mortg. Corp.*,

20      2016 WL 1158591 (D. Or. Feb. 29, 2016)..............................................................8

21  *Bradshaw v. SLM Corp.*,

22      652 F. App'x 593 (9th Cir. 2016) ..........................................................................19

23  *Cabanilla v. Wachovia Mortg.*,

24      2012 WL 13020028 (C.D. Cal. Mar. 20, 2012)......................................................19

25  *Campion v. Old Republic Home Prot. Co.*,

26      272 F.R.D. 517 (S.D. Cal. 2011) .............................................................................9

27  *Cansino v. Bank of America* (2014)

28      224 Cal.App.4th 1462 ...................................................................1, 3, 15, 22

*Casault v. Fed. Nat. Mortg. Assn*,

    915 F. Supp. 2d 1113 (C.D. Cal. 2012) ..................................................................3

*Cetacean Cmty. v. Bush*,

    386 F.3d 1169 (9th Cir. 2004) ...............................................................................6

*Cheslow v. Ghirardelli Chocolate Co.*,

    2020 WL 1701840 (N.D. Cal. Apr. 8, 2020) ........................................................15

*City & Cty. of San Francisco v. Sessions*,

    372 F. Supp. 3d 928 (N.D. Cal. 2019) ...................................................................3

*Cullen v. Netflix, Inc.*,

    880 F. Supp. 2d 1017 (N.D. Cal. 2012) ...............................................................15

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,

    751 F.3d 990 (9th Cir. 2014) ...................................................................6, 13, 15

*Glob. Acquisitions Network v. Bank of Am. Corp.*,

    2013 WL 604159 (C.D. Cal. Feb. 19, 2013) .........................................................21

*Hancock v. Urban Outfitters, Inc.*,

    830 F.3d 511 (D.C. Cir. 2016) ...............................................................................6

*Heartland Payment Sys., Inc. v. Mercury Payment Sys.,*

    *LLC*, 2014 WL 5812294 (N.D. Cal. Nov. 7, 2014) ...............................................7

*Hernandez v. Wells Fargo & Co.*,

    2019 WL 3891342 (N.D. Cal. Aug. 19, 2019)................................................19, 20

*Hunt v. Wells Fargo Bank, NA*,

    576 F. App'x 693 (9th Cir. 2014) .........................................................................19

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,

    402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................19

*In re Facebook, Inc. Sec. Litig.*,

    405 F. Supp. 3d 809 (N.D. Cal. 2019) .................................................................17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,

    308 F. Supp. 2d 249 (S.D.N.Y. 2004)..................................................................13

*In re HP Sec. Litig.*,

  2013 WL 6185529 (N.D. Cal. Nov. 26, 2013)........................................................................17

*In re Mexican Gov't Bonds Antitrust Litig.*,

  412 F. Supp. 3d 380 (S.D.N.Y. 2019)....................................................................................11

*In re Nexus 6P Prod. Liab. Litig.*,

  293 F. Supp. 3d 888 (N.D. Cal. 2018) .....................................................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,

  2010 WL 2629728 (N.D. Cal. June 29, 2010) .......................................................................11

*In re Violin Memory Sec. Litig.*,

  2014 WL 5525946 (N.D. Cal. Oct. 31, 2014)..................................................................15, 16

*Intermedics, Inc. v. Ventritex, Inc.*,

  775 F. Supp. 1258 (N.D. Cal. 1991) .........................................................................................3

*Johnson v. Otter*,

  2019 WL 452040 (N.D. Cal. Feb. 5, 2019) ...........................................................................5, 6

*Kearns v. Ford Motor Co.*,

  567 F.3d 1120 (9th Cir. 2009) ...........................................................................................7, 17

*Kelley v. Rambus, Inc.*,

  384 F. App'x 570 (9th Cir. 2010) ............................................................................................7

*Knievel v. ESPN*,

  393 F.3d 1068 (9th Cir. 2005) .................................................................................................3

*Knowles v. Arris Int'l PLC*,

  2019 WL 3934781 (N.D. Cal. Aug. 20, 2019)........................................................................17

*Korea Supply Co. v. Lockheed Martin Corp.*,

  29 Cal. 4th 1134 (2003) ......................................................................................................9, 10

*Lujan v. Defenders of Wildlife*,

  504 U.S. 555 (1992)..................................................................................................................9

*Lujan v. New York Life Ins. Co.*

  2016 WL 4483870 (N.D. Cal. Aug. 9, 2016)..........................................................................20

*Lyons v. Bank of Am., NA,*

    2011 WL 3607608 (N.D. Cal. Aug. 15, 2011)........................................................19

*Matute v. JPMorgan Chase & Co.,*

    2016 WL 3092124 (C.D. Cal. May 31, 2016) ......................................................19

*McGough v. Wells Fargo Bank, N.A.,*

    2012 WL 2277931 (N.D. Cal. June 18, 2012) ....................................................11

*Medici v. JPMorgan Chase Bank, N.A.,*

    2012 WL 929785 (D. Or., Mar. 16, 2012)........................................................1, 8, 9

*Miller v. City & Cty. of San Francisco,*

    187 Cal. App. 2d 480 (Ct. App. 1960)................................................................15

*Moore v. Kayport Package Exp., Inc.,*

    885 F.2d 531 (9th Cir. 1989) ............................................................................11

*Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.,*

    2011 WL 13253436 (C.D. Cal. Dec. 19, 2011) ..............................................11, 12

*Niederreuther v. Schifter,*

    1998 WL 409876 (N.D. Cal. July 14, 1998)......................................................18

*Nymark v. Heart Fed. Sav. & Loan Ass'n,*

    231 Cal.App.3d 1089 (1991)..........................................................................18, 19

*Perretta v. Prometheus Dev. Co.,*

    2005 WL 3445627 (N.D. Cal. Dec. 15, 2005) ......................................................7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,*

    631 F.3d 436 (7th Cir. 2011) ..........................................................................13

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank,*

    694 F. Supp. 2d 287 (S.D.N.Y. 2010)................................................................13

*Romo v. Wells Fargo Bank, N.A.,*

    2016 WL 3523779 (N.D. Cal. June 28, 2016) ................................................15, 16

*Rowen v. Bank of Am., N.A.,*

    2012 WL 2160632 (C.D. Cal. June 11, 2012) ....................................................20

*Russell v. United States*,

    2009 WL 4050938 (N.D. Cal. Nov. 20, 2009)..................................................................6

*Ruvalcaba v. City of Los Angeles*,

    167 F.3d 514 (9th Cir. 1999) .........................................................................................8

*Safe Air for Everyone v. Meyer*,

    373 F.3d 1035 (9th Cir. 2004) .......................................................................................5

*Savage v. Glendale Union High Sch. Dist. No.*

    *205*, 343 F.3d 1036 (9th Cir. 2003) ...............................................................................6

*Schug v. Sonoma Valley Unified Sch. Dist.*,

    2002 WL 490696 (Cal. Ct. App. Mar. 29, 2002) (unpublished)..............................20

*Sedgwick v. Bank of Am. Corp.*,

    2013 WL 4017038 (Cal. Ct. App. Aug. 6, 2013)..................................................19, 20

*Sencion v. Saxon Mortg. Servs., Inc.*,

    2011 WL 311383 (N.D. Cal. Jan. 28, 2011) ........................................................17, 18

*Shalaby v. Bernzomatic*,

    281 F.R.D. 565 (S.D. Cal. 2012) .................................................................................13

*United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*,

    2020 WL 2787652 (5th Cir. May 28, 2020) ................................................................12

*United States v. 14.02 Acres of Land More or Less in Fresno Cty.*,

    547 F.3d 943 (9th Cir. 2008) .........................................................................................3

*Veal v. LendingClub Corp.*,

    423 F. Supp. 3d 785 (N.D. Cal. 2019) ........................................................................17

*Warner Constr. Corp. v. City of Los Angeles*,

    2 Cal. 3d 285 (1970) ...................................................................................................20

*Waterford Twp. Police v. Mattel, Inc.*,

    321 F. Supp. 3d 1133 (C.D. Cal. 2018) ......................................................................15

*Wescott v. SC Anderson, Inc.*,

    2018 WL 5849012 (N.D. Cal. Nov. 6, 2018)................................................................6

1  *WeWork Companies Inc. v. WePlus (Shanghai) Tech. Co.*,

2  2019 WL 4738321 (N.D. Cal. Sept. 27, 2019) ...........................................................6

