UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFORMATECH CONSULTING, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA CORPORATION, et al., <br><br> Defendants. | Case No. 20-cv-02892-VC <br><br> **ORDER GRANTING MOTION TO COMPEL AS TO BANK OF AMERICA NORTH AMERICA; GRANTING MOTIONS TO DISMISS AS TO BANK OF AMERICA CORPORATION AND INTRALINKS** <br><br> Re: Dkt. Nos. 53, 54, 55 |

To assist businesses during the COVID-19 pandemic, the federal government created the Paycheck Protection Program, through which small businesses could apply for and receive federally guaranteed emergency payroll loans. Private lenders such as Bank of America acted as program intermediaries, processing the loan applications submitted by businesses and funding the loans approved by the government. The plaintiffs, Informatech Consulting and Studio 1220, are two small businesses that submitted PPP loan applications through Bank of America. Their applications were not processed until after the initial funds allocated for PPP loans were already exhausted. The plaintiffs allege that this delay was due to Bank of America improperly prioritizing loan applications from bigger businesses over smaller businesses in violation of the "first come, first served" principle established by the federal government. The plaintiffs named three entities as defendants: Bank of America North America (Bank of America NA), the entity that processed their applications, Bank of America Corporation, its parent company, and Intralinks, the software company that created the online portal that Bank of America NA used to process loan applications. All defendants have moved to dismiss, and the Bank of America defendants have moved to compel arbitration.

The Bank of America defendants argue that this case is subject to arbitration because of language in the deposit agreement, the contract that the plaintiffs and Bank of America NA signed when the plaintiffs opened their accounts. The current version of the deposit agreement contains an arbitration clause granting either party the right to compel arbitration, and a clause delegating questions of arbitrability to the arbitrator.

There is a threshold issue of whether Informatech actually entered into a contract with Bank of America NA by signing a deposit agreement in the first place.[1] *See Galilea, LLC v. AGCS Marine Insurance Co.*, 879 F.3d 1052, 1056 (9th Cir. 2018); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). Informatech objects to the evidence submitted by Bank of America NA purporting to show that Informatech entered into the deposit agreement when it opened its account, and argues that Bank of America NA has not shown that Informatech was ever given, let alone agreed to, a deposit agreement.

But Bank of America NA's evidence is admissible as evidence of its routine business practices. *See* Fed. R. Evid. 406. Specifically, Bank of America NA submitted a declaration from Chris Yuasa, a Senior Vice President at Bank of America NA who has worked at the company for over 20 years, stating that Bank of America NA's regular practice is to provide deposit agreements to all companies opening new business deposit accounts. Yuasa also asserts that an accountholder cannot open a new deposit account without signing a "signature card," which requires the new accountholder to acknowledge receipt of the deposit agreement, and which references the alternative dispute resolution provision in the deposit agreement. Strangely, at the time Informatech opened its account, Bank of America NA only maintained copies of the signature associated with each signature card, and did not maintain copies of the full signed signature card itself. But Bank of America NA provided a copy of a signature that Yuasa asserts—based on his knowledge of Bank of America NA's databases and account software program—was affixed to Informatech's signature card at the time Informatech opened its Bank

---

[1] Studio 1220 does not contest that it signed a deposit agreement.

of America NA account. Informatech does not dispute the validity of this signature. Bank of America NA also submitted a copy of a monthly balance sheet sent to Informatech, which references the receipt of a deposit agreement upon the opening of the account, and provides that the deposit agreement is "part of the contract for your deposit account and govern[s] all transactions relating to your account." Taken together, and in the absence of any evidence submitted by Informatech to the contrary, this is enough to show that Informatech signed the deposit agreement and that a contract containing an arbitration agreement exists.

      It is worth clarifying the arguments Informatech did *not* make. In their opposition to the motion to compel, the plaintiffs briefly note that the deposit agreement gives Bank of America NA the unilateral right to modify the agreement, and that this renders the agreement "unconscionable or illusory." But a unilateral modification provision is permissible under California law in many circumstances because the implied covenant of good faith and fair dealing prevents a party from exercising its unilateral modification right in a way that would render the contract unconscionable. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016). Here, Bank of America NA did exercise its unilateral modification right by adding the arbitration and delegation clauses that the current version of the deposit agreement contains, and that Bank of America NA relies upon as the basis for its motion to compel—the deposit agreement that Informatech signed when it opened its account contained no such provisions. If Informatech had argued that Bank of America NA violated the implied covenant of good faith and fear dealing by adding these provisions (for example, because it failed to provide adequate notice of the new language), the question of whether the deposit agreement is enforceable against Informatech might be difficult. *Cf. In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 793-94 (N.D. Cal. 2019). But at the hearing, the plaintiffs disavowed any argument based on unconscionability.

