Patrick N. Keegan, Esq. (SBN 167698)
pkeegan@keeganbaker.com
**KEEGAN & BAKER, LLP**
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92008
Tel:    (760) 929-9303
Fax:    (760) 929-9260

Attorneys for Plaintiff STUDIO 1220, INC.
and the Proposed Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDIO 1220, INC., a California corporation, on behalf of itself and all others similarly situated, | Case No. 20-cv-02892-VC |
| Plaintiff, | **SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| vs. | |
| INTRALINKS, INC., a Delaware corporation; | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Studio 1220, Inc. (hereinafter "Plaintiff" or "Studio 1220"), individually and on behalf of all others similarly situated, alleges upon information and belief as follows:

1.      Plaintiff and the Class (defined *infra*) are similarly situated small businesses who applied through the federal Paycheck Protection Program online with  Bank of America, National Association (hereinafter "Bank of America").  The Paycheck Protection Program ("PPP") is a federal relief program established by Congress and implemented by the U.S. Treasury Department and the Small Business Administration ("SBA") with rules, requirements, protocols and processes that all participating institutions, including Bank of America, must follow.  In order to ensure an orderly flow of these government-provided funds, all participating institutions, including Bank of America, were required to follow the intent of the U.S. Treasury guidance, including what had been posted at the U.S. Treasury website. Plaintiff and the Class (defined *infra*) submitted PPP applications to Bank of America, National Association (hereinafter "Bank of America"), through its loan processor, Defendant Intralinks, Inc., using its IntraLinks Exchange internet portal, and who did not receive approval and submission for funding of a PPP loan by Bank of America, on a first-come, first-served[1] basis as required by the rules governing the PPP.  As confirmed in Defendant Intralinks, Inc.'s email communications sent to Plaintiff and the Class, "Bank of America is working with IntraLinks Exchange to gather your documents."  Additionally, Plaintiff and the Class received confirmation of the submission of their PPP applications with Bank of America by email communications sent by Defendant Intralinks, Inc. from its email account @intralinks.com.  Rather than processing PPP applications submitted by Plaintiff and the Class on a first-come, first-served basis as required by the rules governing the PPP, Bank of America, through Intralinks, Inc., prioritized PPP applications seeking higher amounts and did not approve and submit for funding Plaintiff's and the Class members' PPP applications on a first-come, first-served basis  because processing the PPP applications of larger amounts first would and did generate larger PPP origination fees for Bank of America and greater profits for Defendant Intralinks, Inc.  Defendant Intralinks, Inc.'s email communications sent to Plaintiff and the Class intentionally failed to disclose that

---

[1] The phrase "first come, first served" is defined as "people who arrive earliest get served or treated before the people who arrive later." ("First come, first served." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/first%20come%2C%20first%20served) (Accessed 5/4/2020 and 2/13/2021).

such PPP applications would **not** be processed "as quickly as possible" or on a first-come, first-served basis, making such email communications to Plaintiff and the Class deceptive.  Further, only Bank of America and Defendant Intralinks, Inc. knew that PPP applications submitted with  Bank of America through its loan processor, Defendant Intralinks, Inc., using its IntraLinks Exchange internet portal, would **not** be processed "as quickly as possible" or on a first-come, first-served basis as required by the rules governing the PPP, and Plaintiff and the Class could not have discovered such facts.  Additionally, Defendant Intralinks, Inc. also prevented Plaintiff and the Class from discovering that their PPP applications submitted with  Bank of America through its loan processor, Defendant Intralinks, Inc., using its IntraLinks Exchange internet portal, would **not** be processed "as quickly as possible" or on a first-come, first-served basis as required by the rules governing the PPP, by failing to send corrective email communications sent to Plaintiff and the Class and/or making corrective public statements.  Defendant Intralinks, Inc. intended to deceive Plaintiff and the Class by concealing these facts.  Had the omitted information been disclosed, Plaintiff and the Class reasonably would have behaved differently, e.g., they would not have submitted a PPP application with Bank of America and/or would have submitted a PPP application with another participating institution.  As a result of such dishonest and deplorable behavior, Plaintiff and thousands of small businesses that were entitled to loans under the PPP program were harmed because they were left without PPP approval and funding when the PPP had first been depleted.[2]

2.      Accordingly, Plaintiff, for itself and the Class, alleges a claim for fraudulent concealment against Defendant Intralinks, Inc. (hereinafter also referred to as "Intralinks" or "Defendant"), and seeks actual and compensatory damages, including the loss of use of unfunded PPP amounts during the time of when their PPP applications were not funded, punitive damages, and their costs of this litigation.

## JURISDICTION AND VENUE

3.      Although Plaintiff does not, as yet, know the exact size of the Class (defined *infra*), based upon a statement published on April 6, 2020 that "Bank of America has received applications from 177,000

---

[2] "The $349 billion Paycheck Protection Program was completely depleted after just 13 days in operation." (https://www.pbs.org/newshour/politics/it-took-13-days-for-the-paycheck-protection-program-to-run-out-of-money-what-comes-next).  See also (https://www.cbsnews.com/news/paycheck-protection-program-out-of-money-small-businesses-shut-out/).

small businesses for a total of $32.6 billion in financing"[3], Plaintiff believes that this Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d), since (1) the Class has 100 or more members; (2) the aggregate claim of the alleged Class exceeds $5 million, exclusive of interest and costs; and (3) at least one member of the alleged Class is a citizen of a state different from Defendant Intralinks, Inc.

4.      This Court also has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of the Court and Plaintiff is informed and believes that Defendant Intralinks, Inc., at all times mentioned herein, has maintained a principal office in San Francisco, California, has transacted business in this judicial district, in the County of San Francisco and in the State of California.  Moreover, by doing business in this judicial district, Intralinks' conduct has had an adverse effect upon the finances of residents of this judicial district.

5.      Venue is proper in this District pursuant to 28 U.S.C. §1391(a) and (c) because Intralinks, as a corporation, are "deemed to reside in any judicial district in which [they are] subject to personal jurisdiction," and because the alleged acts giving rise to the claims alleged herein arose in this judicial district.  Further, Plaintiff is informed and believes that Intralinks keeps and maintains a principal office in San Francisco, California.

## INTRA DISTRICT ASSIGNMENT

6.      This case arose in the San Francisco division as Defendant IntraLinks keeps and maintains its principal office in San Francisco County. Therefore, pursuant to L.R. 3-2, assignment to the San Francisco division is appropriate as the location in which a substantial part of the events or omissions which give rise to the claims alleged occurred.

## PARTIES

A.      **PLAINTIFF**

7.      Plaintiff Studio 1220, Inc. (hereinafter "Plaintiff" or "Studio 1220") is a California corporation with its principal executive office in the State of California in San Diego, California, and is licensed to do business in the State of California.   Further, at all relevant times hereto, Studio 1220 does

---

[3](https://www.cnbc.com/2020/04/06/bank-of-america-sees-booming-rescue-loan-demand-with-applications-for-nearly-10percent-of-allotment.html).

and has done business in California and in this judicial district, and keeps a principal business office in Del Mar, California. Plaintiff met the criteria for approval and funding under the PPP, submitted a PPP application for financial relief online with Bank of America on April 3, 2020, and thereafter submitted documents to its loan processor, Defendant Intralinks, Inc., using its IntraLinks Exchange internet portal. Defendant Intralinks, Inc. and Bank of America did not approve Plaintiff's PPP application on or before April 26, 2020, did not submit such PPP application to the SBA for funding on or before April 26, 2020, and the SBA did not fund such PPP application on or before April 26, 2020.

**B.    DEFENDANT**

8.    Defendant Intralinks, Inc., is a Delaware corporation, with its principal place of business located in New York, New York, and is licensed to do business in the State of California.  Further, at all relevant times hereto, Intralinks, Inc. does and has done business in California and in this judicial district and Plaintiff is informed and believes that Intralinks, Inc. keeps a principal office in the State of California at 580 California, 2nd Floor, San Francisco, California.  At all relevant times, Intralinks sent emails to Plaintiff and the Class from its email account, <@intralinks.com>, and maintained, configured and operated IntraLinks Exchange used to "gather [] documents" from Plaintiff and the Class.

9.    As stated in Defendant Intralinks, Inc.'s Certification of Interested Entities or Persons, dated June 16, 2020, Defendant Intralinks, Inc. certified that SS&C Technologies Holdings, Inc. (NASDAQ: SSNC) and SS&C Technologies, Inc. (I) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding.  (Docket No. 23 in Case No. 3:20-cv-03081). In November 2018, SS&C Technologies Holdings, Inc. (NASDAQ: SSNC) purchased Defendant Intralinks, Inc. for $1 billion in cash and $500 million in SSNC shares.  SS&C Technologies Holdings, Inc. (NASDAQ: SSNC) regularly files statements with United States Securities and Exchange Commission.  In its Annual Report on Form 10-K for the Fiscal Year Ended December 31, 2019[4], signed and filed on February 28, 2020, SS&C Technologies Holdings, Inc. (NASDAQ: SSNC) represented *inter alia*, that, "We offer clients the flexibility to choose from multiple software delivery options, including on-premise applications and hosted,

[4](https://www.sec.gov/ix?doc=/Archives/edgar/data/1402436/000156459020007695/ssnc-10k_2019123
1.htm).

multi-tenant or dedicated applications.  Additionally, we provide clients with targeted, blended solutions based on a combination of software and software-enabled services.  We believe that our software-enabled services provide superior client support and an attractive alternative to clients that do not wish to install, manage and maintain complicated financial software. [¶] Our business model is characterized by high revenue retention rates and significant cash flow.... Maintenance services are generally provided under annually renewable contracts.  Our pricing typically scales as a function of our clients' assets under management, the complexity of asset classes managed, the volume of transactions, and the level of service the client requires." In its Annual Report on Form 10-K for the Fiscal Year Ended December 31, 2019, SS&C Technologies Holdings, Inc. (NASDAQ: SSNC) additionally represented that it offers "Banking and Lending Solutions", that include "a single database application that provides comprehensive commercial loan management from initial request to final disposition" and "manages all aspects of our clients' loan process, including pre-qualifying loan requests, processing applications, commitment processing, loan disposition, servicing and accounting."