3  *Williams v. Timothy F. Geithner*,

4  2009 WL 3757380 (D. Minn. Nov. 9, 2009) ...........................................................19

5  *Wooten v. Countrywide Home Loans Inc.*,

6  2012 WL 346460 (E.D. Cal. Feb. 1, 2012).................................................................8

7  *Wozniak v. Align Tech., Inc.*,

8  2011 WL 2269418 (N.D. Cal. June 8, 2011) ...........................................................15

9  *Yamauchi v. Cotterman*,

10  84 F. Supp. 3d 993 (N.D. Cal. 2015) .......................................................................19

11  *Yasukochi v. Bank of Am., N.A.*,

12  2016 WL 4508220 (S.D. Cal. Apr. 27, 2016)........................................................9, 10

13  *Zakar v. CHL Mortg. Pass-Through Tr. 2006-HYB3 Mortg. Pass-Through Certificates,*

14  *Series 2006-HYB3*, 2011 WL 4899953 (S.D. Cal. Oct. 13, 2011)..........................19

15  *Zbitnoff v. NationStar Mortg. LLC*,

16  2014 WL 2119875 (N.D. Cal. May 21, 2014) .........................................................19

17

18  **STATUTES**

19  13 CFR 120.140 ....................................................................................................20

20  13 CFR Part 120.140 ...........................................................................................20

21  85 FR 23,450 (to be codified at 48 C.F.R. pts. 120, 121) ......................................2, 4

22  Cal. Bus. & Prof. Code § 17500, et seq. ...................................................................2

23  Cal. Bus. & Prof. Code § 17200, et seq. ...................................................................2

24  Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. 116-136...........1, 2, 10

25  Fed. R. Civ. P. 8 .............................................................................................passim

26  Fed. R. Civ. P. 9 .............................................................................................passim

27  Fed. R. Civ. P. 12(b)(1)......................................................................................2, 5, 6

28  Fed. R. Civ. P. 12(b)(6)..........................................................................................2, 6

**OTHER AUTHORITIES**

"Underserved and Unprotected: How the Trump Administration Neglected the Neediest

    Small Businesses in the PPP," **Select Subcommittee on the Coronavirus Crisis**

    (Oct. 2020) ...................................................................................................................11

"Paycheck Protection Program (PPP) Report," **Small Business Administration** (Apr. 16,

    2020) ............................................................................................................................3

 "Paycheck Protection Program (PPP) Report," **Small Business Administration** (Aug. 8,

    2020) ............................................................................................................................1

"Lenders Participating in PPP by project state as of 06/25/2020," **Small Business**

    **Administration** (Jun. 25, 2020) ..............................................................................21

"SBA: PPP processed more than 14 years worth of loans in less than 14 days,"

    **USAToday** (Apr. 21, 2020)......................................................................................3

1
2

**BANK DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO**
**DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

3       Defendants Bank of America Corporation and Bank of America, N.A. (together, "BofA")

4   respectfully request that this Court grant their motion to dismiss pursuant to Rules 12(b)(1) and

5   12(b)(6) of the Federal Rules of Civil Procedure.[1]

6                                    **I.    INTRODUCTION**

7       Plaintiffs offer zero factual allegations to support their assertions that BofA prioritized

8   loans under the Paycheck Protection Program ("PPP") to larger small businesses over smaller small

9   businesses, or that such prioritization impacted Plaintiffs' loans in any way.  Regardless, the claims

10  are moot as both Plaintiffs acknowledge they received PPP loans: Informatech from BofA, and

11  Studio 1220 from another lender.  The claims also should be dismissed for failure to state a claim

12  because the absence of factual allegations renders them implausible and insufficient under the

13  settled pleading requirements of Civil Procedure Rules 8 and 9(b).

14      Congress created the PPP as part of the Coronavirus Aid, Relief, and Economic Security

15  ("CARES") Act, Pub. L. 116-136.  The Act established funding for private lenders to make

16  federally guaranteed emergency payroll loans to small businesses and non-profits.  The PPP was

17  an unprecedented expansion of small business lending and was implemented at unprecedented

18  speed.  BofA devoted enormous resources to the Program, including shifting 12,000 employees

19  from their normal duties.  When the PPP concluded on August 8, 2020, BofA had funded 343,626

20  loans worth more than $25 billion dollars, with an average loan size of $74,376.[2]

21      Plaintiffs assert that they applied for PPP loans through BofA on April 6, 2020, and that

22  BofA had not processed their applications by April 16, 2020.  Without any factual support,

23  Plaintiffs allege that BofA intentionally processed the loans of larger small businesses before loans

24

---

25  [1] BofA submits this combined Rule 12(b)(1) and 12(b)(6) motion, which is over the Court's 15-
    page limit, pursuant to its unopposed October 20, 2020 Motion for Leave to Increase Page
26  Limits, ECF No. 52.

27  [2] "Paycheck Protection Program (PPP) Report," **Small Business Administration**, 1 (Aug. 8,
    2020), *available at* https://home.treasury.gov/system/files/136/SBA-Paycheck-Protection-
28  Program-Loan-Report-Round2.pdf.

---

1    of smaller small businesses like Plaintiffs.  Plaintiffs further allege that BofA misled and deceived

2    them into believing that their applications would be processed in the order they were received.  On

3    these threadbare grounds, Plaintiffs accuse BofA of: (1) negligence; (2) fraudulent concealment;

4    (3) breach of fiduciary duty; (4) violation of California's Unfair Competition Law, Cal. Bus. &

5    Prof. Code § 17200, et seq. (the "UCL"); and (5) violation of California's False Advertising Law,

6    Cal. Bus. & Prof. Code § 17500, et seq. (the "FAL").

7         There is no truth to Plaintiffs' allegations.  But in any event, Plaintiffs' claims should be

8    dismissed under Rule 12(b)(1) as moot, because Plaintiffs have received their loans, and for lack

9    of standing, because Plaintiffs do not plead a redressable injury.  Alternatively, Plaintiffs'

10   complaint should be dismissed under Rule 12(b)(6) for failure to satisfy either the basic pleading

11   standards of Rule 8 or the heightened pleading requirements of Rule 9(b).  Plaintiffs' duty-based

12   claims fail for the separate reason that Plaintiffs have not pled, and cannot plead, the existence of

13   a fiduciary duty, duty of care, or duty of disclosure.  The amended complaint should be dismissed

14   in its entirety, and with prejudice.

## II.    BACKGROUND

### A.    THE PPP PROGRAM

17        On March 27, 2020, Congress enacted the CARES Act in response to the COVID-19

18   pandemic.  As relevant here, the CARES Act included the PPP, through which Congress authorized

19   hundreds of billions of dollars in federal guarantees for loans made by private lenders to eligible

20   small businesses.  *Id.*   PPP lending is administered by the Small Business Administration

21   ("SBA").[3]

22        The initial round of PPP lending was characterized by overwhelming demand for the $369

23   billion that Congress had authorized for the program.  PPP lending commenced on April 3, and the

24   funds were exhausted by April 16.  As of that date, 4,975 lenders had processed and funded

---

[3] *See* "Business Loan Program Temporary Changes; Paycheck Protection Program—
Requirements—Promissory Notes, Authorizations, Affiliation, and Eligibility," 85 FR 23,450
(Apr. 28, 2020) (to be codified at 48 C.F.R. pts. 120, 121).

1,661,367 loans,[4] equaling fourteen years' worth of SBA lending in fourteen days.[5]  BofA alone had received 250,000 applications between April 3 and April 16, 2020.

Given this combination of high demand and finite funds, not all applicants' loans were funded during the first round.  Congress then approved another $310 billion in PPP funding, which became available on April 27, 2020.  The program ended on August 8, 2020 with $134 billion untapped.[6]

## B.     PLAINTIFFS' LOAN APPLICATIONS

When Plaintiffs filed their initial complaints on April 27 and May 5, 2020, BofA was continuing its efforts to process the hundreds of thousands of PPP applications it had received, including Plaintiffs' applications.  BofA processed both Plaintiffs' applications by mid-May.