      Having found there is an enforceable contract with an arbitration provision between Bank of America NA and both plaintiffs, the next question is whether this arbitration agreement applies to the dispute in this case. This is generally a question for courts to decide, unless the

parties "clearly and unmistakably" delegate this question to an arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986)). The current version of the deposit agreement (which Informatech agrees is the governing version if, as found above, the Court rules that Informatech signed a deposit agreement when opening its account) provides: "The arbitrator, sitting alone without a jury, will decide questions of law and fact and will resolve the Claim. This includes the applicability of this Resolving Claims section and the validity of the deposit agreement, except that the arbitrator may not decide or resolve any Claim challenging the validity of the class action and jury trial waiver. The validity of the class action and jury trial waiver will be decided only by a judicial referee or court." The Ninth Circuit has held that nearly identical language "delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause" constitutes clear and unmistakable evidence that the parties agreed to delegate questions of arbitrability to the arbitrator. *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011). The plaintiffs' only real argument in light of this binding precedent is that the provision's second clause—excepting from the arbitrator's realm claims relating to the validity of the class action and jury trial waivers—muddies the otherwise explicit delegation provision and precludes a finding that the parties "clearly and unmistakably" delegated threshold questions of arbitrability to the arbitrator. But this excepting clause is not inconsistent with the general delegation clause, and together they clearly delineate which questions are delegated to the arbitrator and which are not. *See Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). The question of whether the arbitration provisions apply to this dispute falls squarely in the former category.

      The plaintiffs do have strong arguments that this dispute is beyond the scope of the deposit agreement's arbitration clause. The only apparent connection between the deposit agreement and the processing of the PPP loans is that having a deposit account with Bank of America NA—which requires signing a deposit agreement—was a prerequisite for applying for a PPP loan through the bank, as the loans were funded through the deposit accounts. This does not

appear to be enough to find that Bank of America NA's alleged misrepresentations around and mishandling of PPP loans have "a significant relationship to" or their "origin or genesis in" the deposit agreement. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). In addition, Bank of America NA seems to have participated in the PPP loan process as an arm of the federal government, working on behalf of the government to distribute federal funds to businesses. *Cf. Breazeale v. Victim Services, Inc.*, 878 F.3d 759, 767-770 (9th Cir. 2017). But because the deposit agreement contains a delegation clause, the Court must defer these questions of arbitrability to the arbitrator, even if it seems dubious that the arbitration clause could apply here. *See Henry Schein*, 139 S. Ct. at 527-28.

With respect to Bank of America Corporation, the motion to compel arbitration is denied without prejudice. Bank of America Corporation has not shown, at this point, that as a non-signatory to the deposit agreement it can invoke the arbitration clause contained in that agreement to compel arbitration against the plaintiffs, even as the parent corporation of Bank of America NA. *Cf. Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-1130 (9th Cir. 2013); *Soto v. American Honda Motor Co.*, 946 F. Supp. 2d 949, 956-57 (N.D. Cal. 2012).

However, the claims against Bank of America Corporation are dismissed for a different reason: the plaintiffs have done nothing to allege that this entity, as opposed to its subsidiary Bank of America NA, is responsible for any of the alleged misconduct beyond merely intoning that the two separate entities satisfy the agency control test. This conclusory legal statement is insufficient to support liability against the two distinct corporate entities. *See Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017).

Intralink's motion to dismiss is also granted. The plaintiffs clearly have not done enough to adequately allege that this company—the technology company that provided the software for Bank of America NA to process incoming PPP loan applications—was involved in or responsible for any of the challenged conduct. Although it seems highly unlikely that the plaintiffs can plausibly and in good faith allege a claim against the software company, leave to amend will be granted in an abundance of caution.

As the Bank of America defendants argue in their motion to dismiss, there are a host of other problems with the complaint and with the relief sought by the plaintiffs. These issues are not squarely presented here because, as discussed, the complaint fails to even pass the preliminary threshold of adequately alleging misconduct by either Bank of America Corporation or Intralinks. The plaintiffs are cautioned that if they choose to amend they should heed the Court's warning regarding the extreme sloppiness of the complaint, as well as Bank of America's arguments regarding the UCL and FAL claims.

Because the motion to compel against Bank of America NA is granted, the action is dismissed without prejudice as to that defendant. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014). The action is also dismissed as to Bank of America Corporation and Intralinks, with leave to amend.[2] Any amended complaint should be filed within 21 days of the date of this order. Bank of America Corporation and Intralinks should respond within 21 days of the filing of the amended complaint.

**IT IS SO ORDERED.**

Dated: January 25, 2021

VINCE CHHABRIA
United States District Judge

---

[2] The Bank of America defendants' requests for judicial notice are denied as moot.