10.     Prior to April 3, 2020, Defendant Intralinks, Inc. entered into an agreement with Bank of America, to process PPP applications and receive documents from PPP applicants, including Plaintiff and the Class, sent emails to PPP applicants, including Plaintiff and the Class, from its email account, <@intralinks.com>, and to maintained, configured and operated IntraLinks Exchange used to "gather [] documents" from PPP applicants, including Plaintiff and the Class.

11.     When a reference is made to any act of Defendant, such shall be deemed to mean that officers, directors, agents, employees, representatives or agents of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct its employees, representatives or agents while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## CLASS ACTION ALLEGATIONS

12.     This action has been brought and may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because the proposed class is numerous and there is a well-defined community of interest in the litigation, as described further below.

/ / /

13.     Plaintiff brings this action on behalf of itself and all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. Without prejudice to later revision, the class which Plaintiff seeks to represent are composed of:

> All PERSONS who (1) applied for a loan under the federal Paycheck Protection Program (PPP) with Bank of America beginning on April 3, 2020; (2) received confirmation of submission of their PPP application either online via IntraLinks Exchange or by email from @intralinks.com and (3) did not receive approval and funding of their PPP application submitted with Bank of America on or before April 26, 2020 (hereinafter referred to as the "Class").

"PERSONS" shall include every natural person, firm, association, organization, partnership, business trust, corporation, limited liability company, or public entity.  Excluded from the Class are Defendant Intralinks, Inc., Bank of America Corporation and Bank of America, National Association, any "affiliate," "principal" or "subsidiary" of Defendant Intralinks, Inc., Bank of America Corporation or Bank of America, National Association, as defined in the California Corporations Code §§ 150, 175, and 189, respectively, and the employees, officers, directors, and agents of Defendant Intralinks, Inc., Bank of America Corporation or Bank of America, National Association.  Members of the Class described above will be referred to as "Class members." Plaintiff reserves the right under Rule 23 to amend or modify the Class definition with greater particularity or further division into subclasses or limitation to particular issues as warranted, and as additional facts are discovered.

14.     Numerosity: Although Plaintiff does not, as yet, know the exact size of the Class, based upon based upon a statement published on April 6, 2020 that Bank of America had received applications from 177,000 small businesses, Plaintiff believes that there are numerous Class members.  Thus, the Class is sufficiently numerous to make joinder impracticable, if not completely impossible. The disposition of the claims of the members of Class through this class action will benefit both the parties and this Court.  In addition, the Class is readily identifiable from information and records in the possession of Bank of America and Intralinks, and the Class is defined in objective terms that make the eventual identification of Class members possible, i.e. the Class definition is sufficient to allow members of the Class to identify themselves as having a right to recover.

15.     Commonality: There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact to each class and subclass predominate over questions which may affect individual class and subclass members, including the

following:

(i)    Did  Defendant Intralinks, Inc. or Bank of America comply with all applicable SBA Regulations in processing applications for PPP funds and in distributing PPP funds?

(ii)    Did  Defendant Intralinks, Inc. or Bank of America comply with their legal obligations under the terms of the "Coronavirus Aid, Relief, and Economic Security Act", also known as the CARES Act, as third party intermediary administrators of the PPP funds?

(iii)    Did  Defendant Intralinks, Inc. or Bank of America have a policy and/or practice of prioritizing large dollar PPP applications to the detriment of the small dollar PPP applications?

(iv)    Did  Defendant Intralinks, Inc. or Bank of America process PPP applications on a "first-come, first-served" basis?

(v)    Did  Defendant Intralinks, Inc. or Bank of America process applications in the order received or  on a "first-come, first-served" basis, or did larger dollar PPP applications get moved "to the front of the line"?

(vi)    Did  Defendant Intralinks, Inc. send emails to Plaintiff and the Class regarding their PPP applications which it knew was false, misleading and/or had a tendency to deceive the reasonable consumer?

(vii)    Did  Defendant Intralinks, Inc. or Bank of America prioritize maximizing origination fees and/or profits over achieving the goals of the CARES Act and the PPP?

(viii)    Did  Defendant Intralinks, Inc. or Bank of America violate the regulations for administering, processing, and submitting loans through the PPP?

(ix)    Did  Defendant Intralinks, Inc. or Bank of America make false, misleading, and deceptive misrepresentations and omissions regarding their administration, processing, and submission of the applications for loans from small businesses through the PPP?

(x)    Did  Defendant Intralinks, Inc. or Bank of America failed to the administer, process, and submit loans on a "first-come, first-served" basis as required by the PPP?

(xi)    Did  Defendant Intralinks, Inc. or Bank of America administered, processed, and submit larger PPP loans before smaller PPP loans?

(xii)    Did  Defendant Intralinks, Inc. concealed material facts from Plaintiff and the Class?

(xiii)    Did  Defendant Intralinks, Inc. breached a fiduciary duty to Plaintiff and the Class?

16.   <u>Typicality</u>: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class members. Plaintiff's and the Class members' claims for damages arise from and were caused by Defendant's false, misleading, and deceptive misrepresentations and omissions regarding their administration, processing, and submission of PPP applications, as alleged herein, i.e., Defendant's failure to process, approve and submit for funding their PPP applications. The factual and legal bases of Defendant's liability to Plaintiff and each Class member are substantially similar, resulting in injury to Plaintiffs and each Class member as a result of Defendant's actions as described herein.

17.   <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has no interest that is contrary to or in conflict with those members of the Class it seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation involving the violations alleged herein to further ensure such protection and Plaintiff intends to prosecute this action vigorously. Neither Plaintiff nor its counsel has any interest adverse to other Class members.

18.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is far superior to other available methods for the fair and efficient adjudication of this controversy.

19.   <u>Superiority</u>:  The nature of this action and the nature of laws available to Plaintiff and the members of Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class for the claims alleged and the disposition of whose claims in a class action will provide substantial benefits to both the parties and the Court because:

(i)   Questions of law and fact common to the Class predominate over questions which may affect individual members of the Class;

(ii)   If each member of the Class were required to file an individual lawsuit, the Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited

resources of each individual member of the Class with its vastly superior financial and legal resources;

(iii)    The costs of individual suits could unreasonably consume the amounts that would be recovered;

(iv)    Proof of a common business practice or factual pattern which Plaintiff experienced is representative of that experienced by the Class and will establish the right of each of the members to recover on the causes of action alleged;

(v)    Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation; and

(vi)    The disposition of the claims of the members of Class through this class action will produce salutary by-products, including a therapeutic effect upon those who indulge in fraudulent practices, and aid to legitimate business enterprises by curtailing illegitimate competition.

20.    Notice to the members of the Class may be made by e-mail or first-class mail addressed to all persons who have been individually identified by Defendant Intralinks, Inc. and/or through access to Defendant Intralinks, Inc.'s records.  Alternatively, if Defendants cannot produce a list of Class members' names and e-mail or mailing  addresses, the members of the Class may be notified by publication in the appropriate media outlets, and by posting notices in Defendant Intralinks, Inc.'s or Bank of America's places of business.

21.    Plaintiff and the Class have suffered irreparable harm and damages as a result of Defendants' wrongful conduct as alleged herein.  Absent a representative action, Plaintiff and the Class will continue to suffer losses, thereby allowing these violations of law to proceed without remedy.

### COMMON FACTUAL ALLEGATIONS

22.    On March 11, 2020, the COVID-19 outbreak was characterized as a pandemic by the World Health Organization (WHO).  On March 19, 2020, Governor Gavin Newsom issued an executive Stay at Home Order in the State of California in order to slow the spread of the global COVID-19 pandemic.[5]

23.    Small businesses are the backbone of the American economy. Indeed, more than half of the

---

[5] (https://www.gov.ca.gov/2020/03/19/governor-gavin-newsom-issues-stay-at-home-order/).

1  people that work in America work for a small business.[6] These small businesses and their employees have

2  suffered economic hardship due to the global COVID-19 pandemic.

3      24.    On March 25, 2020, in response to the economic fallout of the global COVID-19 pandemic,

4  the Senate passed the "Coronavirus Aid, Relief, and Economic Security Act", also known as the CARES

5  Act. The CARES Act passed the House the next day and was signed into law by President Donald J. Trump

6  on March 27, 2020. The legislation included $377 billion in federally guaranteed loans to small businesses

7  and established a $500 billion government lending program for distressed companies. Unprecedented in size

8  and scope, the legislation was the largest-ever economic stimulus package in U.S. history, amounting to 10%

9  of the total U.S. gross domestic product.