Informatech submitted its initial application for a PPP loan on April 6, 2020.  Compl. ¶ 86. On May 1, 2020, four days after Informatech filed its complaint, Informatech uploaded a "Paycheck Protection Program Application Addendum" and a Form 1040, Schedule C for its sole

---

[4] "Paycheck Protection Program (PPP) Report," **Small Business Administration**, 2 (Apr. 16, 2020), *available at* https://home.treasury.gov/system/files/136/SBA%20PPP%20Loan%20 Report%20Deck.pdf.  Courts may judicially notice reports of administrative bodies, as well as matters of general public record, without converting a motion to dismiss to one for summary judgment.  *United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008); *City & Cty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 937 (N.D. Cal. 2019) ("Government records such as letters, memos, bulletins, or other reports or statements of public record are judicially noticeable"); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1261 (N.D. Cal. 1991).  Similarly, under the doctrine of incorporation by reference, a court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss to a motion for summary judgment.  *Casault v. Fed. Nat. Mortg. Assn*, 915 F. Supp. 2d 1113, 1120 (C.D. Cal. 2012); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[5] Jovita Carranza, "SBA: PPP processed more than 14 years worth of loans in less than 14 days," **USAToday** (Apr. 21, 2020), *available at* https://www.usatoday.com/story/opinion/todaysdebate/ 2020/04/20/sba-ppp-14-years-worth-loans-14-days-editorials-debates/5167961002/.  By comparison, only $20.9 billion loans were made pursuant to pre-PPP Section 7(a) in fiscal year 2019.  "Lending Statistics for Major Programs as of (08-16-2019)," **Small Business Administration** (accessed May 14, 2020), *available at* https://www.sba.gov/sites/default/files/ aboutsbaarticle/WebsiteReport_asof_20190830.pdf.

[6] "Paycheck Protection Program (PPP) Report," **Small Business Administration** (Apr. 16, 2020).

---

1   proprietor.  Decl. of Chris Yuasa, Ex. A, 9.  This application sought a PPP loan of $42,772.50.  *Id.*

2   Shortly thereafter, Informatech amended its application to seek the maximum loan permissible for

3   a business with one employee, $20,831.  *Id.* ¶ 9.  On May 1, 2020, BofA submitted Informatech's

4   completed loan application for a $20,831 PPP loan to the SBA for approval.  *Id.* ¶ 10.  On May 2,

5   2020, Informatech accepted disbursement.  *Id.* ¶ 12.  BofA disbursed $20,831 in PPP funds to

6   Informatech.  Compl. ¶ 97.

7          Studio 1220 submitted its initial application for a PPP loan on April 6, 2020.  Compl. ¶ 101.

8   As the complaint notes, between April 19 and April 30, 2020, BofA worked with Studio 1220 to

9   replace missing or incorrect documents.  Yuasa Decl. ¶ 13; Compl. ¶¶ 107–08.  On May 3, 2020,

10  BofA submitted Studio 1220's application to the SBA.  Yuasa Decl. ¶ 14.  The SBA informed

11  BofA that it would not issue a PPP loan number for Studio 1220 because Studio 1220 had already

12  been approved for a PPP loan through another lender.  *Id.* ¶ 16; Compl. ¶ 110.[7]  On May 19, 2020,

13  BofA informed Studio 1220 that it would not fund Studio 1220's application on the basis of the

14  SBA's denial.  Yuasa Decl. ¶ 16.

15  **C.    PLAINTIFFS' COMPLAINTS**

16         Plaintiffs originally filed two separate lawsuits.  They later moved for an order formally

17  relating the two cases and, after that request was granted, Plaintiffs filed the operative amended

18  and consolidated complaint on September 25, 2020.  Plaintiffs seek to represent a purported

19  California class of entities who "applied for a loan under the PPP with Defendants and whose

20  applications were not processed by Defendants on a first-come, first-served basis before April 16,

21  2020."  Compl., ¶ 111.

22         Plaintiffs' complaint makes two core allegations.  First, Plaintiffs allege that BofA violated

23  the IFR's requirement that PPP funds were to be distributed on a "'first-come, first-served' basis,"

24  *id.* ¶ 2, by "prioritizing larger loan applications for bigger businesses," *id.* ¶ 4.  But the primary

25  facts Plaintiffs allege in support of this claim are aggregate data regarding the funding of PPP loans

26  across all lenders nationwide, and not any data specific to BofA.  *Id.* ¶¶ 72–75.  Plaintiffs also refer

27
─────────────────────────
28  [7] *See also* Compl. ¶ 79; 85 FR 23,450 ("Can I apply for more than one PPP loan? No . . . no
    eligible borrower may receive more than one PPP loan.").

briefly to (i) press stories (focused on other lenders) reporting that lenders were "fail[ing] to provide the same knowledge, technological support and resources" to all of their applicants, *id.* ¶¶ 4, 76, and a letter sent by Senator Marco Rubio to BofA "prompted by reports of priority being given to certain applicants over others," *id.* ¶ 8.

Second, Plaintiffs allege that BofA "misled and deceived" Plaintiffs and other applicants "into believing applications for loans through the PPP were processed in the order received with no regard to loan amount, when in fact the loan amount certainly influenced the order in which loans were processed." *Id.* ¶ 78.  In support of this allegation, the complaint cites only to generalized statements made by BofA about the loan application process.

Based on these allegations, Plaintiffs assert causes of action for: (1) negligence; (2) fraudulent concealment; (3) breach of fiduciary duty; (4) UCL violations; and (5) FAL violations.  Plaintiffs' original complaints had alleged harm based on non-receipt of PPP loans. *See, e.g.*, ECF No. 1, ¶ 9.  Because both Plaintiffs acknowledge that they have now received PPP loans, in their amended complaint Plaintiffs pivot to asserting harm based on the "delay and uncertainty caused by preferring bigger loan applications or 'concierge' customers."  Compl. ¶ 82; *id.* ¶ 10.  Plaintiffs claim that the delay caused "a loss in the time value of money that they otherwise would have used for their businesses," as well as other, unspecified "real-world monetary damages caused by the delay." *See* Compl. ¶ 82.  But Plaintiffs offer ***zero*** factual allegations supporting such conclusory and vague statements —no allegations, for instance, of any specific lost business opportunities, forced layoffs of employees, or forced cessation or reduction of businesses.

## III.   ARGUMENT

## A.   LEGAL STANDARD

### 1.   12(b)(1) Motion for Mootness

On a defendant's motion pursuant to Rule 12(b)(1), "[t]he plaintiff bears the burden of establishing subject matter jurisdiction." *Johnson v. Otter*, 2019 WL 452040, at *1 (N.D. Cal. Feb. 5, 2019); *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004).  BofA's challenge to jurisdiction is both "facial" and "factual."  Where an attack is facial, a complaint must contain sufficient factual allegations regarding subject matter jurisdiction which, when accepted as true,

1    state a claim to relief that is plausible on its face. *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511,

2    513–14 (D.C. Cir. 2016). "Where the attack is factual . . . 'the court need not presume the

3    truthfulness of the plaintiff's allegations.'" *Johnson*, 2019 WL 452040, at *1; *Russell v. United*

4    *States*, 2009 WL 4050938, at *3 (N.D. Cal. Nov. 20, 2009). Rather, "the Court may review

5    extrinsic evidence . . . without converting a motion to dismiss into one for summary judgment."

6    *Johnson*, 2019 WL 452040, at *1. "Once the moving party has made a factual challenge by

7    offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing

8    the motion must 'present affidavits or any other evidence necessary to satisfy its burden of

9    establishing that the court, in fact, possesses subject matter jurisdiction.'" *Id.* (internal quotations

10   omitted); *see also Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2

11   (9th Cir. 2003); *WeWork Companies Inc. v. WePlus (Shanghai) Tech. Co.*, 2019 WL 4738321, at

12   *2 (N.D. Cal. Sept. 27, 2019).

13       Article III issues, such as standing and mootness, are properly addressed on a Rule 12(b)(1)

14   motion. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1172 (9th Cir. 2004) (standing); *Am. Rivers v.*

15   *Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) (mootness). In a putative class

16   action, if the named plaintiff cannot establish redressability or if the named plaintiff's claims

17   become moot prior to class certification, the entire action should be dismissed for lack of standing.

18   *Russell*, 2009 WL 4050938 at *4.

19       **2.      Rule 12(b)(6) Motion for Failure to State a Claim under Rules 8 and 9(b)**

20       Under Federal Rule of Civil Procedure 8, "a complaint must contain sufficient factual

21   allegations, which when accepted as true, state a claim to relief that is plausible on its face."