10     25.    As part of the CARES Act, the PPP authorized up to $349 billion in forgivable loans to small

11 businesses to pay their employees during the COVID-19 pandemic. As further set forth in the "Paycheck

12 Protection Program (PPP) Information Sheet," the United States Department of the Treasury represented that

13 "***All loan terms will be the same for everyone***. The loan amounts will be forgiven as long as:

14     •      The loan proceeds are used to cover payroll costs, and most mortgage interest, rent, and
              utility costs over the 8 week period after the loan is made; and
15     •      Employee and compensation levels are maintained."[7]

16 As further set forth in the "PPP – Overview," the  United States Department of the Treasury instructed,

17 "Starting April 3, 2020, small businesses and sole proprietorships can apply. Starting April 10, 2020,

18 independent contractors and self-employed individuals can apply. We encourage you to apply as quickly as

19 you can because there is a funding cap." As further set forth in the "Paycheck Protection Program (PPP)

20 Information Sheet," the United States Department of the Treasury instructed, "Although the program is open

21 until June 30, 2020, we encourage you to apply as quickly as you can because there is a funding cap and

22 lenders need time to process your loan."  One of the most important aspects of the PPP was that the terms

23 provide criteria for loan forgiveness through a process that incentivizes employers to retain, and not "lay

24 off", employees during the COVID-19 pandemic by providing, "You will owe money when your loan is due

25

26

27 [6] (Moffatt, Mike. "Small Business in the United States." ThoughtCo, Feb. 11, 2020, thoughtco.com/intro-to-small-business-in-the-united-states-1147915).

28 [7] (https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf).

if you use the loan amount for anything other than payroll costs, mortgage interest, rent, and utilities payments over the 8 weeks after getting the loan. You will also owe money if you do not maintain your staff and payroll.

- • <u>Number of Staff</u>: Your loan forgiveness will be reduced if you decrease your full-time employee headcount.
- • <u>Level of Payroll</u>: Your loan forgiveness will also be reduced if you decrease salaries and wages by more than 25% for any employee that made less than $100,000 annualized in 2019.
- • <u>Re-Hiring</u>: You have until June 30, 2020 to restore your full-time employment and salary levels for any changes made between February 15, 2020 and April 26, 2020."

26.    It was the express intent of the Congress in passing the CARES Act that the funds be used to support small businesses.[8] The text of the Bill itself provides "It is the sense of the Senate that the Administrator should issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals (as defined in section 8(d)(3)©), women, and businesses in operation for less than 2 years."

27.    At President Trump's signing of the CARES Act, ranking member of the House Small Business Committee Representative Steve Chabot (R-Ohio) praised the legislation as giving small businesses a great chance to reopen.[9] Senator Marco Rubio (R-Fl), Chairman of the Senate Small Business and Entrepreneurship stated that the "bipartisan small business package…will provide emergency relief so that millions of American workers can keep their jobs and millions of small businesses can stay open."[10] Senate Majority Whip, Senator John Thune (R-SD) stated that the funds provided by the CARES Act "will deliver relief to small businesses to help them and their workers weather this storm."[11]

---

[8] H.R.748(P)(iv) - CARES Act.

[9] Remarks by President Trump at Signing of H.R.748, the Cares Act, 2020 WL 1485787, at *67.

[10] (Sen. Rubio, Press Release, 03/25/2020 https://www.rubio.senate.gov/public/index.cfm /pressreleases? ContentRecord_id=D08E8A75-546A-4C56-A890-B948048E9B5C).

[11] (Sen. Thune, Press Release, 03/25/2020 https://www.thune.senate.gov/public/index.cfm/pressreleases? ID=CA914CF0-5C3D-4A02-B6F2-84925B5467BD).

28.     Bank of America communicated to the public that it intended to follow the law and direct the PPP funds to the small businesses that Congress intended to help.  Bank of America stated on its website to the public that it will "process your loan application with the Small Business Administration as quickly as possible."[12] Intralinks, by email, also represented to Plaintiff and the Class that applications would be processed "as quickly as possible".

29.     The United States Department of the Treasury announced that starting April 3, 2020, small businesses and sole proprietorships could apply for and receive loans to cover their payroll and other certain expenses through existing SBA lenders, and that starting April 10, 2020, independent contractors and self-employed individuals could apply.[13]

30.     Within this context, Bank of America served as an intermediary between small businesses and federal funds. Not only did Bank of America's April 3, 2020 website statements encourage Plaintiff and the Class to apply online now, Bank of America encouraged Plaintiff and the Class to act fast.

31.     Time was of the essence.  The SBA issued its Interim Final Rule regarding the implementation of the PPP.[14] According to the Interim Final Rule, "[t]he following outlines the key provisions of the PPP ... [2.] m. Is the PPP 'first-come, first-served?' Yes." Thus, the SBA regulations that govern the PPP mandated that the funds be distributed "first come, first served."[15] There was a line, a "queue." If you applied sooner rather than later, according to the SBA regulations, your place in line should have been considered, and your loans issued accordingly, "first-come, first-served." Additionally, the terms of the PPP only allow for each small business borrower to obtain a single SBA backed loan through the PPP. The SBA Regulations provide: "The Administrator, in consultation with the Secretary, determined that no eligible borrower may receive more than one PPP loan. This means that if you apply for a PPP loan you

---

[12] (https://about.bankofamerica.com/promo/assistance/faqs/small-business-paycheck-protectionprogram).

[13] (https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf).

[14] (https://home.treasury.gov/system/files/136/PPP--IFRN%20FINAL.pdf).

[15] Small Business Administration Interim Final Rule, at § m [Docket No. SBA-2020-0015] 13 CFR Part 120 Business Loan Program Temporary Changes, Paycheck Protection Program, RIN 3245-AH34.

1    should consider applying for the maximum amount."[16]

2      32. In order to be eligible as a PPP lender, Bank of America was required to submit, and did

3    submit, a CARES Act Section 1102 Lender Agreement ("CARES Lender Agreement").[17]  In the CARES

4    Lender Agreement, any institution, including Bank of America, who wished to apply and be approved as

5    a PPP lender was required to adhere to all PPP requirements, including the "first-come, first-served" rule.[18]

6    However, in contravention with  CARES Lender Agreement and their own representations to Plaintiff and

7    the Class, as well to the public, this was not how Bank of America and Defendant Intralinks, Inc. processed

8    PPP applications they received.

9      33. Prior to April 3, 2020, Defendant Intralinks, Inc. entered into an agreement with Bank of

10   America, to process PPP applications and receive documents from PPP applicants, including Plaintiff and

11   the Class, to sent emails to PPP applicants, including Plaintiff and the Class, from its email account,

12   <@intralinks.com>, and to maintained, configured and operated IntraLinks Exchange used to "gather []

13   documents" from PPP applicants, including Plaintiff and the Class.  Unknown to Plaintiff and the Class, as

14   well as the public, Bank of America and Defendant Intralinks, Inc., rather than processing PPP applications

15   on a "first come, first served" basis as required and as represented, intended and did prioritized or

16   front-loaded PPP applications with higher loan amounts.

17

18   [16] Small Business Administration Interim Final Rule, at § k [Docket No. SBA-2020-0015] 13 CFR Part 120

19   Business Loan Program Temporary Changes, Paycheck Protection Program, RIN 3245.

20   [17](htts://home.treasury.gov/system/files/136/PPP--Agreement-for-New-Lenders-Banks-Credit-Unions-F

21   CS-w-seal-fillable-4-3-2020.pdf).

22   [18] Bank of America was prohibited from modifying the "first-come, first-served" requirement unless it
     received written authorization or exemption: "Lender agrees that any modification to this Agreement to be

23   asserted against SBA or any exemption to be claimed from any provision of the Small Business Act, the
     Paycheck Protection Program, or PPP Loan Program Requirements is invalid, null, and void unless it is

24   made in writing by an official of SBA authorized to grant such modification or exemption and was made
     after full disclosure to SBA of all material facts and circumstances." Moreover, Bank of America did not

25   receive such written authorization or exemption from the SBA to deviate from the "first-come, first-served"
     requirement.  Further, all SBA lenders, including Bank of America, "must act ethically" and may not, among

26   other things, (i) self-deal; (ii) have a real or apparent conflict of interest with a borrower; (iii) knowingly
     misrepresent or make a false statement to the SBA; (iv) engage in conduct reflecting a lack of business

27   integrity or honesty; or (v) engage in any activity which taints the bank's objective judgment in evaluating

28   the loan. See 13 CFR Part 120.140.

34.     Moreover, Intralinks had the operational capacity to manage all aspects of Bank of America's PPP application process, including pre-qualifying loan requests, processing applications, commitment processing, loan disposition, servicing and accounting and the ability to prioritize PPP applications made to Bank of America for larger amounts, rather than processing all applications on a first-come, first-served basis.  In fact, during the COVID-19 crisis, SS&C Technologies Holdings, Inc. (NASDAQ: SSNC) represented in its Form 10-K, signed and filed on February 28, 2020, boasted about such operational capacity, by representing, that it offered "Banking and Lending Solutions" including, e.g.,

- "a single database application that provides comprehensive commercial loan management from initial request to final disposition"

- that "manages all aspects of our clients' loan process, including pre-qualifying loan requests, processing applications, commitment processing, loan disposition, servicing and accounting."

35.     In order to conceal from Plaintiff and the Class, as well as the general public, the fact that Bank of America and Intralinks would prioritizing those PPP applications for larger amounts first that would earn the highest origination fees rather than processing PPP applications on a "first come, first served" basis as required by U.S. Treasury rules and guidance, Bank of America, on its website, and in emails sent to Plaintiff and the Class beginning on April 3, 2020, made the following representations which were known to Intralinks.