22   *Wescott v. SC Anderson, Inc.*, 2018 WL 5849012, at *2 (N.D. Cal. Nov. 6, 2018) (internal

23   quotations omitted) (relying on *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint

24   pleads facts that are merely consistent with a defendant's liability, it stops short of the line

25   between possibility and plausibility of entitlement to relief." *Ashcroft*, 556 U.S. at 678.

26   "Something more is needed, such as facts tending to exclude the possibility that the alternative

27   explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Properties E., LLC*

28   *v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014).

1         Here, the complaint must satisfy not only Rule 8, but also Rule 9(b), because all claims rest

2  on an assertion that BofA made misrepresentations about PPP loan processing.[8]   UCL, FAL,

3  breach of fiduciary duty, and negligence claims are governed by Rule 9(b) when they arise from

4  allegations of misrepresentation or nondisclosure.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

5  1125, 1127 (9th Cir. 2009) (UCL); *Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*,

6  2014 WL 5812294, at *7 (N.D. Cal. Nov. 7, 2014) (FAL); *Kelley v. Rambus, Inc.*, 384 F. App'x

7  570, 573 (9th Cir. 2010) (negligent misrepresentation); *Perretta v. Prometheus Dev. Co.*, 2005 WL

8  3445627, at *5 (N.D. Cal. Dec. 15, 2005) (breach of fiduciary duty).

9         Under Rule 9(b), a claim of fraud must be pled with particularity and "identify the who,

10  what, when, where, and how of the misconduct charged, as well as what is false or misleading

11  about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen.*

12  *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal citations omitted).

13  **B.**    **PLAINTIFFS LACK STANDING AND THEIR CLAIMS ARE MOOT**

14         Plaintiffs fault BofA for failing timely to process and fund their PPP loans.  These claims

15  are moot because Plaintiffs obtained PPP loans.  Compl. ¶¶ 97, 110.  Furthermore, Plaintiffs lack

16  standing to pursue their UCL and FAL claims because their claimed injuries are not redressable

17  through the only remedies these statutes permit:   restitution and injunctive relief.   These

18  deficiencies are evident on the face of the Complaint, such that the Court should dismiss on a

19  facial-challenge basis.   These deficiencies become more pronounced when BofA's extrinsic

20  evidence is introduced, such that, in the alternative, the Court can and should dismiss on a factual-

21  challenge basis.

22

---

23  [8] Compl. ¶ 146 (UCL fraud prong claim based on "misrepresentations and related omissions that [BofA was] working tirelessly to administer . . . loan applications . . . and that they were

24  otherwise following the requirements of the PPP"); *id.* ¶ 147 (UCL unlawful prong claim based on false advertising); *id.* ¶ 149 (UCL unfair prong claim based on "deceiving and misleading

25  small business owners into believing their loans were processed on a 'first-come, first-served' basis"); *id.* ¶ 153 (FAL claim based on "misrepresentations and omissions regarding compliance

26  with applicable laws and regulations, including SBA rules and requirements"); *id* at 139 (breach of fiduciary claim based on "false, misleading, and deceptive misrepresentations and omissions"

27  regarding PPP processing); *id.* ¶¶ 125, 129 (basing negligence claim in lack of "lack of business integrity or honesty" and failure to make only "truthful and accurate" representations).

28

---

1    **1.       Receipt of PPP Loans Moots Plaintiffs' Claims**

2         "If there is no longer a possibility that an appellant can obtain relief for his claim, that claim

3    is moot and must be dismissed for lack of jurisdiction."  *Ruvalcaba v. City of Los Angeles*, 167

4    F.3d 514, 521 (9th Cir. 1999).  As discussed above, Plaintiffs received PPP loans.  Because

5    Plaintiffs have obtained the benefit to which they claim they are entitled (PPP funds), this Court

6    cannot issue further relief on this claim.  In the analogous context of mortgage servicing, a claim

7    that a defendant wrongfully foreclosed on a property is mooted when the parties reach a loan

8    modification agreement and the defendant cancels foreclosure proceedings.  *See Wooten v.*

9    *Countrywide Home Loans Inc.*, 2012 WL 346460, at *4 (E.D. Cal. Feb. 1, 2012); *Blanton v. Fed.*

10   *Home Loan Mortg. Corp.*, 2016 WL 1158591, at *3 (D. Or. Feb. 29, 2016) (rescinding Notice of

11   Sale mooted wrongful foreclosure claim).  The same reasoning applies with equal force here.

12        Plaintiffs attempt to save their complaint by now claiming they were harmed by a *delay* in

13   receiving the PPP funds.  But these wholly conclusory and vague allegations fail, as they are not

14   supported by any factual allegations detailing the harm allegedly caused by the purported delay.

15   Again in the foreclosure context, a plaintiff wishing to challenge wrongful conduct related to a

16   foreclosure after the foreclosure was canceled must explain how "related" damages flow from the

17   non-mooted misconduct rather than from mooted misconduct.  *Compare Mulhall*, 241 F. Supp. 3d

18   at 1055 ("Plaintiff also alleges that he is entitled to attorneys' fees and an order repairing his

19   credit . . . . ***Since Plaintiff's allegations are insufficient in setting forth whether these damages***

20   ***relate to acts that are moot***, the court also dismisses these damages as moot.") (emphasis added)

21   *with Medici v. JPMorgan Chase Bank, N.A.*, 2012 WL 929785, at *3–4 (D. Or., Mar. 16, 2012)

22   (in wrongful foreclosure case, claims challenging foreclosure were mooted by rescinding

23   foreclosure but plaintiff's claim for "damages in the form of bank fees and attorney fees during the

24   period that she was trying to prevent the foreclosure sale" were not moot).

25        Plaintiffs' allegations do not sufficiently plead any ***facts*** which, taken as true, show distinct

26   damages flowing from non-mooted conduct.  The complaint alleges only that "the delay

27   "constituted a loss in the time value of money . . . in addition to other real-world monetary damages

28   caused by the delay."  Compl. ¶ 82; *see also id.* ¶ 10.  But that is a pure conclusion, which is no

1    substitute for factual allegations.  For instance, Plaintiffs do not allege any specific "real-world

2    monetary damages" they were forced to incur as the result of receiving the PPP loans in early- or

3    mid-May, instead of by April 16, 2016.[9]  As such, unlike the plaintiff in *Medici*, who factually

4    pled actionably distinct additional damages in the form of bank fees, Plaintiffs have not alleged

5    anything specific that could support a claim of injury distinct from the now-moot claim that BofA

6    failed to fund its PPP loan.

7         In sum, Plaintiffs' receipt of PPP loans moots their injury, and Plaintiffs' vague allusion to

8    damages from "delay" is insufficient to establish standing.

9         **2.    Plaintiffs' UCL and FAL Claims Lack a Redressable Injury**

10        Article III standing requires that a plaintiff establish that it is "likely" rather than

11   "speculative" that plaintiff's injury will be "redressed by a favorable decision."  *Lujan v. Defenders*

12   *of Wildlife,* 504 U.S. 555, 560–61 (1992).  Under the UCL and FAL, a private plaintiff may only

13   obtain two remedies: injunctive relief and restitution.  *Korea Supply Co. v. Lockheed Martin Corp.*,

14   29 Cal. 4th 1134, 1144 (2003); *Yasukochi v. Bank of Am., N.A.*, 2016 WL 4508220, at *7 (S.D.

15   Cal. Apr. 27, 2016); *see also In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 951 (N.D.

16   Cal. 2018).  Where a plaintiff cannot plead an entitlement to injunctive relief or restitution, claims

17   under the UCL or FAL should be dismissed for failure to plead constitutional injury.  *Yasukochi*,

18   2016 WL 4508220, at *7 (dismissing UCL claim).