36.     On April 3, 2021, Bank of America posted the following statements on its internet website, https://about.bankofamerica.com/promo/assistance/latest-updates-from-bank-of-america-coronavirus/small-business-assistance, encouraging Plaintiff and the Class, and the public, to now "to apply for a Paycheck Protection Program through our bank", which was known to Intralinks:

SMALL BUSINESS RESOURCES
We're here for our small business clients
We stand ready to support you with the services, solutions, and resources you need to manage your business.

Over the past several weeks, Bank of America has been providing support to our customers and clients through our enhanced Client Assistance Program.

The Small Business Administration (SBA) and U.S. Treasury have released the **Paycheck Protection Program** guidelines. Our Small Business clients who may be eligible for financial relief through the federal Paycheck Protection Program can now apply online. Please review the below Bank of America eligibility requirements. After you have reviewed the eligibility requirements and have gathered the necessary documents apply below.

Latest Paycheck Protection Program details

The **Paycheck Protection Program** is a federal relief program established by Congress and implemented by the U.S. Treasury Department and the SBA with rules, requirements, protocols and processes that all participating banks, including Bank of America, must follow.

In order to ensure an orderly flow of these government-provided funds, we will follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website, that small businesses that plan to apply should do so with their current business loan provider.

Small Business clients with **a business lending and a business deposit relationship at Bank of America** are eligible to apply for a Paycheck Protection Program through our bank. A client's pre-existing lending relationship with us may include small business, commercial or corporate credit cards, conventional business loan or lease, business lines of credit, business auto loans, practice solutions loans, trade and asset-based loans.

Small Business owners who do not have a business lending and business deposit relationship with us should contact their current business loan provider as soon as possible, if they plan to apply for the federal Paycheck Protection Program. This is the best and fastest method for applying for federal relief, based on the U.S. Treasury requirements and guidance.

All applications, information and correspondence about the Paycheck Protection Program at Bank of America will occur online and through email, including the application process, submission of required documents, and follow up correspondence.

ELIGIBLE CLIENTS
Application information
To apply for the Paycheck Protection Program through our bank, you must have a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020. A Business Credit Card, line of credit or loan may be the lending product used.

At Bank of America, the federal Paycheck Protection Program will be administered online only.

Clients must have a Business Online Banking account. If you do not currently have an online account, you must enroll in Business Online Banking as soon as possible.

After completing the application process, you will receive online confirmation of the submission.

Bank of America will process your application as soon as possible.

We will contact you with next steps and to collect any required documents. Do not proactively deliver or send documents to our Financial Centers or banking teams.

Information about your application status will NOT be available through our Financial Centers or Contact Centers – due to the nature of this loan process and the steps involved.

You will be notified of the status of your loan application through email communications.

37.    Commencing on April 3, 2020, Bank of America sent to Plaintiff and the Class email communications on how to apply for PPP financial relief with Bank of America, with a subject line "What

you need to know about financial assistance under the Paycheck Protection Program", from the email account of Bank of America, <customerservice@emcom.bankofamerica.com>, which was known to Intralinks, stating the following:

Bank of America expands support for clients with new Paycheck Protection Program

Over the past several weeks, Bank of America has been providing support to our customers and clients through our enhanced Client Assistance Program.

In addition, beginning April 3rd, our Small Business clients may also be eligible for financial relief through the federal Paycheck Protection Program that is being introduced as a result of the Coronavirus Aid, Relief, and Economic Security (CARES) Act.

The Paycheck Protection Program is a federal relief program established by Congress and implemented by the U.S. Treasury Department and the Small Business Administration (SBA) with rules, requirements, protocols and processes that all participating banks, including Bank of America, must follow.

In order to ensure an orderly flow of these government-provided funds, we will follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website, that small businesses that plan to apply should do so with their current business loan provider.

•       Small Business clients with a business lending and a business deposit relationship at Bank of America are eligible to apply for the Paycheck Protection Program through our bank. A client's pre-existing lending relationship with us may be a Bank of America Business Credit Card, small business line of credit or business loan.

•       Small Business owners who do not have both a business lending and business deposit relationship with us should contact their current business loan provider as soon as possible, if they plan to apply for the federal Paycheck Protection Program. This is the best and fastest method for applying for federal relief, based on the U.S. Treasury requirements and guidance.

•       All applications, information and correspondence about the Paycheck Protection Program at Bank of America will occur online and through email, including the application process, submission of required documents, and follow up correspondence.

Eligible clients who plan to apply for the Paycheck Protection Program loan should be aware of the following important items:

You must have a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020. A Business Credit Card, line of credit or loan may be the lending product used.
1.      At Bank of America, the federal Paycheck Protection Program will be administered online only.
2.      Clients must have a Business Online Banking account. If you do not currently have a Business Online Banking account you must sign up for Business Online Banking as soon as possible.
3.      Apply    for    the    federal    Paycheck    Protection    Program    at www.bankofamerica.com/SBResources beginning on Friday, April 3rd.
4.      After completing the application process, you will receive online confirmation of the

submission.

5.      Bank of America will process your application as soon as possible.

6.      We will contact you with next steps and to collect any required documents. Do not proactively deliver or send documents to our Financial Centers or banking teams.

7.      You will be notified of the status of your loan application through email communications.

8.      Information about your application status will NOT be available through our Financial Centers or Contact Centers - due to the nature of this loan process and the steps involved.

9.      To prepare for your application process, review requirements listed on the U.S. Treasury website. These include:

• 2019 Payroll - total payroll for full year 2019, by employee, as reported to the IRS

• 2019 Independent Contractor Costs - Listing of 1099's-MISC for 2019 independent contractors, by person, as reported to the IRS (Note: Do NOT include 1099's for services)

• Payroll report as of February 15, 2020 or closest date after that date, by employee

• Other information

Under the CARES Act, the federal Paycheck Protection Program includes the following components:

• The program will be available to businesses with 500 or fewer employees to help with payroll, rent, utilities, healthcare costs and more.

• Loans can be for up to two months of your average monthly payroll costs from the last year plus an additional 25% of that amount. The loan amount is capped at $10 million.

• Loans will be forgiven up to the loan amount for a borrower's payroll, rent, mortgage, and utility costs incurred and paid during an eight-week period after a loan is originated.

• Loan forgiveness will be reduced to the extent of a) any reduction in employee headcount during this period (as compared to the prior year), and b) any reduction in pay of an employee by more than 25% (as compared to their prior year compensation). Borrowers that rehire workers will not be penalized for paying them less when they are rehired.

• The SBA also expanded Emergency Economic Injury Disaster Loans.

Bank of America business lending relationships include small business, commercial or corporate credit cards, conventional business loan or lease, business lines of credit, business auto loans, practice solutions loans, trade and asset-based loans. Clients with these existing relationships have the established accounts and underwriting verifications in place to allow Bank of America to help provide the quickest access to the relief funds and help the U.S. government prevent fraud in the process. There are additional options that may be sources of support for small business owners:

• Other Small Business Administration relief programs: The SBA is providing special financing options that small business owners can access via www.SBA.gov/disaster.

• Community Development Financial Institutions (CDFIs): CDFIs, also known as local loan centers, are small and typically not-for-profit providers of loans. Bank of America is the largest investor in CDFIs in the United States - with more than $1.6 billion in loans and investments in over 250 CDFIs. On Monday, March 30, Bank of America announced that it will provide up to $250 million in capital to community development financial institutions (CDFIs) by funding loans through the Paycheck Protection Program. In addition, Bank of America will provide up to $10 million in philanthropic grants to help fund the operations of CDFIs. Find a CDFI near you via the CDFI list and locator tool.

• Other small business lending providers: If you have a lending relationship at Bank of America bank, working with your current provider will be the best and fastest approach.

• SBA 7(a) lenders: find a local SBA lender via https://www.sba.gov/

funding-programs/loans.

Bank of America continues to provide additional support to our customers and clients through our enhanced Client Assistance Program. Learn more

Sincerely,

Sharon Miller
Head of Small Business

Please do not reply to this email, as email replies are not monitored.

You're receiving this servicing email as part of your existing relationship with us.

38.    Bank of America's above described representations made on its website and in its email communications were false, misleading and/or had a tendency to deceive the reasonable consumer, which Intralinks knew were false, misleading and/or had a tendency to deceive the reasonable consumer, because:

• Bank of America did not "follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website" to process, approve and submit for funding PPP applications, and Bank of America failed to disclose that Bank of America would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance.

• By stating "The Paycheck Protection Program is a federal relief program established by Congress and implemented by the U.S. Treasury Department and the SBA with rules, requirements, protocols and processes that all participating banks, including Bank of America, must follow," Bank of America failed to disclose that Bank of America would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance.

• By stating "In order to ensure an orderly flow of these government-provided funds, we will follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website," Bank of America failed to disclose that Bank of America would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance.

• By stating "Small Business clients with a business lending and a business deposit relationship at Bank of America are eligible to apply for a Paycheck Protection Program through our bank," Bank of America failed to disclose that being a small business client with a business lending and a business deposit relationship at Bank of America was not the only requirement to "be eligible to apply for the Paycheck Protection Program through our bank" since Bank of America would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury guidance.

• By stating that we required and Plaintiff and the Class were qualified because they had "a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020," Bank of America failed to disclose that being a "a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020" was not the only requirement to "be eligible to apply for the Paycheck Protection Program through our bank" since Bank of America would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury guidance.