19        First, as "restitution" is used under these statutes, a plaintiff can seek "the return of money

20   or property that was once in its possession." *Korea Supply*, 29 Cal. 4th at 1149.  Where, as here, a

21   plaintiff has not given a thing of economic value to a defendant, it cannot receive restitution from

22   that defendant.  *Id.*; *see also, id.* at 1144–52 (comparing the UCL-compliant remedy of restitution

23

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [9] Although Plaintiffs also allege that "the delay caused by Defendants' misrepresentations and
25   omissions caused hardship, including business cessation, for many applicants," Compl. ¶ 10, they
     do not allege that they themselves suffered business cessation due to the delay in the receipt of
26   funding.  These allegations, therefore, cannot create the requisite standing because Plaintiffs have
     no standing to sue for injuries allegedly suffered by others, or to serve as a representative for
27   allegedly injured class members.  *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 525
     (S.D. Cal. 2011) ("Generally standing in a class action is assessed solely with respect to class
28   representatives, not unnamed members.").

1  with the UCL-non-compliant remedy of disgorgement).  Plaintiffs cannot seek restitution because

2  "[Plaintiffs have] not given any money to [BofA]; instead, it was from the [federal government]

3  that [BofA] received its profits.  Any award that plaintiff[s] would recover from defendant[] would

4  not be restitutionary as it would not replace any money or property that defendant[] took directly

5  from plaintiff[s]."  *Id.* at 1149.  As Plaintiffs note, lenders were compensated under the PPP

6  program, not by applicants like Plaintiff, but by the ***federal government*** in the form of fees on

7  disbursed loans.  Compl. ¶ 70; CARES Act § 1102.

8      Second, Plaintiffs "lack[] standing to seek an injunction because there is no imminent

9  threat—or even conceivable threat, for that matter—that [Plaintiffs] would fall victim" to BofA's

10 improper processing of PPP loans or advertising regarding PPP loans again.  *Yasukochi*, 2016 WL

11 4508220, at *7.  That is so both because (1) the PPP program closed on August 8, 2020, such that

12 BofA is no longer processing or advertising PPP loans, and (2) Plaintiffs obtained the sole loans

13 to which they are entitled.

14 **C.    PLAINTIFFS FAIL TO STATE A CLAIM**

15     Plaintiffs' complaint fails for the additional reason that it does not adequately plead any of

16 its claims.  As such, the complaint should be dismissed pursuant to Rule (12)(b)(6).

17     **1.    Plaintiffs Fail to Plead Any Claim Plausibly or With Specificity**

18     Plaintiffs' claims center on two allegations: (1) that BofA prioritized larger clients over

19 smaller ones, and (2) that BofA misled and deceived Plaintiffs into believing that BofA was

20 processing applications in the order they were received, without considering the size of the

21 applicant or the loan.  Because Plaintiffs have not adequately pled either of these allegations, all

22 of their claims should be dismissed.

23         **a.    Plaintiffs Have Not Adequately Alleged Prioritization**

24     Plaintiffs' prioritization allegations hinge on: (1) a comparison of industry-wide aggregate

25 loan characteristics in the first ten days of PPP lending versus the subsequent three days of PPP

26 lending, Compl. ¶¶ 72–75; (2) reports of borrowers frustrated with BofA's loan processing coupled

27 with a report that JP Morgan Chase engaged in prioritization, *id.* ¶¶ 4, 76; and (3) a letter from

28 Senator Marco Rubio to BofA requesting information about BofA's loan processing, *id.* ¶ 8.  None

1  of these supports a plausible claim under Rule 8—much less a particularized claim under Rule

2  9(b)—that BofA was prioritizing certain applicants over others.

3      First, Plaintiffs' reliance on collective statistics purporting to show that **lenders in the**

4  **aggregate** made more large loans in the first days of the PPP Program than in subsequent days says

5  nothing about BofA, much less supports Plaintiffs' allegation that BofA prioritized larger clients

6  over smaller ones.  Failure to describe the activities of an individual defendant, rather than a group,

7  is insufficient under Rule 8 and Rule 9.  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541

8  (9th Cir. 1989) (dismissing fraud claim for failure to "attribute specific conduct to individual

9  defendants"); *McGough v. Wells Fargo Bank, N.A.*, 2012 WL 2277931, at *7 (N.D. Cal. June 18,

10  2012) (industry allegations insufficient to plead claims against named defendants under Rule 9);

11  *Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.,* 2011 WL 13253436, at *5 (C.D. Cal. Dec. 19,

12  2011) (under *Iqbal* and *Twombly*, "facts Plaintiff points to represent alarm bells about the industry

13  in general or otherwise fail to identify any particular loan originator, which seemingly cannot

14  suffice—without more—to support a plausible claim against **these** defendants in connection

15  with **these** investments.") (emphasis in original); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010

16  WL 2629728, at *7 (N.D. Cal. June 29, 2010) ("assertions about Royal Philips and LG Display

17  are insufficient to state a claim against PENAC unless the complaint alleges a specific connection

18  between PENAC and the alleged conspiracy"); *In re Mexican Gov't Bonds Antitrust Litig.*, 412 F.

19  Supp. 3d 380, 390 (S.D.N.Y. 2019) (under Rule 8, "in the absence of any other allegations that

20  would allow the Court to infer the participation of the individual Defendants . . . the group

21  statistical pleadings cannot carry the day").  Why such industry-wide allegations are insufficient is

22  illustrated by a recent Congressional report on the PPP lending program, which recounted that

23  although some lenders processed their largest loans faster than their smallest loans, BofA

24  processed loan applications "without substantial timing discrepancies."[10]

25

26  ─────────────

27  [10] "Underserved and Unprotected: How the Trump Administration Neglected the Neediest Small Businesses in the PPP," **Select Subcommittee on the Coronavirus Crisis**, 14–15 (Oct. 2020), *available at* https://coronavirus.house.gov/sites/democrats.coronavirus.house.gov/files/ PPP%20Report%20Final%20%283%29.pdf.

28

1     Even when assessed on the aggregate level across the industry, the data Plaintiffs cite does

2  not show that lenders improperly prioritized larger borrowers over smaller ones.  On the contrary,

3  there are many possible, wholly legitimate explanations for why the overall average loan size for

4  loans approved during the first ten days of the PPP programs may have been larger than the average

5  size of loans approved in subsequent days.  As just one example, this data may reflect that larger

6  small businesses submitted their loan applications more quickly on average than the smaller

7  businesses, who may have needed extra time to gather the necessary documentation.  Indeed, the

8  named Plaintiffs allege that they did not submit applications until April 6, 2020, which was three

9  days after BofA began accepting applications.  Compl. ¶¶ 86, 101.  Additionally, as Plaintiffs note,

10  independent contractors and self-employed individuals—the very smallest borrowers—could not

11  apply until seven days into the Program.  Compl. ¶ 33.  Statistical data does not suffice to state a

12  claim when, like here, "it is also consistent with a legal and obvious alternative explanation."

13  *United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 2020 WL

14  2787652, at *4 (5th Cir. May 28, 2020); *Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.,* 2011

15  WL 13253436, at *5 (C.D. Cal. Dec. 19, 2011) (dismissing under *Iqbal* and *Twombly* because

16  defendant "cannot be pegged with a conclusory assertion that the industry at large was subject to

17  the systematic disregard of . . . guidelines where there are no facts, beyond indeterminate statistics,

18  supporting that allegation.").

19     Second, the "early reports" plaintiffs rely on that allegedly "note that Defendants failed to

20  provide the same . . . resources for its retail branches to process applications made by small

21  business than it did for their larger and more prominent customers" ***say no such thing about BofA***.

22  Rather, the "reports" contain: (1) anecdotes from PPP borrowers who experienced delays and

23  difficulty in submitting their PPP applications to BofA, and (2) quotations from a *New York Times*

24  story stating that **JP Morgan Chase** had different business units serving larger and smaller

25  businesses.  Compl. ¶¶ 4, 76 35.  Nothing in these reports suggests that **BofA** made different

26  resources available for loan processors reviewing small applications than it did for loan processors

27  reviewing larger applications.  As explained above, allegations about industry behavior are

28

1   insufficient to allege misconduct against an individual company, particularly in the face of

2   Congressional reports distinguishing between the behavior of industry participants.

3       Third, the letter from Senator Rubio likewise does not provide a factual basis for Plaintiffs'

4   prioritization claim.  The letter makes no assertion that BofA was prioritizing certain applicants

5   over others; the letter merely asks **whether** BofA has done so.  Compl., Ex. A.[11]  In all events, a

6   third party's assertion of misconduct is insufficient to state a claim unless the assertion is

7   accompanied by factual support, which Plaintiffs' complaint does not provide.  *See Eclectic*

8   *Properties*, 751 F.3d at 999 (plaintiff could not assert a property's valuation without factual

9   support); *Shalaby v. Bernzomatic*, 281 F.R.D. 565, 573 (S.D. Cal. 2012) (unsubstantiated hearsay

10  insufficient to plead misrepresentation).[12]

11      Ultimately, the only facts Plaintiffs plead as to BofA are that Plaintiffs and certain other

12  borrowers experienced delays and difficulty in submitting their PPP applications.  Their claims,

13  therefore, fail to satisfy even the most basic pleading standards.