- By stating "Bank of America will process your application as soon as possible," Bank of America failed to disclose that Bank of America would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance.

- By stating to Plaintiff and the Class that submission of a PPP application to Bank of America is the "best and fastest method for applying for federal relief, based on the U.S. Treasury requirements and guidance," Bank of America failed to disclose that Bank of America would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance.

- By stating "All applications, information and correspondence about the Paycheck Protection Program at Bank of America will occur online and through email, including the application process, submission of required documents, and follow up correspondence," Bank of America failed to disclose that Bank of America and Intralinks were not processing, approving and submitting for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by allowing others to deliver or send documents to Bank of America's Financial Centers or banking teams and/or by allowing others to submit applications before April 3, 2020 and/or by prioritizing PPP applications for larger amounts before processing, approving and submitting for funding PPP applications for smaller amounts.

- By stating "At Bank of America, the federal Paycheck Protection Program will be administered online only," Bank of America failed to disclose that Bank of America and Intralinks were not processing, approving and submitting for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by allowing others to deliver or send documents to Bank of America's Financial Centers or banking teams and/or by allowing others to submit applications before April 3, 2020 and/or by prioritizing PPP applications for larger amounts before processing, approving and submitting for funding PPP applications for smaller amounts.

- By stating "Do not proactively deliver or send documents to our Financial Centers or banking teams," Bank of America failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by allowing others to deliver or send documents to Bank of America's Financial Centers or banking teams and/or by allowing others to submit applications before April 3, 2020 and/or by prioritizing PPP applications for larger amounts before processing, approving and submitting for funding PPP applications for smaller amounts.

- By stating that we required and Plaintiff and the Class were qualified because they were "Clients with existing relationships have the established accounts and underwriting verifications in place [that would] allow Bank of America to help provide the quickest access to the relief funds," Bank of America failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by allowing others to deliver or send documents to Bank of America's Financial Centers or banking teams and/or by allowing others to submit applications before April 3, 2020 and/or by prioritizing PPP applications for larger amounts before processing, approving and submitting for funding PPP applications for smaller amounts.

- By stating "Apply for the federal Paycheck Protection Program at www.bankofamerica.com/SBResources beginning on Friday, April 3rd," Bank of America

failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by allowing others to deliver or send documents to Bank of America's Financial Centers or banking teams and/or by allowing others to submit applications before April 3, 2020 and/or by prioritizing PPP applications for larger amounts before processing, approving and submitting for funding PPP applications for smaller amounts.

• By stating that "Bank of America is working with IntraLinks Exchange to gather your documents. That is our standard process, and we are using it to expedite this Small Business Administration program," Bank of America failed to disclose that Bank of America and Intralinks were not using "IntraLinks Exchange ... to expedite this Small Business Administration program" to process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but instead were prioritizing PPP applications for larger amounts before processing, approving and submitting for funding PPP applications for smaller amounts.

• By stating that "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval," Bank of America failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by allowing others to deliver or send documents to Bank of America's Financial Centers or banking teams and/or by allowing others to submit applications before April 3, 2020 and/or by prioritizing PPP applications for larger amounts before processing, approving and submitting for funding PPP applications for smaller amounts.

• By stating that "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval," Bank of America failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by loan amount by flagging PPP applications of smaller amounts as having missing or incomplete documentation or needing documentation not previously requested or requesting documentation be re-submitted via IntraLinks Exchange as a specious justification not to process, approve and submit for funding PPP applications on a "first-come, first-served" basis.

39.    In order to conceal from Plaintiff and the Class, as well as the general public, the fact that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance and would instead prioritize PPP applications for larger amounts before processing, approving and submitting for funding PPP applications for smaller amounts, Intralinks sent emails to Plaintiff and the Class beginning on April 3, 2020. Specifically, after completing the application process, Plaintiff and the Class were notified of the status of their loan application when they received email communications with a subject line "Paycheck Protection Program: We're ready to receive your documents", from the email account of Defendant Intralinks, Inc., <welcome@intralinks.com>, stating the following:

Thank you for submitting your application for the Paycheck Protection Program to Bank of America

You recently received your welcome letter and this is the next step in the application process - submitting the required documents.

Bank of America is working with IntraLinks Exchange to gather your documents. That is our standard process, and we are using it to expedite this Small Business Administration program. We'll need you to upload your documentation to IntraLinks confidential and secure website. Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval.

What you need to do
Log into IntraLinks and upload the required documents:
• Payroll processor records for the period including February 15, 2020
• Payroll tax filings for 2019
• For independent contractors; Form 1099-MISC for 2019
• For sole proprietorship or self-employed; income and expenses, i.e., Profit & Loss Statement
• Other documentation to support payroll expenses such as bank records

**How to Login**
• You can log into your IntraLinks Exchange using the following link: **[OMITTED]**
• Your IntraLinks ID is: **[OMITTED]**
• If you already have an IntraLinks password, and don't remember, click here.
• Don't use your Bank of America Online Banking password.

**What you need to know**
• Bank of America will review uploaded documents and contact you if further clarification or documentation is necessary
• Bank of America will process your loan application with the Small Business Administration as quickly as possible
• Bank of America will email you with the status once we receive a decision from the Small Business Administration
• Please do not deliver or send documents to Bank of America Financial Centers or banking teams.
• Information about your application status will NOT be available through Bank of America's Financial Centers or Contact Centers

Thank you for being a valued client of Bank of America.

40.     Defendant Intralinks, Inc.'s representations were false, misleading and/or had a tendency to deceive the reasonable consumer because:

•       Bank of America and Intralinks did not "follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website" to process, approve and submit for funding PPP applications, and Intralinks failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance.

•       By stating "Bank of America is working with IntraLinks Exchange to gather your

documents" and "That is our standard process, and we are using it to expedite this Small Business Administration program," Intralinks failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by loan amount.

• By stating "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval," Intralinks failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by loan amount.

• By stating that "Bank of America will process your loan application with the Small Business Administration as quickly as possible," Intralinks failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by loan amount.

• By stating that "Bank of America will review uploaded documents and contact you if further clarification or documentation is necessary," Intralinks failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by loan amount by flagging PPP applications of smaller amounts as having missing or incomplete documentation or needing documentation not previously requested or requesting documentation be re-submitted via IntraLinks Exchange as a specious justification not to process, approve and submit for funding PPP applications on a "first-come, first-served" basis.

• By stating "Please do not deliver or send documents to Bank of America Financial Centers or banking teams," Intralinks failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by allowing others to deliver or send documents to Bank of America's Financial Centers or banking teams and/or by allowing others to submit applications before April 3, 2020 and/or by using IntraLinks Exchange to prioritize PPP applications by loan amount, i.e. prioritizing PPP applications for larger amounts before processing, approving and submitting for funding PPP applications for smaller amounts.

41.     Data reported by the SBA for all lenders reveals that, rather than processing PPP applications on a "first come, first served" basis as required, lenders prioritized or front-loaded applications with higher loan amounts.  This is shown by comparing data from PPP loans processed between April 3, 2020 (when the SBA first started approving PPP loans) and April 13th versus data between April 13th and April 16th

(the day when it was reported that PPP had first been depleted[19]).

42.  A breakdown of the loans processed through April 13, 2020 shows[20]:

| Loan Size | Approved Loans (#) | Approved Loans ($) | Percentage (%) of Total Number | Percentage (%) of Amount |
|---|---|---|---|---|
| ≤$150,000 | 725,058 | 37,178,984,187 | 70.05 | 15.02 |
| >$150,000 to $350,000 | 156,590 | 35,735,615,983 | 15.13 | 14.44 |
| >$350,000 to $1M | 102,473 | 59,291,602,643 | 9.90 | 23.95 |
| >$1M to $2M | 31,176 | 43,278,883,532 | 3.01 | 17.48 |
| >$2M to $5M | 16,516 | 49,288,997,593 | 1.60 | 19.91 |
| >$5M | 3,273 | 22,769,309,582 | 0.32 | 9.20 |

43.  A breakdown of the loans processed through April 16, 2020, as updated from April 13, 2020[21] shows that lenders prioritized PPP applications with higher loan amounts, with loans of more than $2 million accounting for 1.57% of total loans, but 27.82% of the total pool of money:

| Loan Size ($) | Approved Loans (#) | Approved Loans ($) | Percentage (%) of Total Number | Percentage (%) of Amount |
|---|---|---|---|---|
| ≤$150,000 | 1,229,893 | $58,321,791,761 | 74.03 | 17.04 |
| >$150,000 to $350,000 | 224,061 | $50,926,354,675 | 13.49 | 14.88 |
| >$350,000 to $1M | 140,197 | $80,628,410,796 | 8.44 | 23.56 |
| >$1M to $2M | 41,238 | $57,187,983,464 | 2.48 | 16.71 |
| >$2M to $5M | 21,566 | $64,315,474,825 | 1.30 | 18.79 |
| >$5M | 4,412 | $30,897,983,582 | 0.27 | 9.03 |

---

[19] "The $349 billion Paycheck Protection Program was completely depleted after just 13 days in operation." (https://www.pbs.org/newshour/politics/it-took-13-days-for-the-paycheck-protection-program-to-run-out -of-money-what-comes-next). See also (https://www.cbsnews.com/news/paycheck-protection-program -out-of-money-small-businesses-shut-out/).

[20] (https://www.sba.gov/sites/default/files/2020-04/PPP%20Report%20SBA%204.14.20%20%20-%20%20 Read-Only.pdf).