14          **b.    Plaintiffs Have Not Alleged Actionable Misrepresentations.**

15      Plaintiffs have likewise failed to plead adequately that BofA made misrepresentations.

16  This is so for two reasons.  First, Plaintiffs' claims of misrepresentation are all based on the

17  assertion that BofA prioritized larger applicants over smaller ones; but as discussed above, the

18  complaint does not adequately allege that BofA engaged in such prioritization.

19

20

21

22  [11] "I . . . have received reports of priority being given to certain applicants over others . . . Did
    your institution set up an application process for PPP that is based on a first-come, first serve
23  basis from within the pool of eligible applicants?"

24  [12] *See also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d
    436, 442 (7th Cir. 2011) (allegations based on secondhand knowledge must be supported by
25  grounds for suspicion); *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial
    Bank,* 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) ("Although a plaintiff may use [news articles]
26  in pleadings, the news articles cited still must indicate particularized facts about a defendant's
    conduct."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 262 (S.D.N.Y.
27  2004) ("A plaintiff cannot establish falsity or scienter merely by quoting press speculation or the
    conclusions expressed in ex parte regulatory proceedings by those outside the company.").
28

Second, the specific statements upon which Plaintiffs rely are non-actionable and are not adequately pled under Rule 9(b).   Plaintiffs allege that BofA made the following allegedly misleading statements or omissions with respect to PPP applications:

1. "'*[W]e will follow the intent of U.S. Treasury guidance* . . . that small businesses that plan to apply should do so with their current business loan provider.'"  Compl. ¶ 69; *id*. ¶ 54 (alleging receipt by named Plaintiffs).

2. "'*We will contact you with next steps* to collect any required documents.  Do not proactively deliver or send documents to our Financial Centers or Banking Teams.'"  *Id*. ¶ 69; *id.* ¶ 54.

3. "'Small Business clients with a business lending and a business deposit relationship at Bank of America [are] *eligible to apply* for the Paycheck Protection Program through our bank.'"  *Id*. ¶ 69; *id.* ¶ 54.

4. BofA required a pre-existing business lending or business deposit relationship because "'*We [BofA] have to focus on the borrowing clients to make sure we can take care of them*.'"  *Id*. ¶¶ 69 (no specific allegations of receipt by Plaintiffs).

5. "Plaintiffs' and the Class's submission of a PPP loan *application to Bank of America '[would be] the best and fastest method for applying for federal relief*, based on the U.S. Treasury requirements and guidance.'"  *Id*. ¶ 69; *id.* ¶ 54.

6. "Plaintiffs' and the Class qualified because they were '*Clients with existing relationships* [that] have the established accounts and underwriting verifications in place [that would] *allow Bank of America to provide the quickest access to the relief funds* . . . .'"  *Id*. ¶ 69; *id.* ¶ 54.

7. "'At Bank of America, *the federal Paycheck Protection Program will be administered online only*."  *Id*. ¶ 69; *id.* ¶ 54.

8. "'*Apply for the federal Paycheck Protection Program [online]* beginning on Friday, April 3rd."  *Id*. ¶ 69; *id.* ¶ 54.

9. "'*Bank of America is working with Intralinks Exchange to gather your documents. That is our standard process*, and we are using it to expedite this Small Business Administration Program.'"  *Id*. ¶ 69; *id.* ¶ 63 (alleging receipt by named Plaintiffs).

10. "Once you've uploaded the required information, *Bank of America will begin processing your application* so we can submit it to the Small Business Administration for approval."  *Id*. ¶ 69; *id.* ¶ 63.

11. BofA "will '*process your loan application with the SBA as quickly as possible*."  *Id*. ¶ 77; *id.* ¶ 63.

1    None of these statements is actionable.[13]   First, these statements are overwhelmingly

2   statements about future events.   Second, many of these statements are true per Plaintiffs' own

3   complaint.   Third, many of the statements are not actionable for other reasons.

4               **1)      Most of Plaintiffs' identified statements are non-actionable**

5                        **statements about future events**

6               "The law is well established that actionable misrepresentations must pertain to past or

7   existing material facts.   Statements or predictions regarding future events are deemed to be mere

8   opinions which are not actionable." *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462,

9   1469; *see also Romo v. Wells Fargo Bank, N.A.*, 2016 WL 3523779, at *4–5, *4 n.3 (N.D. Cal.

10   June 28, 2016) ("misrepresentation requires a misrepresentation of a past or existing material

11   fact.") (internal quotations omitted).   A defendant's statement that it "will" undertake some action

12   is such a non-actionable statement regarding future events.   *Id.* at *4–5 ("the alleged

13   misrepresentation that Plaintiffs would get a permanent loan modification fails because . . . it

14   concerns a future fact, not a past or existing one"); *Waterford Twp. Police v. Mattel, Inc.*, 321 F.

15   Supp. 3d 1133, 1150 (C.D. Cal. 2018) (statements that "we will work hard to achieve a full-year

16   gross margin of about 48.5%" were about future events); *In re Violin Memory Sec. Litig.*, 2014

17   WL 5525946, at *13–14 (N.D. Cal. Oct. 31, 2014) (phrase "we will" develop a product is forward

18   looking); *Wozniak v. Align Tech., Inc.*, 2011 WL 2269418, at *6 (N.D. Cal. June 8, 2011)

19   (statement that "[we] will continue to execute our plan for even greater impact in the future" was

20   a statement of future performance).[14]

21

22

---

23   [13] The rule that non-actionable statements do not state a claim applies to UCL and FAL claims as
     well as common law fraud claims.  *Cheslow v. Ghirardelli Chocolate Co.*, 2020 WL 1701840, at
24   *5 (N.D. Cal. Apr. 8, 2020); *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1026, 127 n.4 (N.D.
25   Cal. 2012).  Actionability may be determined on a motion to dismiss.  *Id.*

26   [14] Statements regarding future performance may nevertheless be actionable when the speaker has
     no intention to perform at the time the statement is made.  *Miller v. City & Cty. of San Francisco*,
27   187 Cal. App. 2d 480, 483–84 (Ct. App. 1960).  Plaintiff has not alleged any facts showing
     intention to not perform or an intent to deceive.  *Id.*; *see also Eclectic Properties*, 751 F.3d at
28   1000; *Romo*, 2016 WL 3523779, at *5.

---

Statements 1, 2, 4, 5, 7, 8, 10, and 11 are non-actionable statements about future events: they state that BofA **will follow** Treasury Guidance and **will take** certain steps to process loans and make contact. *See, e.g.*, *Romo*, 2016 WL 3523779, at *4 (statement that plaintiff **would** be given a loan modification forward-looking and inactionable); *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *13–14 (representation that "**we will**" develop a product is forward looking).

### 2) Many of the statements on which Plaintiffs rely are true per Plaintiffs' Complaint

Statements 2, 3, 8, 9, and 10 are true per Plaintiffs' own complaint: BofA *did* contact Plaintiffs with next steps to collect required documents (Statement 2), Compl. ¶¶ 92–95, 108–08 (describing BofA contacting Plaintiffs to collect required documents); Small Business clients with a business lending or deposit relationship *were* eligible to apply for a PPP loan through BofA beginning on April 3 (Statements 3 and 8), *id.* ¶ 59 (noting that borrowers with pre-existing relationships were eligible to apply for the PPP through BofA); and BofA *did* begin processing Plaintiffs' applications (Statements 9 and 10), *id.* ¶¶ 89–97, 107–10.

Statements 1, 3, 4, 5 and 6 are likewise true, despite Plaintiffs' efforts to mischaracterize them. As Plaintiffs note, the April 3, 2020 email on which Plaintiffs rely stated: "In order to ensure an orderly flow of these government-provided funds, **we will follow the intent of the U.S. Treasury guidance**, including what has been posted at the U.S. Treasury website, **that small businesses that plan to apply should do so with their current business loan provider**." *Id.* ¶ 54 (emphasis added). In this context, a reasonable consumer would understand statements 1, 3, 4, 5, and 6 as BofA explaining that **applications are limited to existing customers** consistent with U.S. Treasury guidance on that subject, and not as making an affirmative representation that BofA would process the loans of existing customers by any date certain.