[21] (https://www.sba.gov/sites/default/files/2020-04/PPP%20Deck%20copy.pdf).

44.     Further, comparing the April 13 data to the April 16 data shows that-in the last three days of the PPP-lenders processed loan applications for $150,000 and under at <u>twice</u> the rate of larger loans:

| | April 13, 2020 | April 16, 2020 | |
|---|---|---|---|
| Loan Size | Approved Loans (#) | Approved Loans (#) | Percentage (%) of Change |
| ≤$150,000 | 725,058 | 1,229,893 | 70 |
| >$150,000 to $350,000 | 156,590 | 224,061 | 43 |
| >$350,000 to $1M | 102,473 | 140,197 | 37 |
| >$1M to $2M | 31,176 | 41,238 | 32 |
| >$2M to $5M | 16,516 | 21,566 | 31 |
| >$5M | 3,273 | 4,412 | 35 |

45.     Thus, this SBA data demonstrates the front-loading of PPP applications for the largest amounts because, if applications were being randomly processed on a first-come, first-served basis by lenders according to U.S. Treasury rules and guidance, the percentage change of applications submitted in the last three days of the PPP program would be consistent among all application types.

46.     Importantly, while the April 16 data reported that the "Overall average loan size is $206K," the April 16 data also demonstrates that Bank of America and Intralinks were prioritize PPP applications for the largest amounts because the April 16 data reported that the average size of approved loans originated from the top ten PPP lenders with highest approved dollars, such as Bank of America, was $339,707, or 54% higher than all PPP lenders, by reporting the following:

| PPP Lenders – Highest Approved Dollars | | | |
|---|---|---|---|
| Lender | Approved Loans (#) | Approved Dollars ($) | Average Approved Size ($) |
| 1 | 27,307 | $14,071,396,427 | $515,304 |
| 2 | 32,097 | $10,309,843,746 | $321,209 |
| 3 | 21,062 | $9,612,090,368 | $456,371 |
| 4 | 33,594 | $7,778,303,458 | $231,538 |
| 5 | 27,929 | $6,555,028,971 | $234,703 |
| 6 | 25,820 | $6,114,676,731 | $236,819 |

| 7 | 26,238 | $6,057,787,355 | $230,878 |
| 8 | 10,681 | $4,406,088,115 | $412,516 |
| 9 | 14,215 | $4,356,840,783 | $306,496 |
| 10 | 9,457 | $4,267,336,254 | $451,236 |

47.     On April 6, 2020, it was reported that "Bank of America has received applications from 177,000 small businesses for a total of $32.6 billion in financing" "accounting for nearly 10% of the entire amount allocated by Congress".[22] However, undisclosed to the Plaintiff and the Class, Bank of America and Defendant Intralinks, Inc. chose to prioritize PPP applications for larger amounts, rather than processing all applications on a first-come, first-served basis because processing PPP applications for larger amounts first would resulted in larger origination fees for Bank of America and larger profits for Defendant Intralinks, Inc. Additionally, Bank of America and Defendant Intralinks, Inc. chose to prioritize PPP applications for larger amounts, rather than processing all applications on a first-come, first-served basis in order to protect Bank of America's larger borrower customers from defaulting on their other loans with Bank of America.

48.     Specifically, Bank of America was entitled under the PPP to receive loan origination fees of 5% on loans up to $350,000; 3% on loans between $350,000 and $2 million; and 1% on loans between $2 million and $10 million.[23] That means that Bank of America could make up to $7,500 for processing loans up to $150,000; $17,500 for processing loans up to $350,000; up to $60,000 for processing loans between $350,000 and $2 million; and up to $100,000 for processing loans between $2 million and $10 million.

---

[22] (https://www.cnbc.com/2020/04/06/bank-of-america-sees-booming-rescue-loan-demand-with-applicati ons-for-nearly-10percent-of-allotment.html).  This article further reported that, "The chaotic and widespread demand stems from the nation's small business owners, who have scrambled to apply for the rescue funds out of fear they could miss out on the historic, $350 billion program.  Steven Mnuchin, the U.S. Treasury Secretary, has assured business leaders that he would request more money if that happened, though any additional funding would require congressional approval and face potential hurdles from fiscal conservatives.  Federal lawmakers asked banks to help it dole out the $350 billion in loans to small businesses as part of its massive $2 trillion coronavirus stimulus bill signed last month.  Legislators hope that small businesses will use the $350 billion to help keep staff on payroll and mitigate the economic shockwaves caused by state government mandates to self-quarantine and shutter commerce."

[23] (https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf).

49.     Bank of America and Intralinks concealed from Plaintiff and the Class, as well as the general public, their plan to prioritize PPP applications for larger amounts, rather than processing all applications on a first-come, first-served basis, in order to maximize the profits for the Bank of America and Intralinks.

50.     Had Bank of America and Intralinks informed Plaintiff and the Class of the truth, Plaintiff and the Class reasonably would have behaved differently, e.g., they would not have submitted a PPP application with Bank of America and/or would have submitted a PPP application with another participating institution.

51.     By prioritizing those PPP applications for larger amounts first that would earn them the highest origination fees rather than processing PPP applications on a "first come, first served" basis as required by U.S. Treasury rules and guidance, Bank of America and Intralinks enriched themselves at the expense of American taxpayers, undercut the intent of Congress, undercut the dollar-per-dollar effectiveness of the CARES Act itself, and caused irreparable harm to countless small businesses and workers who actually needed the temporary funding of the PPP loans to make payroll, retain their employees, and stay afloat.  As a result of their secret and concealed lending prioritization practices of processing PPP applications for larger amounts first, Bank of America—along with other banks—stood to received nearly $10 billion in fees for loans approved by April 16, 2020 (the day when it was reported that PPP had been depleted[24]), while Plaintiff and the Class got nothing.

52.     On April 26, 2020, it was reported that under the PPP's "lax" rules, "more than 200 publicly traded companies to obtain loans totaling more than $750 million."[25] On May 4, 2020, it was reported that "One week after the Paycheck Protection Program began backing a second round of small-business relief loans, $175 billion of the program's $310 billion in remaining funding has been committed, according to

---

[24] "When frozen on Thursday, [April 16, 2020,]the PPP had allocated some $339 billion of the $349 billion set aside for small businesses. According to a Senate aide familiar with the matter, the SBA told lawmakers that it needed the remaining $10 billion to pay fees it agreed to give to lenders involved in the program." (https://www.pbs.org/newshour/politics/it-took-13-days-for-the-paycheck-protection-program-to-run-out-of-money-what-comes-next).

[25] (https://www.nytimes.com/2020/04/26/business/ppp-small-business-loans.html).

the Treasury Department and Small Business Administration."[26] Furthermore, news reports and Bank of America's own press releases issued after April 16, 2020 (the day after that PPP had first been depleted), demonstrates that Defendants received thousands of PPP applications of different amounts and chose to prioritize PPP applications for greater amounts, rather than processing all applications on a first-come, first-served basis. On May 4, 2020, Bank of America's own press release reported,

Of the SBA applications submitted to date:

- 98% are for companies with fewer than 100 employees.
- 76% are for companies with fewer than 10 employees.
- 93% are for less than $350,000.
- 78% are for less than $100,000.

However, while, as reported on April 6, 2020, "The bank confirmed that it has received applications from 177,000 small businesses for a total of $32.6 billion in financing,"[27] the April 16 data reported by the SBA for all lenders demonstrates that Bank of America and Intralinks chose to prioritize PPP applications with higher loan amounts, rather than processing all applications on a first-come, first-served basis by reporting that the average size of approved loans originated from the top ten PPP lenders with highest approved dollars, such as Bank of America, was $339,707, or 54% higher than the "Overall average loan size [of] $206K" of all PPP lenders, and Bank of America's own press release reported that as of May 4, 2020, the bank had only funded 141,428 loans for a total of $12,978,794,503, achieved primarily because, as reported on May 4, 2020 in its own press release, "Since the SBA reopened on April 27, Bank of America: ... Is the number one SBA lender in the second round of funding."

## COMMON AND TYPICAL FACTUAL ALLEGATIONS OF PLAINTIFF AND THE CLASS

53.     On or about March 25, 2020, Plaintiff became aware that the CARES Act had been signed into law. Plaintiff, knowing that its business would be seriously impacted by the COVID-19 crisis and the stay-at-home or shelter-in-place orders, sought to obtain a PPP loan through a qualified financial institution.

---

[26]  (https://www.nytimes.com/2020/05/04/business/live-stock-market-coronavirus.html?action =click&pgtype=Article&state= default&module=styln-coronavirus-markets&variant=show&region= MID_MAIN_CONTENT&context=storyline_updates_business#link-689f0dfe).

[27] (https://www.cnbc.com/2020/04/06/bank-of-america-sees-booming-rescue-loan-demand-with -applications-for-nearly-10percent-of-allotment.html)

54.     On April 3, 2020, Plaintiff, like all Class members, received an email from Bank of America on how to apply for a PPP loan with Bank of America stating the following:

**From:** "Bank of America" <customerservice@emcom.bankofamerica.com>

**Subject: What you need to know about financial assistance under the Paycheck Protection Program**

**Date:** April 3, 2020 at 6:58:49 AM PDT

**To:** <songbledsoe@me.com>

**Reply-To:** "Bank of America" <reply-fe9e16717060057d71-32_HTML-402440031-73895-3155@emcom.bankofamerica.com>

Bank of America expands support for clients with new Paycheck Protection Program

Over the past several weeks, Bank of America has been providing support to our customers and clients through our enhanced Client Assistance Program.