### 3) Other statements are non-actionable

In addition to the deficiencies with Plaintiffs' claims discussed above, many of Plaintiffs' identified statements are non-actionable for additional reasons.

First, to the extent statements 5 and 6 discuss processing speed, they are non-actionable because they are general, vague, or subjective. *Beshwate v. BMW of N. Am., LLC*, No. 2017 WL

6344451, at *10 (E.D. Cal. Dec. 12, 2017) (representation that defendant "w[ould] provide … fast, considerate service" was non-actionable); *Knowles v. Arris Int'l PLC*, 2019 WL 3934781, at *12 (N.D. Cal. Aug. 20, 2019) (statements of "fast" internet used general terms and were not actionable); *In re HP Sec. Litig.*, 2013 WL 6185529, at *7 (N.D. Cal. Nov. 26, 2013) (statement that service would "provide a return very quickly" not actionable).

Second, statement 1, that "we will follow the intent of U.S. Treasury Guidance" is non-actionable as a statement of general and vague legal compliance. *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 804 (N.D. Cal. 2019) ("statements touting LendingClub's focus on compliance, building trust with various stakeholders, and transparency are examples of corporate optimism and puffery."); *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 835–36 (N.D. Cal. 2019) (collecting cases and finding that statement that "We've worked hard to make sure that we comply with [the FTC order]" was a non-actionable statement of compliance).

Third, as discussed *supra*, Plaintiffs have not pled any facts suggesting that BofA did not administer the PPP online only, or that Intralinks was not BofA's "standard process." As such, Plaintiffs have failed to state facts which, taken as true, make statements 7 and 8 actionable.

Finally, as to statement 4, Plaintiffs have failed to plead with particularity that they saw, and therefore relied, on it. To meet the standards of Rule 9, a plaintiff must plead particular details of when and in what manner a plaintiff was exposed to the alleged misrepresentations. *Kearns*, 567 F.3d at 1126 ("Nor did Kearns specify when he was exposed to them or which ones he found material.").

### c. Plaintiffs' Breach of Fiduciary Duty, Negligence, and Fraudulent Concealment Claims Fail Because Plaintiffs Have Not Alleged Legal Duty

Plaintiffs' claims for breach of fiduciary duty and negligence fail for all of the reasons stated above, because these causes of action are predicated on the same insufficient allegations of prioritization and misrepresentation as the rest of the complaint. But the duty-based claims (fiduciary duty, negligence, fraudulent concealment) fail for the separate reason that the complaint does not allege facts showing that BofA owed a duty to Plaintiffs. *Sencion v. Saxon Mortg. Servs.*,

1   *Inc.*, 2011 WL 311383, at *3 (N.D. Cal. Jan. 28, 2011) (breach of fiduciary duty claim requires

2   fiduciary relationship); *Attygala v. Wells Fargo Bank, N.A.*, 2013 WL 12129400, at *18 (C.D. Cal.

3   May 9, 2013) (negligence requires that defendant owed a duty of care).

4                           **1)      Plaintiffs have not alleged a common law duty**

5            As discussed below, an ordinary borrower-lender relationship does not give rise to a

6   fiduciary duty, a duty of ordinary care, or a duty to disclose.  Although a duty may arise when a

7   lender exceeds the role of an ordinary lender, such as exercising dominion or control, Plaintiffs

8   have not alleged facts beyond an ordinary relationship, dooming their duty-based claims.

9            ***An ordinary borrower-lender relationship is not fiduciary.***  "It is well established that

10  a bank or lender has no fiduciary duty to a borrower when a borrower obtains a loan through the

11  course of an ordinary lender-borrower relationship." *Niederreuther v. Schifter*, 1998 WL 409876,

12  at *1 (N.D. Cal. July 14, 1998) (relying on *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231

13  Cal.App.3d 1089 (1991); *accord. 1617 Westcliff LLC v. Wells Fargo Bank N.A.*, 686 F. App'x 411,

14  416 (9th Cir. 2017).  "This is because a 'commercial lender is entitled to pursue its own economic

15  interests in a loan transaction' and this right is 'inconsistent with the obligations of a fiduciary

16  which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and

17  for the benefit of another.'"  *Niederreuther*, 1998 WL 409876, at *1 (relying on *Nymark*, 283 Cal.

18  Rptr. at 56).  As such, a fiduciary relationship can only arise between a lender and a borrower when

19  the lender's activities exceed those of a normal lender, such as when it exercises dominion or

20  control over the borrower.  *Sencion*, 2011 WL 311383, at *3, *3 n.52.[15]

21           ***An ordinary borrower-lender relationship does not create a duty of care.***  In an ordinary

22  lender-borrower relationship, the lender has no duty of care to the borrower.  *1617 Westcliff*, 686

23  F. App'x at 416 (relying on *Nymark*, 283 Cal.Rptr. at 56).[16]  A lender thus has no duty to consider

24  ───────────────────

25  [15] Plaintiffs, potentially in a bid to avoid the rule that no fiduciary duty exists, allege that
    "[b]ecause Defendants misrepresented their compliance . . . Defendants did not engage in arms-

26  length transactions with Plaintiff."  Compl. ¶ 140.  However, the lack of an arm's-length
    transaction does not alter the fundamental reason that no fiduciary duty exists: a commercial

27  lender is entitled to pursue its own economic interests.  *Niederreuther*, 1998 WL 409876, at *1.

28  [16] *1617 Westcliff* further observed that certain consumer and homeowner protection statutes

───────────────────

1   a loan application and no duty to disclose facts.[17]  *Id.* (loan processing); *Attygala*, 2013 WL

2   12129400, at *19 (disclosure).  As with fiduciary duty, a limited exception to the no-duty rule

3   arises where the lender's activities exceed those of a normal lender, and it "exercises 'extensive

4   control' [over the borrower] and gets shared profits from the underlying scheme for which the loan

5   is used." *Bradshaw v. SLM Corp.*, 652 F. App'x 593, 595 (9th Cir. 2016).[18]

6       ***An ordinary borrower-lender relationship does not create a duty of disclosure.***  To state

7   a claim for fraudulent concealment, a plaintiff must adequately plead that the defendant was "under

8   a duty to disclose the fact to the plaintiff." *Badame v. J.P. Morgan Chase Bank, N.A.*, 641 F.

9   App'x 707, 710–11 (9th Cir. 2016); *accord In re Facebook, Inc., Consumer Privacy User Profile*

10  *Litig.*, 402 F. Supp. 3d 767, 800 (N.D. Cal. 2019).  As noted above, in an ordinary lender-borrower

11  relationship, the lender has no duty to disclose facts.  *Hunt v. Wells Fargo Bank, NA*, 576 F. App'x

12  693, 694 (9th Cir. 2014) (dismissing fraudulent concealment claim because lender in ordinary

13  lender-borrower relationship owed no duty).[19]

14

_____

15  create a duty of care as to consumer borrowing, but also expressly found that such statutes did
16  not apply to commercial lending, such that a lender had no duty of care to a commercial
    borrower.  *1617 Westcliff LLC*, 686 F. App'x at 416–17.

17  [17] To the extent that Plaintiffs' claim is based on negligent omissions, California "does not
18  impose liability for negligent omissions; some 'positive assertion' is required." *Yamauchi v.
    Cotterman*, 84 F. Supp. 3d 993, 1018 (N.D. Cal. 2015) (internal quotation omitted).

19
20  [18] For avoidance of doubt, participation in a federal lending program does not create excessive
    control.  In the context of the Home Affordable Modification Program ("HAMP"), the federal
21  government provided financial incentives to lenders to modify mortgage terms.  Relative to the
    PPP guidelines, the HAMP guidelines contained significantly more guidelines compelling
22  participant lenders to take specific actions.  *Williams v. Timothy F. Geithner*, 2009 WL 3757380,
    at *2 (D. Minn. Nov. 9, 2009).  Despite even this significantly more prescriptive language,
23  HAMP did not create any duty of care to sustain claims for misrepresentation or negligent loan
    processing.  *Lyons v. Bank of Am., NA*, 2011 WL 3607608, at *7–8 (N.D. Cal. Aug. 15, 2011);
24  *Cabanilla v. Wachovia Mortg.*, 2012 WL 13020028, at *3 (C.D. Cal. Mar. 20, 2012).