In addition, beginning April 3rd, our Small Business clients may also be eligible for financial relief through the federal Paycheck Protection Program that is being introduced as a result of the Coronavirus Aid, Relief, and Economic Security (CARES) Act.

The Paycheck Protection Program is a federal relief program established by Congress and implemented by the U.S. Treasury Department and the Small Business Administration (SBA) with rules, requirements, protocols and processes that all participating banks, including Bank of America, must follow.

In order to ensure an orderly flow of these government-provided funds, we will follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website, that small businesses that plan to apply should do so with their current business loan provider.

•     Small Business clients with a business lending and a business deposit relationship at Bank of America are eligible to apply for the Paycheck Protection Program through our bank. A client's pre-existing lending relationship with us may be a Bank of America Business Credit Card, small business line of credit or business loan.

•     Small Business owners who do not have both a business lending and business deposit relationship with us should contact their current business loan provider as soon as possible, if they plan to apply for the federal Paycheck Protection Program. This is the best and fastest method for applying for federal relief, based on the U.S. Treasury requirements and guidance.

•     All applications, information and correspondence about the Paycheck Protection Program at Bank of America will occur online and through email, including the application process, submission of required documents, and follow up correspondence.

Eligible clients who plan to apply for the Paycheck Protection Program loan should be aware of the following important items:

You must have a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020. A Business Credit Card, line of credit or loan may be the lending product used.

1.     At Bank of America, the federal Paycheck Protection Program will be administered online only.

2.     Clients must have a Business Online Banking account. If you do not currently have a Business Online Banking account you must sign up for Business Online Banking as soon as possible.

3.     Apply for the federal Paycheck Protection Program at www.bankofamerica.com/SBResources beginning on Friday, April 3rd.

4.     After completing the application process, you will receive online confirmation of the submission.

5.     Bank of America will process your application as soon as possible.

6.     We will contact you with next steps and to collect any required documents. Do not proactively deliver or send documents to our Financial Centers or banking teams.

7.     You will be notified of the status of your loan application through email communications.

8.     Information about your application status will NOT be available through our Financial Centers or Contact Centers - due to the nature of this loan process and the steps involved.

9.     To prepare for your application process, review requirements listed on the U.S. Treasury website. These include:

• 2019 Payroll - total payroll for full year 2019, by employee, as reported to the IRS

• 2019 Independent Contractor Costs - Listing of 1099's-MISC for 2019 independent contractors, by person, as reported to the IRS (Note: Do NOT include 1099's for services)

• Payroll report as of February 15, 2020 or closest date after that date, by employee

• Other information

Under the CARES Act, the federal Paycheck Protection Program includes the following components:

• The program will be available to businesses with 500 or fewer employees to help with payroll, rent, utilities, healthcare costs and more.

• Loans can be for up to two months of your average monthly payroll costs from the last year plus an additional 25% of that amount. The loan amount is capped at $10 million.

• Loans will be forgiven up to the loan amount for a borrower's payroll, rent, mortgage, and utility costs incurred and paid during an eight-week period after a loan is originated.

• Loan forgiveness will be reduced to the extent of a) any reduction in employee headcount during this period (as compared to the prior year), and b) any reduction in pay of an employee by more than 25% (as compared to their prior year compensation). Borrowers that rehire workers will not be penalized for paying them less when they are rehired.

• The SBA also expanded Emergency Economic Injury Disaster Loans.

Bank of America business lending relationships include small business, commercial or corporate credit cards, conventional business loan or lease, business lines of credit, business auto loans, practice solutions loans, trade and asset-based loans. Clients with these existing relationships have the established accounts and underwriting verifications in place to allow Bank of America to help provide the quickest access to the relief funds and help the U.S. government prevent fraud in the process. There are additional options that may be sources of support for small business owners:

• Other Small Business Administration relief programs: The SBA is providing special financing options that small business owners can access via www.SBA.gov/disaster.

• Community Development Financial Institutions (CDFIs): CDFIs, also known as local loan centers, are small and typically not-for-profit providers of loans. Bank of America is the largest investor in CDFIs in the United States - with more than $1.6 billion in loans and investments in over 250 CDFIs. On Monday, March 30, Bank of America announced that it will provide up to $250 million in capital to community development financial institutions (CDFIs) by funding loans through the Paycheck Protection Program. In addition, Bank of America will provide up to $10 million in philanthropic grants to help fund the operations of CDFIs. Find a CDFI near you via the CDFI list and locator tool.

• Other small business lending providers: If you have a lending relationship at Bank of America bank, working with your current provider will be the best and fastest approach.

• SBA 7(a) lenders: find a local SBA lender via https://www.sba.gov/funding-programs/loans.

Bank of America continues to provide additional support to our customers and clients through our enhanced Client Assistance Program. Learn more

Sincerely,

Sharon Miller

Head of Small Business

Please do not reply to this email, as email replies are not monitored.

You're receiving this servicing email as part of your existing relationship with us.

55.    Plaintiff met all of the requirements for a PPP loan as set forth in Bank of America's April 3, 2020 email.

56.    On or about April 3, 2020, in response and in reliance upon Bank of America's April 3, 2020 email, Plaintiff submitted a complete PPP loan application to Bank of America to obtain a PPP loan equal to or less than $150,000 as instructed at www.bankofamerica.com/SBResources, in reliance upon Bank of America's representations that:

• "we will follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website, that small businesses that plan to apply should do so with their current business loan provider."

• "We will contact you with next steps and to collect any required documents. Do not

proactively deliver or send documents to our Financial Centers or banking teams."

- we required and Plaintiff was qualified because it was a "Small Business client[] with a business lending and a business deposit relationship at Bank of America[,]" and therefore, "[Plaintiff was] eligible to apply for the Paycheck Protection Program through our bank."

- we required and Plaintiff was qualified because it had "a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020."

- Plaintiff's submission of a PPP loan application to Bank of America "[would be] the best and fastest method for applying for federal relief, based on the U.S. Treasury requirements and guidance."

- we required and Plaintiff was qualified because it was a "Client[] with [an] existing relationship[] have the established accounts and underwriting verifications in place [would] allow Bank of America to help provide the quickest access to the relief funds ...."

- "At Bank of America, the federal Paycheck Protection Program will be administered online only."

- "Apply for the federal Paycheck Protection Program at www.bankofamerica.com/SBResources beginning on Friday, April 3rd."

57.    On April 6, 2020, Plaintiff, like all other Class members, received an email confirmation from the email account of Defendant Intralinks, Inc., <welcome@intralinks.com>, that Defendant Intralinks, Inc. had received Plaintiff's PPP loan application stating the following:

**From:** "Bank of America" <welcome@intralinks.com>

**Subject: Paycheck Protection Program: We're ready to receive your documents**

**Date:** April 6, 2020 at 1:36:46 PM PDT

**To: [REDACTED]**

**Reply-To:** Bank of America Payroll Protection Program <Smallbusinessdocuments@bankofamerica.com>

Thank you for submitting your application for the Paycheck Protection Program to Bank of America

You recently received your welcome letter and this is the next step in the application process - submitting the required documents.

Bank of America is working with IntraLinks Exchange to gather your documents. That is our standard process, and we are using it to expedite this Small Business Administration program. We'll need you to upload your documentation to IntraLinks confidential and secure website. Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval.

What you need to do
Log into IntraLinks and upload the required documents:
• Payroll processor records for the period including February 15, 2020
• Payroll tax filings for 2019
• For independent contractors; Form 1099-MISC for 2019
• For sole proprietorship or self-employed; income and expenses, i.e., Profit & Loss

Statement
• Other documentation to support payroll expenses such as bank records

**How to Login**
• You can log into your IntraLinks Exchange using the following link: **[REDACTED]**
• Your IntraLinks ID is: **[REDACTED]**
• If you already have an IntraLinks password, and don't remember, click here.
• Don't use your Bank of America Online Banking password.

**What you need to know**
• Bank of America will review uploaded documents and contact you if further clarification or documentation is necessary
• Bank of America will process your loan application with the Small Business Administration as quickly as possible
• Bank of America will email you with the status once we receive a decision from the Small Business Administration
• Please do not deliver or send documents to Bank of America Financial Centers or banking teams.
• Information about your application status will NOT be available through Bank of America's Financial Centers or Contact Centers

Thank you for being a valued client of Bank of America.

58. On or about April 6, 2020, in response and in reliance upon Intralinks' April 6, 2020 email, sent from the email account of Defendant Intralinks, Inc., <welcome@intralinks.com>, and as confirmed on the IntraLinks Exchange, Plaintiff uploaded all requested and necessary documentation on the IntraLinks Exchange as instructed, including ADP Payroll processor records for the period including February 15, 2020; Payroll tax filings for 2019; the PPP_Addendum_BofA; April 6 CARES Loan Request Package; and PPP Document Requirements,[28] in reliance upon the representations that:

• "Bank of America is working with IntraLinks Exchange to gather your documents. That is our standard process, and we are using it to expedite this Small Business Administration program."

• "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval."

• "Bank of America will process your loan application with the Small Business Administration as quickly as possible."

• "We'll need you to upload your documentation to IntraLinks confidential and secure website."

---

[28] Importantly, the email confirmation sent from the email account of Defendant Intralinks, Inc., <welcome@intralinks.com>, did **not** request from Plaintiff, or any other Bank of America's PPP loan applicant, either (1) copies of Payroll tax filings for 2020, or (2) specifically request copies of IRS Form 940 or IRS Form 941 for 2019 or 2020.