25  [19] *See also, e.g.*, *Bank of Am. Corp. v. Superior Court*, 198 Cal. App. 4th 862, 872–73 (2011);
26  *Sedgwick v. Bank of Am. Corp.*, 2013 WL 4017038, at *4 (Cal. Ct. App. Aug. 6, 2013)
    (unpublished); *Hernandez v. Wells Fargo & Co.*, 2019 WL 3891342, at *4 (N.D. Cal. Aug. 19,
27  2019); *Matute v. JPMorgan Chase & Co.*, 2016 WL 3092124, at *10 (C.D. Cal. May 31, 2016);
    *Zbitnoff v. NationStar Mortg. LLC*, 2014 WL 2119875, at *3 (N.D. Cal. May 21, 2014); *Zakar v.
28  CHL Mortg. Pass-Through Tr. 2006-HYB3 Mortg. Pass-Through Certificates, Series 2006-*

1

**2)      Plaintiffs have not alleged duty based in negligence per se**

2       Perhaps recognizing the absence of a common law duty, Plaintiffs attempt to plead a duty

3   through the doctrine of negligence *per se*, asserting that BofA violated "numerous statutes,

4   including the FAL and the UCL" and "SBA regulations such as 13 CFR Part 120.140, which states

5   that lenders 'must act ethically and exhibit good character' and that prohibits 'engag[ing] in

6   conduct reflecting a lack of business integrity or honesty,'" Compl. ¶¶ 124–26.   But these

7   provisions, which set general standards of conduct, cannot support a negligence *per se* claim.

8       "[T]he negligence per se doctrine does not apply unless the statute allegedly violated sets

9   forth a ***specific*** standard of conduct."  *Arcade Water Dist. v. United States*, 28 F.3d 104 (9th Cir.

10  1994) (emphasis in original).   By way of example,

11           the basic speed law . . . establishes a general duty to drive at a
             speed that does not endanger the safety of persons or property, but
12           does not proscribe any specific speed.  Other Vehicle Code statutes
             proscribe a specific act, and it is appropriate to instruct on
13           negligence per se in connection with those statutes, but an
             instruction on negligence per se should not be given in connection
14           with an instruction on the basic speed law.

15      *Schug v. Sonoma Valley Unified Sch. Dist.*, 2002 WL 490696, at *4 (Cal. Ct. App. Mar.

16  29, 2002) (unpublished).[20]   The UCL, FAL, and 13 CFR 120.140 do not prohibit or require a

17  "specific act."   Rather, they set forth general standards of conduct (a prohibition on unlawful,

18

19  *HYB3*, 2011 WL 4899953, at *3 (S.D. Cal. Oct. 13, 2011).

20       Admittedly, there are unpublished Central District of California cases which hold that the
    duty to disclose may arise ***either*** from a pre-existing duty ***or*** when the defendant omits facts not
21  discoverable by plaintiff.  *Rowen v. Bank of Am., N.A.*, 2012 WL 2160632, at *6 (C.D. Cal. June
    11, 2012) (relying on *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1970)).
22  The Court should not follow these cases, as the Ninth Circuit precedent implicitly disapproves of
    this either-or jurisprudence.  In *Badame*, defendant clearly had superior knowledge about the
23  facts at issue ("Plaintiffs argue that Chase concealed the fact that their loan modification
    application had been declined"), but the Ninth Circuit still invoked the rule that there was no
24  duty.  *Badame*, 641 F. App'x at 711; *see also Sedgwick*, 2013 WL 4017038, at *4 (relying on
    rule that lenders owed no duty rather than rule of superior knowledge, even though defendant had
25  superior knowledge about the underwriting practices at issue).  Additionally, a recent Northern
    District of California court considered this line of cases and still found that the no-lender-duty
26  rule governed.  *Hernandez*, 2019 WL 3891342, at *4.

27

[20] Unpublished state opinions have persuasive, though not precedential, value.  *Lujan v. New*
28  *York Life Ins. Co.* 2016 WL 4483870, at *5 (N.D. Cal. Aug. 9, 2016).

1  unfair, and fraudulent conduct; a prohibition on misleading sales statements; and a call for good

2  character).  As a matter of law, they do not give rise to a duty under negligence *per se.*

### 2.  Plaintiffs Fail To State a Claim Against Bank of America Corporation

4  Although Plaintiffs name both Bank of America, N.A. ("BANA") and Bank of America

5  Corporation ("BAC"), plaintiffs fail to plead any facts which support BAC's liability.  On this

6  basis, all counts should be dismissed as to BAC.

7  First, Plaintiffs plead no misconduct by BAC.  Plaintiffs' only allegations regarding BAC

8  and PPP lending are that Senator Rubio sent a letter to BAC.  Compl. ¶ 8.  Nor could Plaintiffs

9  plead misconduct by BAC:  BANA, not BAC, was the entity which participated in the PPP.[21]

10  Second, Plaintiffs do not plead facts which make BAC liable as a parent corporation.  "[A]

11  parent corporation and its subsidiary will be treated as separate legal entities" unless Plaintiff

12  pleads facts which demonstrate: (1) "unity of interest and ownership," (2) that enforcing corporate

13  identities will result in inequity, or (3) that "the subsidiary is the agent of the parent, which requires

14  a showing that the parent so controls the subsidiary as to cause the subsidiary to be become merely

15  the instrumentality of the parent."  *Glob. Acquisitions Network v. Bank of Am. Corp.*, 2013 WL

16  604159, at *4 (C.D. Cal. Feb. 19, 2013).  The only assertions Plaintiffs make as to parent liability

17  are that "[BAC] was involved in the wrongful activities alleged herein, had the practical ability to

18  direct and control the actions of [BANA], and in fact did so through a variety of centralized policy

19  functions and coordinated practices."  Compl. ¶ 20.  These legal conclusions lack any factual

20  allegations and are insufficient under Rule 8.

### IV.  <u>CONCLUSION</u>

22  For the reasons stated above, BofA respectfully requests that this Court grant its Motion to

23  Dismiss Pursuant to Fed. R. Civ P. 12(b)(1) and 12(b)(6).

---

27  [21] *See* "Lenders Participating in PPP by project state as of 06/25/2020," **Small Business**

28  **Administration** (Jun. 25, 2020), *available at* https://www.sba.gov/sites/default/files/2020-06/PPP_Lender_List_200625.pdf (listing BANA but not BAC as a PPP lender).

1

Respectfully submitted,

2

3     Dated: October 26, 2020              **MEYERS, NAVE, RIBACK, SILVER &**
                                          **WILSON**
4

5                              By:    */s/ Arlene R. Yang*

6                                     Janice P. Brown (SBN 114433)
                                      Arlene R. Yang (SBN 297450)
7                                     600 B Street, Suite 1650
                                      San Diego, CA 92101
8                                     Tel. 619-330-1700
                                      Fax. 619-330-1701
9                                     jbrown@meyersnave.com
                                      ayang@meyersnave.com
10

11                                    **WILLIAMS & CONNOLLY LLP**
                                      Enu A. Mainigi
12                                    (pro hac vice)
                                      Kenneth C. Smurzynski
13                                    (pro hac vice)
                                      Craig D. Singer
14                                    (pro hac vice)
                                      Jesse T. Smallwood
15                                    (pro hac vice)
                                      725 12th Street, N.W.
16                                    Washington, D.C. 20005
                                      Tel. 202-434-5000
17                                    Fax 202-434-5029
                                      emainigi@wc.com
18                                    ksmurzynski@wc.com
19                                    csinger@wc.com
                                      jsmallwood@wc.com
20

21                                    *Attorneys for Defendants*
                                      *Bank of America Corporation and*
22                                    *Bank of America, N.A.*

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

   The undersigned hereby certifies that on this 26th day of October 2020, true and correct

3

copies of **BANK OF AMERICA CORPORATION AND BANK OF AMERICA, N.A.'S**

4

**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.**

5

**12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

6

**THEREOF** was filed with the Court and served on all parties to this action via the CM/ECF.

7

8

                                      */s/ Arlene R. Yang*
                                      Arlene R. Yang

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---