- "Bank of America will review uploaded documents and contact you if further clarification or documentation is necessary"

- "Please do not deliver or send documents to Bank of America Financial Centers or banking teams."

59.     Had Defendant Intralinks, Inc. informed Plaintiff of the falsity of such statements, Plaintiff reasonably would have behaved differently, e.g., it would not uploaded all requested and necessary documentation on the IntraLinks Exchange as instructed, and it would have submitted a PPP application with another participating institution.

60.     After submitting its PPP application and submitting complete, thorough, and timely documentation, Plaintiff waited to get funded. While Plaintiff waited to get funded, it made strategic business decisions, and took other steps in reliance on Bank of America's and Intralinks' representations that it would process Plaintiff's application consistent with its representations, including waiting to submit PPP applications to other lending institutions that were processing applications on a first come, first served basis. However, Plaintiff got nothing: no approval, no funding of its PPP loan application.  On April 19, 2020, it was widely reported that PPP had run out of funding on April 16, 2020.[29]

61.     Bank of America and Intralinks did not process Plaintiff's and the Class' PPP applications consistent with their representations, including either a first-come, first-served basis or "as quickly as possible." Instead, Defendants moved high dollar PPP applications from large borrower customers to the "front of the line" in order to maximize their origination fees and profits on their PPP applications at Plaintiff's, the Class members' and the U.S. taxpayers' expense.

62.     Despite the fact that Bank of America and Intralinks did not process the applications in either a first-come, first-served basis or as quickly as possible, Bank of America and Intralinks made numerous affirmative representations as set forth above to Plaintiff, the Class, and the public that they were in fact prioritizing loans to small businesses and processing applications on a first come, first served basis. Bank of America and Intralinks made these affirmative representations intentionally and to advance their own financial benefit to the detriment of Plaintiff, the Class, and the public.  Bank of America and Intralinks tried

---

[29]  (https://www.cnbc.com/2020/04/17/this-government-loan-program-has-run-dry-these-people-lost-out.html).

to cultivate public good will and to communicate they were following the law, when in fact the process was rigged so that the Bank of America bank could maximize its origination fees and to protect its large borrower customers from defaulting on their other loans with Bank of America, and Intralinks could maximize its profits under its agreement with Bank of America.

63.     Plaintiff reasonably relied on Bank of America's and Intralinks' affirmative representations, communications, and advertising in making the choice to submit a PPP application with Bank of America and upload document to Intralinks via Intralinks Exchange, not knowing that, contrary to those representations, Bank of America, and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but would instead prioritizing PPP applications by loan amount, making it less likely that Plaintiff would be able to obtain a loan through the PPP.

64.     As a result of the conduct of Defendants, Plaintiff and the Class suffered financial harm, wrongfully lost the time value of those available PPP funds, lost access to capital in a difficult economic time, could not make payroll, and was forced to lay off talented and hardworking employees that the company had invested valuable training resources in, and generally lost economic opportunities to conduct business due to lack of operating capital.

### FIRST CLAIM FOR RELIEF
**Fraudulent Concealment**
**(Cal. Civ. Code § 1710 and CACI 1901)**
(on behalf of Plaintiff and the Class against Intralinks)

65.     Plaintiff incorporates by reference to all preceding paragraphs as if fully set forth here and further alleges as follows:

66.     Plaintiff and the Class were harmed because Intralinks concealed certain information concerning their PPP applications with Bank of America.

67.     As set forth more fully above, Intralinks disclosed some information to Plaintiff and the Class in email communications sent by Intralinks from its email account @intralinks.com but intentionally failed to disclose other facts, making Intralinks' disclosure deceptive, such as,

- Bank of America and Intralinks did not "follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website" to process, approve and submit for funding PPP applications, and Intralinks failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a

"first-come, first-served" basis according to U.S. Treasury rules and guidance.

• By stating "Bank of America is working with IntraLinks Exchange to gather your documents" and "That is our standard process, and we are using it to expedite this Small Business Administration program," Intralinks failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by loan amount, i.e. prioritizing PPP applications for larger amounts before processing, approving and submitting for funding PPP applications for smaller amounts.

• By stating "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval," Intralinks failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by loan amount, i.e. prioritizing PPP applications for larger amounts before processing, approving and submitting for funding PPP applications for smaller amounts.

• By stating that "Bank of America will process your loan application with the Small Business Administration as quickly as possible," Intralinks failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by loan amount, i.e. prioritizing PPP applications for larger amounts before processing, approving and submitting for funding PPP applications for smaller amounts.

• By stating that "Bank of America will review uploaded documents and contact you if further clarification or documentation is necessary," Intralinks failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by loan amount by flagging PPP applications of smaller amounts as having missing or incomplete documentation or needing documentation not previously requested or requesting documentation be re-submitted via IntraLinks Exchange as a specious justification not to process, approve and submit for funding PPP applications on a "first-come, first-served" basis.

• By stating "Please do not deliver or send documents to Bank of America Financial Centers or banking teams," Intralinks failed to disclose that Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications on a "first-come, first-served" basis according to U.S. Treasury rules and guidance but were instead prioritizing PPP applications by allowing others to deliver or send documents to Bank of America's Financial Centers or banking teams and/or by allowing others to submit applications before April 3, 2020 and/or by using IntraLinks Exchange to prioritize PPP applications by loan amount, i.e. prioritizing PPP applications for larger amounts before processing, approving and submitting for funding PPP applications for smaller amounts.

68. Additionally, as set forth more fully above, Intralinks intentionally failed to disclosed certain facts to Plaintiff and the Class in email communications sent by Intralinks from its email account @intralinks.com that were known to Intralinks and that Plaintiff and the Class could not discovered, such as, Bank of America and Intralinks would **not** process, approve and submit for funding PPP applications "as

1    quickly as possible" or on a "first-come, first-served" basis according to U.S. Treasury rules and guidance

2    but were instead prioritizing PPP applications by loan amount, i.e. prioritizing PPP applications for larger

3    amounts before processing, approving and submitting for funding PPP applications for smaller amounts.

4        69.    As set forth more fully above, Intralinks also prevented Plaintiff and the Class from

5    discovering certain facts to Plaintiff and the Class in email communications sent by Intralinks from its email

6    account @intralinks.com that were known to Intralinks and that Plaintiff and the Class could not discovered,

7    by failing to send corrective the email communications to Plaintiff and the Class and/or making corrective

8    public statements, such as, Bank of America and Intralinks would **not** process, approve and submit for

9    funding PPP applications "as quickly as possible" or on a "first-come, first-served" basis according to U.S.

10   Treasury rules and guidance but were instead prioritizing PPP applications by loan amount, i.e. prioritizing

11   PPP applications for larger amounts before processing, approving and submitting for funding PPP

12   applications for smaller amounts.

13       70.    Plaintiff and the Class did not know of these concealed facts.

14       71.    Intralinks intended to deceive Plaintiff and the Class by concealing these facts.

15       72.    Had the omitted information been disclosed, Plaintiff and the Class would have behaved

16   differently, e.g., they would not have submitted a PPP application with Bank of America, they would not

17   uploaded requested documentation on the IntraLinks Exchange in reliance upon such statements, and/or

18   would have submitted a PPP application with another participating institution.

19       73.    Plaintiff and the Class were harmed because Intralinks concealed such omitted information

20   concerning their PPP applications with Bank of America, and Intralinks' concealment was a substantial

21   factor in causing Plaintiff's and the Class members' harm.

22       74.    As a proximate result of the foregoing omissions and failures to disclose, Plaintiff and the

23   Class have suffered and seek to recover damages from Intralinks in an amount, according to proof, to be

24   proven at trial.

25                                **PRAYER FOR RELIEF**

26       WHEREFORE, Plaintiff requests of this Court the following relief, on behalf of itself and all others

27   similarly situated:

28       1.    That the Court issue an order certifying this action be certified as a class action on behalf of

the proposed plaintiff class, appointing the named Plaintiff as a representative of all others similarly situated,

and appointing Plaintiff's attorneys,  as counsel for members of the proposed plaintiff class;

2.    General damages according to proof;

3.    Compensatory damages according to proof;

4.    Consequential damages according to proof;

5.    Punitive damages according to proof;

6.    Prejudgment and post judgment interest as provided by statute;

7.    Expenses, and costs of this action pursuant to statute; and

8.    Such further relief as this Court deems necessary, just, and proper.

Dated: February 15, 2021                              KEEGAN & BAKER, LLP

_s/ Patrick N. Keegan_
Patrick N. Keegan, Esq.
Attorneys for Plaintiff STUDIO 1220, INC.
and the Proposed Class

1

## **DEMAND FOR JURY TRIAL**

2    Plaintiff, on behalf of itself and all others similarly situated, hereby demands a jury trial on all claims

3  for relief to which they have a right to jury trial.

4  Dated: February 15, 2021                          KEEGAN & BAKER, LLP

5                                                     s/ *Patrick N. Keegan*

6                                                     Patrick N. Keegan, Esq.
                                                      Attorneys for Plaintiff STUDIO 1220, INC.
                                                      and the Proposed Class

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

 I HEREBY CERTIFY that, on February 15, 2021, a true and correct copy of the following:

3 **SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** was filed electronically.

4 Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system

5 and indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's EM/ECF

6 System.

7

8

*s/ Patrick N. Keegan*
Patrick N. Keegan, Esq.
pkeegan@keeganbaker.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28